# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| ROBERT HOLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and | ) ) ) ) |
| | ) |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, | ) ) ) |
| | ) |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This case is about whether the government can forgive government loans to farmers based entirely on the race or ethnicity of the farmer. Plaintiff Robert Holman is a Tennessee farmer, a husband, and a father of a young daughter. He is of mixed European ancestry. He farms with his father in Union City, TN, where they have 2,220 combined acres to grow crops, mostly corn and soybeans. Rob's family's primary income comes from farming. Because his race and ethnicity on file with the Farm Service Agency is white, Rob is not covered by the loan forgiveness program in the American Rescue Plan Act, signed in March 2021. On the other hand, if he were of a different race or ethnicity—regardless of whether he was economically affected by COVID-19, a recipient of a settlement award for past discrimination, or in fact needed loan forgiveness—he would be eligible for loan forgiveness. Moreover, the government has indicated it will overlook

an express statutory prohibition against providing further loans to those who obtain loan forgiveness, but again, only for those of particular races.

Rob brings this complaint, both facially and as-applied, against Defendants Thomas J. Vilsack, Secretary of the United States Department of Agriculture (USDA or the Department), and Zach Ducheneaux, Administrator of the FSA, as follows:

## INTRODUCTION

1. Government policies that classify people by race are presumptively invalid. U.S. Const. amend. XIV; *Adarand Constr., Inc. v. Pena*, 515 U.S. 200, 234–35 (1995) (applying equal protection principles to federal policies that discriminate by race). The Constitution requires that "all racial classifications imposed by government must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (internal quotation marks omitted). "We have insisted on strict scrutiny in every context, even for so-called 'benign' racial classifications, such as race-conscious university admissions policies, race-based preferences in government contracts, and race-based districting intended to improve minority representation." *Id.* (internal citations omitted).

2. Equal protection under the law is the cornerstone of modern-day American constitutional jurisprudence. It is the principle etched into our nation and was "[p]urchased at the price of immeasurable human suffering." *Adarand Constr.*, 515 U.S. at 240 (Thomas, J., concurring in part and concurring in judgment).

3. In March 2021, however, Congress opted to enshrine into law race classifications that divide American citizens by skin color, and which are unmoored from any interest that the government may have in remedying past discrimination.

4. In the American Rescue Plan Act of 2021, H.R. 1319, 117th Cong. (2021) (ARPA), Congress allotted funds for debt relief to "socially disadvantaged" farmers and ranchers. The program will erase the debts of certain farmers and ranchers who took out loans, and provide an additional 20% to cover tax liabilities, but only for those of particular races.

5. The program does so by providing a payment in an amount up to 120 percent of the outstanding indebtedness, to remain available until expended, for the cost of loan modifications and payments under this section.

6. A "socially disadvantaged farmer or rancher" is defined by federal law, 7 U.S.C. § 2279(a)(5), as "a farmer or rancher who is a member of a socially disadvantaged group."

7. In turn, a "socially disadvantaged group" is a "group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6).

8. The United States Department of Agriculture (USDA) interprets the phrase "socially disadvantaged group" to include explicit racial classifications. Indeed, to be eligible for ARPA's debt relief, farmers and ranchers must be "Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander." *See American Rescue Plan Debt Payments FAQ*, at Question 1, at https://www.farmers.gov/americanrescueplan/arp-faq.

9. The USDA has Rob's race on file as white. Rob would generally be considered white or Caucasian.

10. Persons considered white or Caucasian are not "socially disadvantaged" under the USDA's loan-forgiveness program.

11. Defendants are responsible for running this race-based loan-forgiveness program through the Farm Service Agency (FSA). Defendants assert that the purpose of this program is to remedy "systemic racism" within USDA and more broadly "across agriculture."

12. The United States Constitution "forbids" discrimination by the federal government "against any citizen because of his race." *Adarand Constr.*, 515 U.S. at 216 (internal citations omitted). When the government distributes "benefits on the basis of individual racial classifications," as Defendants do in this case, the government bears the burden of meeting "strict scrutiny." In other words, the government must prove that its discriminatory benefit is narrowly tailored and serves a compelling government interest. *Id.* at 227. It cannot do so here.

13. Defendants' use of race discrimination as a tool to end "systemic racism" is patently unconstitutional, inconsistent with "magnificent words of the Constitution and Declaration of Independence," Martin Luther King *I Have a Dream* (Aug. 28, 1963) (published by BBC News (http://news.bbc.co.uk/2/hi/americas/3170387.stm), and should be enjoined by the Court. Enjoining this discriminatory conduct will promote equal rights under the law for all American citizens, promote efforts to stop further racial discrimination, and hasten the redemption of the "promissory note to which every American was to fall heir." *Id.* "The way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007) (plurality opinion).

## PARTIES

14. Plaintiff Robert Thompson Holman owns a ranch in Obion County, near Union City, located in the Western District of Tennessee. Rob is a fourth generation Tennessee farmer whose family started farming in West Tennessee over 150 years ago. He and his father still farm on the same land. In 2016, he took out an operational microloan from the FSA, which is covered

under the terms of ARPA. In 2018, he took out another operational loan from the FSA, which is also covered under the terms of ARPA. Both loans remain outstanding. The Promissory Notes on both of Rob's loans name the FSA's office located in Union City, Tennessee, as the payee for the USDA. Rob would be eligible for the loan forgiveness program in Section 1005 of ARPA, and for future FSA loans, except for the fact that he is not a member of any of the racial groups that are eligible for loan forgiveness.

15. Defendant Thomas J. Vilsack is the Secretary of Agriculture. He is responsible for leading the USDA, which includes the FSA. Under Section 1005 of ARPA, Defendant Vilsack is required to provide debt relief to certain farmers based on race. He is sued in his official capacity.

16. Defendant Zach Ducheneaux is the Administrator of the FSA. Among other things, FSA oversees certain loan programs. Under Section 1005 of ARPA, FSA will provide debt relief to certain farmers with direct loans or USDA-backed loans based on race. He is sued in his official capacity.

## JURISDICTION AND VENUE

17. This case arises directly under the Due Process Clause of the Fifth Amendment.

18. The Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331 and 1343 because this case presents a substantial question of federal law, specifically whether Section 1005 of ARPA—and Defendants' implementation of that section—violates the United States Constitution's guarantee of equal protection of the laws.

19. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

20. Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, Defendants maintain one or more

offices and employees in this district, a substantial part of the property subject to this action is situated in this district, and a plaintiff resides in this district.

### Rob Holman is a rancher with outstanding debt on an FSA loan

21. Rob is an active farmer in Union City, Tennessee.

22. Rob farms with his father growing mostly corn and soybeans on approximately 2,200 acres.

23. Rob has two FSA loans and is otherwise eligible for the loan forgiveness program in Section 1005 of ARPA, except that the USDA has his race on file as white because Rob is commonly considered white or Caucasian.

24. On or about November 27, 2016, Rob applied for a microloan (Loan One). He applied for a loan of $40,000 to purchase equipment.

25. On or about December 30, 2016, Rob signed a Promissory Note for Loan One. The loan was for $40,000, due and payable seven years and one month from the date of the note.

26. As of April 21, 2021, Rob had $17,667.10 outstanding on Loan One.

27. On or about March 2, 2018, Rob applied for direct loan assistance (Loan Two). He applied for a loan of $37,000 to purchase 50% interest on a planter.

28. On or about March 27, 2018, Rob signed a Promissory Note for Loan Two. The loan was for $37,00, due and payable seven years from the date of the note.

29. As of April 21, 2021, Rob had $21,743.67 outstanding on Loan Two.

30. Under existing law, Rob would be prohibited from obtaining further loans from the Department if he received any form of debt forgiveness on his FSA loans.

31. Both of Rob's Promissory Notes contains the following statement, on Page 1: "The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, [or] national origin . . . ."

**President Biden signs the American Rescue Plan Act**

32. On March 11, 2021, President Biden signed ARPA into law.

33. In a Rose Garden ceremony, President Biden emphasized that the $1.9 trillion in spending authorized by ARPA was necessary in response to COVID-19. Biden said: "It directly addressed the emergency in this country. Because it focuses on what people need most." *See* President Joe Biden on the American Rescue Plan and recovery, CNBC YouTube Channel, at https://www.youtube.com/watch?v=dj2zCWetr1Y (Time Stamp 3:33).

34. In Section 1005 of ARPA, Congress appropriated "such sums as may be necessary" to pay for the cost of loan modifications and payments for "each socially disadvantaged farmer or rancher as of January 1, 2021." ARPA § 1005(a)(1)-(2).

35. Section 1005(a) requires Defendant Vilsack to use the appropriated funds to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021." ARPA § 1005(a)(2).

36. A "socially disadvantaged farmer or rancher" has "indebtedness" if that farmer or rancher owes money on a "direct farm loan made by the Secretary" or a "farm loan guaranteed by the Secretary." ARPA § 1005(a)(2)(A)-(B).

37. Finally, Section 1005(a)(3) states that "the term 'socially disadvantaged famer or rancher' has the meaning given in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. § 2279(a))." That Act defines "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C.

§ 2279(a)(5). "Socially disadvantaged group," in turn, is defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6).

38. Defendants Vilsack and Ducheneaux are responsible for the implementation of the loan forgiveness provisions in ARPA Section 1005.

39. On March 25, 2021, Defendant Vilsack offered written testimony to the House of Representatives Committee on Agriculture. *See Opening Statement of Thomas J. Vilsack Before the House Committee on Agriculture – Remarks as Prepared*, (March 25, 2021), at https://www.usda.gov/media/press-releases/2021/03/25/opening-statement-thomas-j-vilsack-house-committee-agriculture.

40. Defendant Vilsack claimed that he would be committed to rooting out discrimination within the Department: "I am here today to say that racism and discrimination have no place at the Department of Agriculture. I will not tolerate it, and I am committed to rooting it out and establishing a relationship with producers that is built on a commitment to equity, trust and customer service."

41. On March 26, 2021, Defendant Ducheneaux authored a blog post detailing how FSA intends to implement Section 1005 of ARPA. *See* Zach Ducheneaux, "American Rescue Plan Socially Disadvantaged Farmer Debt Payments," at https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments. According to this document: "USDA recognizes that socially disadvantaged farmers and ranchers have faced systemic discrimination with cumulative effects that have, among other consequences, led to a substantial loss in the number of socially disadvantaged producers, reduced the amount of

8

farmland they control, and contributed to a cycle of debt that was exacerbated during the COVID-19 pandemic."

42.  Defendant Ducheneaux explained that through ARPA, FSA will provide "historic debt relief to socially disadvantaged producers including Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

43.  According to Defendant Ducheneaux, "[a]ny socially disadvantaged borrower with direct or guaranteed farm loans as well as Farm Storage Facility Loans qualifies." Defendant Ducheneaux defines "socially disadvantaged" borrowers as only those borrowers "with direct or guaranteed farm loans as well as Farm Storage Facility Loans" and who are members of one or more of the following racial groups: "Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

44.  On or about April 12, 2021, USDA updated its website to provide further information about the payments under Section 1005 of ARPA. The website confirms that only certain farmers will be eligible based on race: "Eligible borrowers include those who identify as one or more of the following: Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asian American, or Pacific Islander." *See American Rescue Plan Debt Payments,* at https://www.farmers.gov/americanrescueplan.

45.  Although public officials have made offhanded comments about remedying past discrimination committed by the Department of Agriculture, Defendant Vilsack made clear the real reasons for ARPA's race classifications: "[T]hese provisions recognized that on top of the economic pain caused by the pandemic's impact on the economy and agriculture, socially disadvantaged farmers are also dealing with a disproportionate share of COVID infection rates, hospitalizations, death and economic hurt." *See id.* ("The law provides funding to address

9

longstanding racial equity issues within the Department and *across agriculture*.") (emphasis added).

46. To be clear, the program at issue does not target farmers or ranchers who suffered economic pain during the COVID-19 crisis. Nor does it target farmers or ranchers who contracted COVID-19. It does not even target farmers or ranchers who have suffered discrimination, much less at the hands of the Department of Agriculture. Under the relevant provisions, it forgives the loans of farmers or ranchers whose race matches the race of a group whose members have suffered discrimination, per the Department (a farmer or rancher who is a member of a socially disadvantaged group). As Secretary Vilsack stated in his testimony, part of his goal is to make it clear to Congress and the public that "that prosperous farmers of color means a prosperous agricultural sector and a prosperous America."

47. In fact, socially disadvantaged farmers who were previously successful claimants in class action settlements (e.g., Pigford, Keepseagle) and received debt forgiveness are eligible for even further debt forgiveness. *See American Rescue Plan Debt Payments FAQ*, at Question 3 at https://www.farmers.gov/americanrescueplan/arp-faq.

48. The USDA also instructs potential applicants who are "uncertain of [their] demographic designation on file at FSA" to call their local service center to verify their classification on record, and to update as needed. *See American Rescue Plan Debt Payments - Debt Payment Timeline,* https://www.farmers.gov/americanrescueplan/timeline.

49. Upon information and belief, on or about May 4, 2021, USDA sent correspondence to borrowers who have not previously designated details about their demographic information including race and ethnicity data, to "encourage" them to contact their local FSA Service center to update their demographic information in FSA records.

50. The USDA has stated that individuals who receive loan forgiveness under the ARPA will be eligible for future FSA loans. *See American Rescue Plan Debt Payments FAQ*, at Question 27 at https://www.farmers.gov/americanrescueplan/arp-faq.

51. As for timing and process, USDA will soon be reaching out to begin providing payments to those individuals who meet the racial classifications, based on the information in USDA's files. *See American Rescue Plan Debt Payments FAQ*, at Question 9-10 at https://www.farmers.gov/americanrescueplan/arp-faq ("Question 9: Do I need to apply or take any action to receive a debt payment? A. No action on your part is needed right now."); *see id.* at Question 10 ("Details of the process and your debt payment will be reviewed with you prior to final processing.").

52. From the week of May 24, 2021, until June—now—USDA will be reaching out to eligible applicants with Direct Loans. Eligible applicants will receive a letter from FSA outlining the loan balances that will be paid and the payment amount the borrower will receive. *See American Rescue Plan Debt Payments - Debt Payment Timeline,* https://www.farmers.gov/americanrescueplan/timeline.

53. Borrowers who agree with the letter should sign and return it to the FSA. This part of the process is "ongoing," as of the date of this filing. *See id*.

54. FSA will begin to process signed letters for payment in June of 2021. About three weeks after FSA receives a signed letter, eligible Direct Loan borrowers will have their eligible loan balances paid and will receive a payment of 20% of their total qualified debt by direct deposit, which may be used for tax liabilities and other fees associated with payment of the debt. *See id*.

55. On May 26, 2021, the Department posted a document entitled "Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA)" on the Federal Register. *See* 86 FR 28329, Agency/Docket Number Docket ID FSA-2021-0005.

56. The posting on the Federal Register relates that funding availability implementation began on May 26, 2021.

57. Defendants are currently implementing and will continue to implement Section 1005 of ARPA to impose a race-based loan forgiveness program. Defendants' implementation includes the expenditure of federal funds, and Defendants will begin processing letters for payment in June of 2021.

### Injury to Rob Holman

58. Plaintiff is a farmer who has two FSA direct farm loans and is otherwise eligible for loan forgiveness under Section 1005 of ARPA.

59. But because Plaintiff's demographic information on file is white, he is ineligible for the loan forgiveness benefit under Section 1005 of ARPA as administered by Defendants.

60. Because Plaintiff is ineligible to receive loan forgiveness solely due to his race, he has been denied the equal protection of the laws and has therefore suffered harm.

61. Because of Plaintiff's demographic information on file, any other farm loan forgiveness he could obtain from USDA would not be up to 120% and would not cover tax liabilities.

62. If Plaintiff obtained any form of forgiveness of his loan, then he would not be eligible for any future direct or guaranteed loans, or loan forgiveness on a direct loan, from the Department.

63. Plaintiff is disadvantaged relative to similarly situated farmers in that they can receive full loan forgiveness, plus 20%, and still receive further loans to upgrade their farming operations.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
(Fifth Amendment of the United States Constitution)
(Equal Protection Violation)

64. Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

65. "[T]he moral imperative of racial neutrality is the driving force of the Equal Protection Clause, and racial classifications are permitted only as a last resort." *Bartlett v. Strickland*, 556 U.S. 1, 21 (2009). "[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." *Adarand Constr.*, 515 U.S. at 227. "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Johnson*, 543 U.S. at 505. When the government invokes an interest as meeting strict scrutiny, the court must closely examine how the government has gone about satisfying that interest. *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 299 (2013) ("Strict scrutiny does not permit a court to accept a school's assertion that its admissions process uses race in a permissible way without closely examining how the process works in practice.").

66. "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

67. Section 1005 of ARPA imposes racial classifications. Farmers or ranchers with direct farm loans, guaranteed farm loans, or Farm Storage Facility Loans qualify for loan forgiveness only if they are members of one of the following racial groups: Black/African American, American Indian or Alaskan native, Hispanic or Latino, or Asian American or Pacific Islander.

68. Defendants are responsible for interpreting and implementing Section 1005 of ARPA.

69. Although Plaintiff is a farmer with a direct FSA loan, and otherwise eligible for the loan forgiveness program under Section 1005 of ARPA, he is ineligible for this federal benefit because he is white.

70. Plaintiff is harmed by the Defendants' racial classifications because, but for Plaintiff's skin color, he would be receiving up to 120% of the value of his outstanding debt and he would use that money to benefit his farm and family.

71. The racial classifications under Section 1005 of ARPA do not satisfy strict scrutiny. There is no compelling interest in providing subsidies by scattershot to farmers and ranchers simply on the basis of their membership in a racial group.

72. Remedying societal discrimination does not constitute a compelling interest under the Fifth Amendment's equal protection principles. *Fisher*, 570 U.S. at 318 (permitting such an interest would have "no logical stopping point").

73. Nor is Section 1005 narrowly tailored, since it is both underinclusive—it does not provide relief to white or Caucasian farmers who have contracted COVID-19 or suffered due to COVID-19—and overinclusive—it includes farmers or ranchers who may meet the racial

qualifications, but who have not contracted COVID-19, suffered uniquely due to COVID-19, or suffered discrimination on any basis.

74. Because the racial classifications under Section 1005 of ARPA are not narrowly tailored to serve a compelling government interest, they cannot survive strict scrutiny.

**SECOND CLAIM FOR RELIEF**
(Fifth Amendment of the United States Constitution)
(Equal Protection Violation) (Illegally Allowing Future Eligibility)

75. Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

76. Federal law prohibits the Department from providing future loans to persons who receive forgiveness of a direct or guaranteed loan, except in narrowly specified circumstances. *See* 7 U.S.C. § 2008h(b).

77. Federal law prohibits the Department from providing debt forgiveness on a direct loan to any person who had previously received debt forgiveness. *See* 7 U.S.C. § 2008h(c).

78. As the ARPA was originally proposed, Section 1005 provided that the provision of a payment under paragraph (2) to a socially disadvantaged farmer or rancher shall not affect the eligibility of such farmer or rancher for a farm loan after the date on which the payment is provided. *See* [American Rescue Plan Act of 2021, 117 H.R. 1319, 2021 H.R. 1319, 117 H.R. 1319, Title I, § 1005(3)](#) ("EFFECT ON ELIGIBILITY.-- Notwithstanding any other provision of law, the provision of a payment under paragraph (2) to a socially disadvantaged farmer or rancher shall not affect the eligibility of such farmer or rancher for a farm loan after the date on which the payment is provided.") (proposed language). In other words, Section 1005 as proposed would have allowed non-white farmers to apply for new FSA loans after the Department forgave their FSA loans.

15

79. This provision was not part of Section 1005, as finally enacted. Thus, the original statutory prohibition on eligibility for future loans remains in effect for anyone who receives loan forgiveness.

80. Yet on or about May 21, 2021, citing no statutory authority, the Department stated, *ipse dixit*, on its website that persons who receive loan forgiveness under the ARPA will be eligible for future FSA loans. *See American Rescue Plan Debt Payments FAQ*, at Question 27 https://www.farmers.gov/americanrescueplan/arp-faq.

81. Because the Department has indicated that it will it disregard the statutory prohibition on future loans for anyone who receives forgiveness, but only for those who receive loan forgiveness under 1005—a program that is only available in the first place to persons of particular races that do not include Plaintiff's—Rob is harmed by the Defendants' racial classifications.

**THIRD CLAIM FOR RELIEF**
(Illegally Allowing Future Eligibility)

82. Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

83. Because the Department lacks the authority to treat anyone who received loan forgiveness as eligible for future loans, but has said that it will do so anyway, it plans to act unlawfully.

84. Because Plaintiff cannot receive loan forgiveness without forever being ineligible for future loans or loan forgiveness, he will be at a competitive disadvantage relative to similarly situated farmers who can have their current loans paid off and still obtain future loans.

85. Because the Department will not consider Plaintiff eligible for future loans or loan forgiveness if he were to obtain it, he must pay off his loans in full and not seek forgiveness.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

A. Enter a declaratory judgment that the racial classifications under Section 1005 of ARPA are unconstitutional under the Equal Protection principles protected by the Due Process Clause of the Fifth Amendment of the United States Constitution, both facially and as applied.

B. Enter a declaratory judgment that providing further loans to those who receive loan forgiveness is illegal and unconstitutional, both facially and as applied.

C. Enter an order permanently enjoining Defendants from applying racial classifications when determining eligibility for loan modifications and payments under Section 1005 of ARPA, both facially and as applied.

D. In the alternative, enjoin Defendants from enforcing Section 1005 of ARPA in its entirety, and enjoin Defendants from distributing loan assistance under Section 1005 to farmers and ranchers, both facially and as applied.

E. Enter an award for nominal damages of $1.00.

F. Award Plaintiff such costs and attorney fees as allowed by law; and

G. Grant Plaintiff such other and further relief as the Court deems appropriate.

Dated: June 2, 2021.

Respectfully submitted,

 s/ B.H. Boucek
BRADEN H. BOUCEK
TN BPR No. 021399
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org

*Attorney for Plaintiff Robert Holman*