IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-01085 |
| | ) |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and | ) JUDGE ANDERSON<br>)<br>) MAGISTRATE JUDGE YORK |
| | ) |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, | )<br>)<br>) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW AND FACTS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Under Fed. R. Civ. P. 57 and 65(a), Plaintiff respectfully requests this Honorable Court issue a preliminary injunction. This is Plaintiff's First Application for Extraordinary Relief.

**INTRODUCTION**

This case is about whether the government can offer forgiveness on farming loans expressly on the basis of race. Because this case "start[s] with race," *Vitolo v. Guzman*, -- F.3d --, 2021 U.S. App. LEXIS 16101, at *11 (6th Cir. May 27, 2021) (copy of opinion attached as Attachment 1), immediate relief is needed through a preliminary injunction. In *Vitolo,* the Sixth Circuit recently issued an emergency injunction regarding a similar provision of the American Rescue Plan Act (ARPA) set aside for relief for restaurant owners to those restaurants that are at least 51% owned and controlled by "socially and economically disadvantaged" individuals, as well

as women and veterans. *Id*. at *2. *Vitolo* governs here. The government cannot meet the considerable burden it must shoulder when trying to justify programs that deny benefits to Americans expressly based on their race.

Plaintiffs respectfully submit that it is critical for the Court to issue an injunction quickly to maintain the status quo ante. Otherwise, funds may run out before this Court can issue a ruling on the merits, leaving Plaintiff and countless others with an irreparable injury that cannot be addressed with monetary damages owing to sovereign immunity.

## STATEMENT OF THE FACTS AND CASE

Plaintiff Rob Holman comes from a long line of West Tennessee farmers. He is a family man, and he and his father work a family farm in West Tennessee in Obion County, TN. Attachment 2, Holman Decl. ¶¶ 2-4. He has two loans with the Farm Services Agency (FSA). *Id*. at ¶¶ 5-12. Both loans had outstanding balances on January 1, 2021. *Id*. at ¶ 5. Plaintiff's demographic information on file with the FSA is white. He is on file as not Hispanic/Latino. *Id*. at ¶¶ 12-14.

On March 11, 2021, President Biden signed the American Rescue Plan Act (ARPA) into law. Pub. L. No. 117-2, 135 Stat. 4 (full text of ARPA attached as Attachment 3.) Section 1005 of ARPA directs the Secretary of Agriculture to "pay off" the outstanding farm loans[1] of each "socially disadvantaged farmer or rancher . . . in an amount up to 120 percent of the outstanding indebtedness . . . as of January 1, 2021." § 1005(a)(2). A "socially disadvantaged farmer or rancher" is "a farmer or rancher who is a member of a socially disadvantaged group." § 1005(b)(3)

---

[1] Most loans issued or guaranteed by the Farm Service Agency qualify, including direct ownership loans, operating loans, and farm storage facility loans. *See* § 1005(a)(2), (b)(1).

(incorporating the definition in 7 U.S.C. § 2279(a)(5)). A "socially disadvantaged group" is "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6). The United States Department of Agriculture's website relates: "Eligible borrowers include those who identify as one or more of the following: Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asian American, or Pacific Islander." *See American Rescue Plan Debt Payments,* at https://www.farmers.gov/americanrescueplan.

By statute, the Secretary of the Department of Agriculture is prohibited from ever making or guaranteeing future loans to farmers who receive forgiveness of a direct or guaranteed loan, except in narrowly specified circumstances. *See* 7 U.S.C. § 2008h(b). Similarly, the Secretary is forbidden awarding debt forgiveness more than once for a farmer on a direct loan. 7 U.S.C. § 2008h(c). This enactment precedes ARPA. While ARPA was debated by Congress, it included a provision designed to ensure that socially disadvantaged farmers who received forgiveness under Section 1005 would remain eligible for future loans. *See* American Rescue Plan Act of 2021, 117 H.R. 1319, 2021 H.R. 1319, 117 H.R. 1319, Title I, § 1005(3) ("EFFECT ON ELIGIBILITY.-- Notwithstanding any other provision of law, the provision of a payment under paragraph (2) to a socially disadvantaged farmer or rancher shall not affect the eligibility of such farmer or rancher for a farm loan after the date on which the payment is provided.") (proposed language). This provision did not make it into ARPA as enacted.

Plaintiff Rob Holman filed his complaint on June 2, 2021. (Doc. 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 provides trial courts with authorization to grant injunctive relief. The purpose of a preliminary injunction is to preserve the status quo until a trial

on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is customarily based on the procedures that are "less formal and evidence that is less complete than in a trial on the merits." *Id.*

The standard for issuing a preliminary injunction is guided by a familiar, four-part test:

> 1) the likelihood that plaintiff will succeed on the merits;
> 2) the threat of irreparable harm to the plaintiff if the injunction is not granted;
> 3) the possibility that an injunction would cause substantial harm to others; and,
> 4) the public interest.

*Jones v. Caruso,* 569 F.3d 238, 254 (6th Cir. 2009) (citations omitted). The four factors are "to be balanced, not prerequisites that must be met." *Id.* at 265 (citations omitted). In the case of a colorable constitutional violation, a preliminary injunction is nearly always appropriate. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

## ANALYSIS

The government should be immediately enjoined from engaging in a farm loan forgiveness scheme that is entirely based on race. The denial of a governmental benefit based on race is an elementary violation of the right to be treated equally under the law. Because Plaintiff can show that he faces, at the very least, a colorable constitutional violation, a preliminary injunction is appropriate. *Obama for Am.*, 697 F.3d at 436 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'") (quoting *Jones*, 569 F.3d at 265).

As stated above, a recent published decision by the Sixth Circuit is directly on point. *See Vitolo*, 2021 U.S. App. LEXIS 16101, at *11 ("Government policies that classify people by race are presumptively invalid."). In *Vitolo*, the Sixth Circuit found that another provision of ARPA—

prioritization of funds for restaurant owners based on race—warranted an immediate, emergency injunction so as to halt the "sordid business" of dividing "us up by race." *Id*. at *20 (quoting *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511 (2006) (opinion of Roberts, C.J.)). Like in *Vitolo*, the government will have the ultimate burden under strict scrutiny. "This is a very demanding standard, which few programs will survive." *Id*. at *11. Once Plaintiff demonstrates that he is likely to succeed, it typically resolves the other factors. *Id*. at *10, 24 ("Since the government failed to justify its discriminatory policy, the plaintiffs will win on the merits of their constitutional claim. And like in most constitutional cases, that is dispositive here.")

Plaintiff will nevertheless analyze all four factors and show that Section 1005 must immediately be enjoined.

**1) Plaintiff is likely to succeed on the merits.**

Race-based classifications are presumptively unconstitutional. *Vitolo*, 2021 U.S. App. LEXIS 16101, at *12 (*citing Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979)). To overcome that presumption, the government must satisfy strict scrutiny. *Id*. at *12-13. Under strict scrutiny, the government must show that favoring one race over another is necessary to achieve a compelling state interest. *See Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) ("Because racial classifications are simply too pernicious to permit any but the most exact connection between justification and classification, our review of whether such requirements have been met must entail a most searching examination.") (cleaned up); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995) ("[A]ny person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny."). And even when the government can make that showing, it must then show that its remedy is narrowly tailored to advance that

interest. *Vitolo*, 2021 U.S. App. LEXIS 16101, at *13 (citing *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007)).

Just like the enjoined provision in *Vitolo*, Section 1005 is race-based. Section 1005 appropriates sums for "socially disadvantaged farmer(s) or rancher(s)." ARPA § 1005(a)(1)-(2). Section 1005(a)(3) states that "the term 'socially disadvantaged famer or rancher' has the meaning given in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. § 2279(a))." That Act defines "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C. § 2279(a)(5). "Socially disadvantaged group," in turn, is defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6). The government includes the following races under this categorization: "Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asians, Native Hawaiians or other Pacific Islanders." *See American Rescue Plan Debt Payments,* at https://www.farmers.gov/americanrescueplan; *see also* 86 FR 28329, Agency/Docket Number Docket ID FSA-2021-0005 at https://www.federalregister.gov/documents/2021/05/26/2021-11155/notice-of-funds-availability-american-rescue-plan-act-of-2021-section-1005-loan-payment-arpa (definitions). Section 1005 is race-based in the purest sense. It demands strict scrutiny.

The government lacks a compelling interest. The government has asserted its race-based program is justified because it will remedy past discrimination. *See* Compl. ¶ 41 (Zach Ducheneaux, "American Rescue Plan Socially Disadvantaged Farmer Debt Payments," at https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-

disadvantaged-farmer-debt-payments.)[2] While the government has feinted at the idea that the federal government itself was the discriminating actor, in truth the statements made by Ducheneaux and Secretary of Agriculture Vilsack reveal that their broader goal is hardly limited to addressing prior discrimination on the part of USDA or the federal government. The Sixth Circuit rejected a similar justification in *Vitolo*. 2021 U.S. App. LEXIS 16101, at *12-17. It explained: "Over several decades, the Supreme Court has repeatedly and frequently reaffirmed this basic principle that remedying past societal discrimination does not justify race-conscious government action." *Id.* (citing *Parents Involved,* 551 U.S. at 731; *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 310 (1978)); *see also Michigan Rd. Builders Ass'n, Inc*., 834 F.2d 583, 590 (6th Cir. 1987) (collecting cases). If remedying systemic racism was not a compelling justification for restaurant relief, then it is equally inadequate as a justification for farm loan forgiveness. The government will fail at step one.

The government also cannot show that Section 1005 is narrowly tailored. "Narrow tailoring requires evaluating the "efficacy of alternative [race-neutral] measures." *United States v. Paradise*, 480 U.S. 149, 171 (1987) (plurality opinion). Here, like in *Vitolo*, the government did not consider any race neutral alternatives but certainly could have.  *See* 2021 U.S. App. LEXIS 16101, at *20. If, for example, the government believed that non-white farmers did not receive as much aid as white farmers did in prior coronavirus relief efforts, a simple race-neutral alternative exists just

---

[2] Defendant Vilsack is quoted on a reliable governmental internet source that this Court can judicially notice. *See ARJN #3 v. Cooper*, No. 3:20-cv-00808, 2021 U.S. Dist. LEXIS 22286, at *25-26 (M.D. Tenn. Feb. 5, 2021). His statements are statements by a party opponent and not hearsay. Fed. R. Evid. 801(d)(2).

like it did in *Vitolo*: "The government could simply grant priority consideration to all [farmers] who have not yet received coronavirus relief funds." *Id*.

Section 1005 is, furthermore, an underinclusive way to remedy any inequities in distribution of coronavirus relief. Instead of providing aid based on need, the government will provide aid based on skin color. The government may wind up providing additional relief to minority farmers who accessed coronavirus relief (or never needed it) and deny it to non-minority farmers who never did. The government's policy truly is "plagued with [] underinclusivity." *Id*.

Section 1005 is wildly overinclusive if the government contends that it is remedying past discrimination in farm loans that the government itself inflicted. The government makes loan forgiveness available to minority farmers, even if they were successful claimants in past settlements that directly addressed past discriminatory practices. *See American Rescue Plan Debt Payments FAQ*, at Question 3, https://www.farmers.gov/americanrescueplan/arp-faq. Section 1005 is anything but narrowly tailored.

Finally, why these particular racial groups? The Sixth Circuit in *Vitolo* wondered similarly, "individuals who trace their ancestry to Pakistan and India qualify for special treatment. But those from Afghanistan, Iran, and Iraq do not. Those from China, Japan, and Hong Kong all qualify. But those from Tunisia, Libya, and Morocco do not." 2021 U.S. App. LEXIS 16101, at *19. The government needs to answer the same questions here about its "scattershot approach," *id*., to farm loan forgiveness. Its inability to do so will prove to be another fatal wound to this hopelessly unconstitutional race-based scheme.

**2) An Injunction Would Prevent, Not Cause, Substantial Harm to Others.**

As for countervailing interests, "if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to adhere to its

enjoinment." *Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001) (citation omitted).

This is the rare case where an injunction prevents substantial harms to those the enjoined program was aimed to help. By statute, the Department is prohibited from ever providing future loans to persons who receive forgiveness of a direct or guaranteed loan, except in narrowly specified circumstances. *See* 7 U.S.C. § 2008h(b). Loan forgiveness is, in most cases, properly a "one-shot" deal. Obviously, Section 1005 was not intended to provide loan forgiveness at the expense of forever rendering the "socially disadvantaged" farmer ineligible for future loans. That is why, as outlined above, *supra* at 3, ARPA originally specified that the forgiveness recipients remained eligible for future loans. At some point, the provision was stripped out, presumably once the Senate Parliamentarian ruled on what provisions of ARPA could be enacted through congressional reconciliation procedures.[3] *See* Brakkton Booker, *NPR*, Who is the Senate Parliamentarian Who Ruled Against a Minimum Wage Increase? (Feb. 26, 2021) https://www.npr.org/2021/02/26/971793277/who-the-senate-parliamentarian-who-ruled-against-a-minimum-wage-increase. Yet the government enacted Section 1005 anyway, leaving intact the prohibition on future loans.

The reality of the law Congress actually *passed* is this: when the government forgives loans held by groups of people who it is has deemed to be "socially disadvantaged" under Section 1005, they wind up, as a matter of preexisting law, ineligible for future loans and future loan forgiveness.

---

[3] Reversing the longstanding prohibition against future loan eligibility for those persons who obtain loan forgiveness is distinctly non-budgetary and thus prevented under the Byrd Rule from being enacted under a reconciliation bill. *See* SUMMARY OF THE BYRD RULE at https://archives-democrats-rules.house.gov/archives/byrd_rule.htm.

Of course, that will be lost on most individuals who are not familiar with other provisions of the U.S. Code. Worse, the government is actively, incorrectly informing individuals that they remain eligible for future loans on its FAQ page. *See American Rescue Plan Debt Payments FAQ*, at Question 27 ("Will ARPA payment recipients be eligible for future FSA loans? Yes. The FSA encourages ongoing use of its loan programs.") https://www.farmers.gov/americanrescueplan/arp-faq. By law, that is incorrect.

In any event, stopping the loan program prevents harms to the public as well as Plaintiff.

### 3) Plaintiff Faces an Irreparable and Imminent Harm.

As the Court noted in *Vitolo*, the first factor of the inquiry is "typically dispositive." *Id*. at *10 (citing *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2009)). That is because "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Id*. (quoting *Obama for Am.*, 697 F.3d at 436); *see also id*. at *24 ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated") (quoting *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001)). This case is about Plaintiff's constitutional right to equal treatment under the Fifth Amendment. There is no true recompense for the government's willful violation of this most hard-won of all American rights.

Plaintiff faces a second imminent, irreparable harm, because the program is fleeting. Section 1005(a)(1) appropriates "out of amounts in the Treasury not otherwise appropriated, such sums as may be necessary, to remain available *until expended*. …" If this Court does not promptly halt all payments, then the limited available funds will be fully depleted by the time this case is resolved. The government may attempt to dispense funds as quickly as possible, in a misguided effort to try to moot Plaintiff's claims. *See Hartford v. Hills*, 408 F. Supp. 879, 884 (D. Conn. 1975) ("Preliminary injunctive relief may be necessary, for example, to prevent one party from

being able to moot out the other's claim by acting quickly."). Furthermore, while harms are not irreparable when they are compensable by monetary damages, *see Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992), Plaintiff cannot avail himself of this remedy "in light of Defendants' sovereign immunity and Plaintiffs' inability to seek damages." *Blessed Cajuns LLC v. Guzman*, Case No. 4.21-cv-00677 (N.D. Tex. May 28, 2021) (copy of opinion attached as Attachment 4). This Court has no choice but to halt the enforcement of Section 1005.

The injury is imminent because government's unconstitutional action is commencing as we speak. The government noticed on the Federal Register that implementation would begin on May 26, 2021. *See also* 86 FR 28329, Agency/Docket Number Docket ID FSA-2021-0005 at https://www.federalregister.gov/documents/2021/05/26/2021-11155/notice-of-funds-availability-american-rescue-plan-act-of-2021-section-1005-loan-payment-arpa. Beginning the week of May 24, 2021, borrowers began receiving letters that notified them of loan forgiveness availability for them to sign and return. *See American Rescue Plan Debt Payments* DEBT PAYMENT TIMELINE at https://www.farmers.gov/americanrescueplan. The borrower is to return the letter if they agree with it, and the FSA will process and pay off the loans plus 20% "[a]bout three weeks after a signed letter is received. …" *Id*.

We are on the cusp of payments being dispensed. The time to halt the program is now, before the payments go out. Halting the program now is far less disruptive to the public than it will be once the funds are paid, and is the only true way to preserve the status quo ante. Plaintiff therefore respectfully asks the Court to act swiftly.

Setting aside funds in the amount of Plaintiff's outstanding loans would fail to maintain the status quo ante. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). *First*, the government is not waiting on people to apply; instead, it is contacting "eligible Direct Loan

borrows" directly. *See American Rescue Plan Debt Payments* DEBT PAYMENT TIMELINE at https://www.farmers.gov/americanrescueplan. There is no way, after the loans are all processed, to come back later and devise a race-neutral way to prioritize who among those should receive qualifying loans for this limited pot of funds. It would amount to an entire rewrite of the text and a very different loan forgiveness scheme. *See Eubanks v. Wilkinson*, 937 F.2d 1118, 1122 (6th Cir. 1991) ("courts do not rewrite statutes to create constitutionality"). *Second*, as explained above, Plaintiff faces the additional harm arising from the government's indication that it will look past the statutory prohibition for future loans and loan forgiveness for ARPA recipients. The Court will not have the ability to remedy this inequity by ordering the government to break the law and also consider Plaintiff eligible for future loans. Halting Section 1005 altogether is the only way to fully ensure Plaintiff is treated equally under the law, as every American is entitled.

4) **The Public Interest Lays in the Issuance of an Injunction.**

The public's interest always lies in the prevention of a violation of a party's constitutional rights. *Vitolo*, 2021 U.S. App. LEXIS 16101, at *10 (citing *Déjà Vu of Nashville*, 274 F.3d at 436)); *accord G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)*; Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

**THIS COURT SHOULD NOT ORDER A BOND**

Under Tenn. R. Civ. P. 65.05, the applicant for an injunction must provide a bond for the payment of costs and damages as may be incurred or suffered by any person who would have been wrongfully enjoined. Requiring a bond is left to the discretion of the district court. *See Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (courts "possess discretion over whether to require the posting of security"). Courts in this circuit have found it appropriate to waive bond in cases "involving a constitutional issue affecting the public." *Stand Up Am. Now v.*

*City of Dearborn*, 2012 U.S. Dist. LEXIS 48478 at *10 (E.D. Mich. Apr. 5, 2012). In this case a bond is unnecessary and, in fact, does not make sense. The government faces no financial risk (quite the opposite) from entry of an injunction stopping it from spending money. Plaintiff respectfully requests that this Court waive the bond requirement, or, alternatively, set the bond in the nominal amount of one dollar.

## CONCLUSION

Plaintiff respectfully requests this Court enter an immediate injunction halting Section 1005.

Dated: June 6, 2021                                    Respectfully submitted,


  s/ B. H. Boucek
BRADEN H. BOUCEK
TN BPR No. 021399
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org
Counsel for plaintiff