**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

|  |  |
|---|---|
| ROBERT HOLMAN,<br><br>*Plaintiff,*<br><br>v.<br><br>THOMAS J. VILSACK, in his official capacity as<br>Secretary of the United States Department of<br>Agriculture, et al.,<br><br>*Defendants.* | No. 1:21-cv-01085-STA-jay |

**_AMICUS CURIAE_ BRIEF OF THE NATIONAL BLACK FARMERS ASSOCIATION**
**AND THE ASSOCIATION OF AMERICAN INDIAN FARMERS IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

The National Black Farmers Association (NBFA) and the Association of American Indian

Farmers (AAIF) are non-profit, membership-based organizations that advocate for the interests of

Black and Native American farmers and ranchers, respectively. Exh. 1, Decl. of J. Boyd ("J. Boyd

Decl.") ¶ 3; Exh. 2, Decl. of K. Boyd ("K. Boyd Decl.") ¶ 3. NBFA and AAIF have a substantial

interest in this case because they have both advocated at length for the debt relief provisions in

Section 1005 of the American Rescue Plan Act (the "Act") that Plaintiff seeks to preliminarily

enjoin, and because many of their members are eligible for the law's loan forgiveness provisions.

*See* Boyd. Decl. ¶ 5; K. Boyd Decl. ¶¶ 7-8. NBFA and AAIF submit this *amicus* brief to ensure

that the voices of the farmers and ranchers who are actually affected by Section 1005 are heard as

the Court balances the equities and the public interest in entertaining Plaintiff's request to enjoin

the law nationwide. Those interests tilt the balance decidedly against granting the extraordinary

relief requested.

Whether to grant a preliminary injunction is "often dependent as much on the equities of a

given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance*

*Project*, 137 S. Ct. 2080, 2087 (2017). This requires a court "to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Id.*

Therefore, in considering Plaintiff's request, the Court must weigh how an injunction would impact the socially disadvantaged farmers and ranchers who relied on the Government's representation that they would receive loan relief. NBFA and AAIF's members establish that financially vulnerable farmers and ranchers made plans based on their expectation that they would receive debt forgiveness based on the Government's legislation. Thus, in the event of an injunction, unlike Plaintiff, they would suffer real and palpable harms, tilting the balancing decidedly against such relief.

NBFA member Ivan Isidore Williams, for instance, is a 60-year-old African-American farmer who grows soybeans and corn on over 65 acres in his hometown of Beulaville, NC (population 1,296)—where his family has farmed for generations. Exh. 3, Decl. of Ivan Isidore Williams ("Williams Decl.") ¶ 1. Mr. Williams works second jobs to make ends meet and presently works a manufacturing job at a fiber optic plant. *Id.* ¶ 4. Mr. Williams took out a USDA loan around the year 2000 to purchase farm equipment and fund operating expenses for his farm. *Id.* ¶ 5. He has personally experienced racial discrimination from USDA representatives, who discouraged him in the past from applying for additional loans because of his outstanding balance—even though Mr. Williams is aware that white farmers in his area have routinely been able to take out additional USDA loans notwithstanding existing loan balances. *Id.* ¶ 8. Mr. Williams currently carries an outstanding balance on his loan and while he has generally made payments in a timely manner, he has been threatened with foreclosure by USDA when he has been late. *Id.* ¶ 7. Recently, Mr. Williams asked his local USDA representative about the Act's loan forgiveness provisions—and the representative confirmed that his outstanding debt would be

forgiven. *Id.* ¶ 10. As a result, Mr. Williams has looked forward to repurposing money that would have been used to make his annual loan payment on other important life expenses, such as his mortgage payment on his residential home. *Id.* ¶ 10.

NBFA member Shade Lewis is similarly situated. Mr. Lewis is a 30-year-old, first-generation African-American rancher who took out a USDA loan in 2014 to purchase a cattle farm in his hometown of La Grange, MO (population 958), where he currently raises between 100-200 heads of cattle on 100 acres of land. Exh. 4, Decl. of Shade Lewis ("Lewis Decl.") ¶¶ 2-3, 6. Mr. Lewis spent years building up his ranching experience and credit to pursue this goal. *Id.* ¶ 4. Like Mr. Williams, Mr. Lewis works a second job so he can maintain his ranch due to the unpredictability of the ranching business. *Id.* Despite these efforts, Mr. Lewis has been late on certain loan payments and as a result, he has also received warnings from USDA threatening foreclosure on his property. *Id.* ¶¶ 7, 9. When Mr. Lewis learned about the passage of Section 1005, he immediately accounted for how the law would affect his financial situation. *Id.* ¶ 10. For example, he invested time and effort exploring how loan forgiveness would allow him to pay off other debt he has incurred for purchasing livestock. *Id.* ¶ 10.

Plaintiff's request for a nationwide injunction would therefore harm socially disadvantaged farmers and ranchers like Messrs. Williams and Lewis and undermine the expectations that the Government has established in the months following the Act's passage. Doing so at this moment is particularly disruptive given Section 1005 concerns farm loans. It is presently planting season in many parts of the country, during which farmers and ranchers must stretch their cash and credit in order to ensure their yields and income. *See* Boyd Decl. ¶ 7. Farmers and ranchers who have reasonably relied on the expectations of loan forgiveness set by the Government thus may have already made investments that would be undermined by any injunction.

On the other side of the ledger is an entirely hypothetical harm. Plaintiff's purported harm assumes he is right on the merits and thus, he assumes that the public is served because his argument vindicates his constitutional rights. For Plaintiff, this thought exercise completes the balancing inquiry—but in reality, the Court must consider the request's effect on the lives of real farmers and ranchers who reasonably believed they could rely on enacted Government programs. When those interests are considered, the equities strongly disfavor a preliminary injunction.

Dated: June 24, 2021                                Respectfully submitted,

                                                    **PUBLIC JUSTICE, P.C.**

                                                    */s/ Randolph T. Chen*
                                                    Randolph T. Chen (D.C. Bar No. 1032644)
                                                    David Muraskin (D.C. Bar No. 1012451)
                                                    1620 L Street NW, Suite 630
                                                    Washington, D.C. 20036
                                                    Telephone: (202) 797-8600
                                                    Facsimile: (202) 232-7203
                                                    dmuraskin@publicjustice.net
                                                    rchen@publicjustice.net

                                                    *Counsel for the National Black Farmers*
                                                    *Association and the Association of American*
                                                    *Indian Farmers*