IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:21-cv-01085-STA-jay |
| | ) |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and | ) ) ) ) |
| | ) |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, | ) ) ) ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF
RELATED CLASS ACTION [ECF NO. 45]**

The largest law firm in the world[1] seeks to put this action on hold while it litigates in a jurisdiction where Plaintiff's primary authority—*Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021)—is not binding precedent. The case that the government hopes to litigate to conclusion before Plaintiff could vindicate his own rights, *Miller v. Vilsack*, No. 4:21-cv-0595-O (N.D. Tex.), is a class action that involves different counsel, raises different causes of action, and seeks different relief. For the reasons stated below, the Court should reject the government's effort to stay this case.

---

[1] *A Career Counselor's Guide to Lateral Hiring at DOJ*, United States Department of Justice, https://www.justice.gov/oarm/images/lateralhiringguideforweb.pdf. (Exhibit 1).

1

## STANDARD OF REVIEW

"A district court's power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, "it is also clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). "[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.* at 396; *see also Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."); *Young v. WH Adm'r, Inc.*, No. 1:17-cv-02829-STA-egb, 2018 WL 2392556, **1-2 (W.D. Tenn. May 25, 2018) (citing *Ohio Envtl. Council* and *Landis*).

"While no precise test has developed to guide district courts in deciding whether to grant requested stays, courts have noted a number of relevant considerations." *Int'l Bhd. of Elec. Workers, Local Union No. 2020, AFL-CIO v. AT&T Network Sys.*, 879 F.2d 864, 1989 WL 78212, *8 (6th Cir. 1989). For instance, a district court has discretion to stay a matter where it has determined that a stay is necessary to avoid piecemeal, duplicative litigation, and potentially conflicting results. *Id.* But the most important consideration "is the balance of hardships." *Id.*; *see also Fed. Trade Comm'n v. E.M.A. Nationwide*, 767 F.3d 611, 628 (6th Cir. 2014) ("The most important factor is the balance of the hardships[.]"). "[T]he moving party has the burden of proving that *it will suffer irreparable injury if the case moves forward*, and that the non-moving party will not be injured by a stay." *Id.* (emphasis added) (citing *Ohio Envtl. Council* and *Landis*);

2

*see also Wilson v. Unum Life Ins. Co. of Am.*, No. 3:03–0070, 2004 WL 2757914, *3 (M.D. Tenn. Jan. 22, 2004) (rejecting request for stay where party "presented no evidence that she will suffer an irreparable injury if the case proceeds.").

Even if the moving party is able to establish irreparable injury, the Court must still consider "whether granting the stay will further the interest in economical use of judicial time and resources." *Id.* "Relevant to this consideration is the question of whether a separate suit in another jurisdiction involves *the same issues and parties and is likely to consider adequately all interests before the court considering a stay*." *Id.* (emphasis added). Here, the government has failed to establish that *Miller* involves the same issues and parties as this dispute, or that the court in *Miller* will adequately consider all of Plaintiff's interests.

## ARGUMENT

The government has failed to establish as a threshold matter that (1) it will be irreparably injured without a stay, or that (2) Plaintiff, as the non-moving party, will not be injured by a stay. Even if the government could establish these predicates, it has not shown that (3) the *Miller* matter involves "the same issues and parties and is likely to consider adequately all interests before the court," which is a relevant consideration—indeed, the most prominent consideration in the case law—for judicial economy.

First, the balance of hardships heavily favors Plaintiff. The government cannot prove that it will suffer irreparable injury if the case moves forward. It is hard to imagine a situation in which the Department of Justice, representing an Executive Branch agency, would be unable to competently defend against this case and the *Miller* case concurrently. Second, a stay pending the outcome of a class action lawsuit will indefinitely and unduly delay the determination of Plaintiff's rights and liabilities, thereby causing undue injury. Third, granting a stay will undermine, rather

than further, the Court's interest in economical use of judicial time and resources. Since this case features distinct claims from the *Miller* class action—indeed, different *relief* since the claims in *Miller* seem to be guiding that court to having all FSA loans throughout the country paid off as a remedy—it is not truly duplicative, and the Court risks abusing its discretion by enjoining Plaintiff from proceeding in another suit that is not duplicative.

I. **The Balance of Hardships Weighs in Favor of Allowing the Case to Proceed as Scheduled**

While a district court has latitude in exercising its discretion over whether to grant a stay, it is also clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay. *See Ohio Envtl. Council*, 565 F.2d at 396.

a. **Factor 1: Defendants Have Failed to Meet Their Burden of Proving an Irreparable Injury.**

The government ignores the irreparable injury standard altogether. *See RL BB Fin., LLC v. Robinette*, No. 3:11-CV-049, 2011 WL 13088230, *3 (E.D. Tenn. Dec. 12, 2011) ("*The Defendants have the burden* of proving that they will suffer irreparable injury if this case moves forward *and the burden* of showing that the Plaintiff will not be injured by a stay.") (emphasis added). The word "irreparable" is not mentioned even once in the government's motion, and no declaration or other factual evidence attempting to "prove" irreparable injury is presented to the Court. The Court should deny the government's motion on this simple basis alone.

Nor, additionally, could the government make such a showing if it tried. Instead, the government merely asserts that "defend[ing] multiple cases raising substantially similar claims on different schedules and potentially subject to different discovery obligations—all while simultaneously defending against duplicative requests for nationwide preliminary injunctions"

4

would drain the government's resources and thereby qualify as a hardship. Defs.' Mot. to Stay, Doc. 45 at PageID 899. These are the exactly the types of concerns that litigants make in every stay motion, and which courts generally reject. *See, e.g. Int'l Bhd. of Elec. Workers*, at *8 ("Nothing presented to the district court or to this court establishes that AT & T is likely to suffer irreparable injury if it is forced to arbitrate the Union's grievance."); *Citizens Banking Corp. v. Citizens First Bancorp, Inc.*, No. 2:07 CV 10985, 2007 WL 4239237, *7 (E.D. Mich. Dec. 3, 2007) (stay denied where only evidence of hardship was being required to defend related suit); *Lockyer v. Mirant Corp.*, 389 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *Garmendiz v. Capio Partners, LLC*, No: 8:17–cv–00987–EAK–AAS, 2017 WL 3208621, *2 (M.D. Fl., Jul. 26, 2017) ("[M]any modern courts have held that being required to defend a lawsuit does not constitute a hardship or inequity."); *cf. Hammond v. Floor and Decor Outlets of Am., Inc.*, No. 3:19-cv-01099, 2020 WL 6712168, *4 (M.D. Tenn. Nov. 16, 2020) (rejecting the argument by a moving party even where it argued that it would "end up expending significant resources litigating claims that it never would have faced" if the court granted a stay) (internal brackets omitted).

The government cites no authority for the proposition that litigating multiple matters simultaneously constitutes a *per se* irreparable harm. Indeed, it is hard to imagine how an organization that advertises itself as "the largest legal employer in the world" could credibly do so. (*See, supra*, Exhibit 1). Relevant case law on the topic of overlapping discovery deadlines, for instance, suggests that litigating multiple matters is not an irreparable harm. *See, e.g.*, *Boling v. CSX Transp., Inc.*, No. 3:16-CV-00488-TAV-CCS, 2017 WL 2838147, *2 (E.D. Tenn. June 30, 2017) ("The Court agrees with Defendant Union Tank that there are other superior methods to

5

avoid duplication of discovery, such as a discovery plan, and coordination among the parties involved."); *McKinley v. Grill*, No. 17-2408-JPM-tmp, 2017 WL 7052145, *2 (W.D. Tenn. Aug. 11, 2017) (rejecting an argument about duplicative discovery, since "discovery will be helpful regardless of whether the case proceeds in this Court or in arbitration.").

In terms of litigation resources, it beggars belief that the Department of Justice could ever be "drained," given that it employs approximately 10,000 attorneys nationwide. *See Choose Justice: Guide to the U.S. Department of Justice for Law Students and Experienced Attorneys*, United States Department of Justice, https://www.justice.gov/sites/default/files/careers/docs/legal-careers-brochure.pdf. (Exhibit 2). Furthermore, the Department's Fiscal Year 2022 budget totals $35.3 billion, with more than 10% of that allocated to litigation. *See 2022 Budget Summary*, United States Department of Justice, https://www.justice.gov/jmd/page/file/1398931/download (Exhibit 3). Yet the government has sought to stay every lawsuit on this topic besides *Miller*—even the ones that have already proceeded beyond the preliminary injunction stage—and have them decided by one court. Defs.' Mot. to Stay, Doc. 45 at PageID 892. This is an extraordinary turn of events from just a month ago, when the government opposed Plaintiff's request for a nationwide injunction, in part because it believed that such an injunction would prevent legal questions from percolating through the federal courts. *See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj., Doc. 31 at PageID 672 (citing *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring)). The government can—and, in an extraordinary public moment, should—litigate these matters simultaneously. Even in a matter involving a private health plan fund—and not the Department of Justice and an extraordinary public moment—this Court rejected the types of arguments made by the government here. *See Young*, 2018 WL 2392556, *2 ("The Court is not persuaded that either the fact that Defendant

must participate in two lawsuits or that judicial efforts may be duplicated to some extent outweighs the potential prejudice to Plaintiff if this action is stayed.").

Courts have rejected efforts to stay matters in much more dire situations. In one matter, for instance, where a court acknowledged that another suit "may have preclusive effect on the likely issues presented in the case," the district court still rejected a stay, holding that the defendants could always avail themselves of the Federal Rules of Civil Procedure to limit discovery based on estoppel at a later date. *See Brenkus v. Healthy Life Mktg., Inc.*, No. 4:04 CV 01763, 2005 WL 8166157, *1 (N.D. Ohio Jan. 7, 2005):

> The defendants have not presented sufficient evidence demonstrating that they will suffer irreparable hardship should this Court advance the present litigation. The Court acknowledges that the decision of the California Superior Court may have a preclusive effect on the likely issues presented in the present case. However, the Court's inherent authority to control discovery, as well as the similar authority provided in the Federal Rules of Civil Procedure, affords significant protection to the defendants. *Simply, the Court will ensure that the parties do not engage in duplicitous or vexatious discovery*.

(Emphasis added); *see also Pittenger v. First Nat'l Bank of Omaha*, No. 20 CV 10606, 2020 WL 5596162, *3 (E.D. Mich. Sept. 18, 2020) ("While the discovery process is inherently expensive and somewhat burdensome, it is an unavoidable aspect of litigation" and does not, without more, constitute a clear case of hardship or inequity).

### b. Factor 2: Defendants Have Failed to Meet Their Burden of Proving that Neither the Public Nor the Plaintiff Will Suffer Harm.

The government hardly argues that the public will not be harmed by a stay. The closest it gets is citing a First Circuit case, wherein that court stayed a matter, noting that the stay was in the public interest. Defs.' Mot. to Stay, Doc. 45 at PageID 901. Such an offhanded reference does not suffice to "show that the public [will not] suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396. Moreover, it is just as persuasive to argue that the public in this judicial

7

district benefits from the robust and timely enforcement of constitutional rights, like those alleged in the instant matter. *Accord Citizens in Charge, Inc. v. Husted*, Nos. 2:13–cv–935, 2:13–cv–953, *11 (S.D. Ohio Nov. 13, 2013) ("The Court finds the public welfare, though, is best served by protecting the First Amendment rights of the Plaintiffs and others similarly situated."); *see also Abriq v. Hall*, No. 3:17-0690, 2017 WL 11477369, *2 (M.D. Tenn. June 9, 2017) ("[T]he public interest is furthered where individuals' injuries are remedied in a timely manner."); *id.* at *2 ("[T]he Court finds that the interests of the public and the courts to facilitate the expedient conclusion of litigation are paramount."). Because the moving party bears the burden on this factor, even if the Court views this issue as a tie, such a conclusion must lead the Court to reject the motion to stay.

Separately, with respect to whether a stay would harm the Plaintiff, there can be no doubt that it would. "The Sixth Circuit and Supreme Court have made clear that it is a heavy burden that must be met for a party's rights to be resolved without his participation." *Young,* 2018 WL 2392556, *2. The government asks the Court to take this matter out of the hands of a Plaintiff who has already prevailed on a motion for preliminary injunction, and have his fate determined by other parties with other legal counsel in a court in a different judicial circuit that isn't bound by *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021).

The government, moreover, cannot establish that any stay would merely be for a discrete and limited time period. For instance, the government may opt to appeal the grant of class certification issued in *Miller*. It may opt to appeal the grant of preliminary injunction, before proceeding to any further proceedings on the merits. *See* Joint Report, *Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex. July 16, 2021), Doc. 70 at PageID 1613 n.1 ("Defendants have not appeared or sought a stay of this Court's preliminary injunction, but reserve their right to do so. Should the

preliminary injunction be vacated for any reason, any party may move in this Court to adjust the schedule proposed here."). Indeed, the government may be contemplating engaging in additional motions practice that Plaintiff in this case does not know about, but which will delay the *Miller* case even further. If this matter were stayed, Plaintiff would have no say whatsoever in the pace at which *Miller* would proceed, including whether extensions of deadlines may be requested or granted by either party, or whether the government may seek *en banc* review by the Fifth Circuit, or whether ultimate review by the U.S. Supreme Court may occur. *Accord Eldridge v. Cabela's Inc.*, No. 3:16-cv-536-DJH, 2017 WL 4364205, *3 (W.D. Ky. Sept. 29, 2017) ("[T]he time that the D.C. Circuit will issue its opinion in *ACA Int'l* is entirely unclear … Furthermore, the D.C. Circuit is unlikely to be the final step in the litigation. Whichever party is unsuccessful in that court is almost certain to appeal to the Supreme Court.").

Indeed, Plaintiff expects that the government will propose an "expedited" scheduling plan like it has proposed in *Faust* and *Wynn*—should its motion for a stay in each case be denied—that would nevertheless still result in summary judgment briefing being completed around April 1 (*Wynn*) or May 6, 2022 (*Faust*), over a year after the passage of the American Rescue Plan Act. *See* Parties' Proposed Schedules, *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis. July 14, 2021), Doc. 56 at 3; Joint Notice, *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla. June 29, 2021), Doc. 42 at PageID 447. In other words, the government is suggesting that requiring it to complete briefing on summary judgment by next April or May—9 or 10 months from now—would "drain" the resources of the federal government. Even on its own terms, this is no grounds for stay. *See Garmendiz*, 2017 WL 3208621, *1 ("Due to the potential for damage to the nonmoving party and the rare circumstances under which a stay should be granted, *Landis* requires the movant to

9

establish a *hardship or inequity*, not merely that the stay will reduce its burden.") (original emphasis).

Of course, even the submission of summary judgment briefing is merely a prelude to an actual ruling in the case for Plaintiff, which could take weeks or months, to say nothing of subsequent appeals. The ordinary litigation process is slow enough, without grinding it to a complete halt. *See Ohio Envtl. Council*, 565 F.2d at 396 ("[E]ven if the reasons for the stay are proper, the stay itself is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.") (internal quotation marks omitted). If a complete stay of all proceedings is granted, Plaintiff will likely have to wait years before he is able to resume his case. Such a length of time cannot fairly be said to be "susceptible of prevision and description." *Landis*, 299 U.S. at 257; *Garmendiz*, 2017 WL 3208621, *2 ("Granting a stay now, under these circumstances, will be an immoderate stay because of the uncertainty regarding when the D.C. Circuit Court of Appeals will issue a final determination."). In the meantime, Plaintiff will be forced to sit watching counsel other than his own, likely advocating for relief he does not want, and litigating a class action that has no definite end date.

Even worse for Plaintiff is that, while *Miller* does involve Section 1005 of ARPA, there is no litigant in *Miller* who seeks the same outcome as Plaintiff in this matter. Defendants incorrectly suggest that the cases are "one and the same." Defs.' Mot. to Stay, Doc. 45 at PageID 898. But this case features wholly distinct claims that are never mentioned in *Miller*—related to the government's position that it can allow future loan eligibility for those who receive loan forgiveness under Section 1005, which Plaintiff contends is both wrong as a legal matter, and a distinct equal protection violation in itself. These issues are compounded by the fact that in *Miller*,

10

the class is likely seeking an *expansion* of the Section 1005 program, such that individuals who are considered white or Caucasian may be deemed socially disadvantaged. Br. in Supp. of Pls.' Mot. for Prelim. Inj., *Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex. June 2, 2021), Doc. 18 at PageID 675 ("The defendants will have a choice in whether to respond to the proposed injunction by extending loan forgiveness to all farmers and ranchers, or whether to respond by withholding loan forgiveness from everyone."). Although Plaintiff here has acknowledged that Congress could enact such relief consistent with the equal protection clause, he is opposed to such relief as an outcome of this litigation. *See* Motion Hearing Transcript, Doc. 40 at PageID 832:15-16 ("This Court cannot grant funding to Mr. Holman or anybody else even if plaintiff prevails."); *id.* at PageID 833:8-12 ("The clear and manifest point of Section 1005 was based on race. And so if the Court is to come back and say that all races, or potentially some races, but not others, can access these funds, that's really doing Congress's job for it.").

Indeed, Plaintiff's position is that loan forgiveness of that nature would forever bar him from obtaining future loans from the U.S. Department of Agriculture in the future. These claims deserve timely adjudication, yet Plaintiff will likely be forced to wait years if this case is stayed in favor of *Miller*. Plaintiff will thus lose his "right to a determination of" his "rights and liabilities without undue delay." *Ohio Envtl. Council*, 565 F.2d at 396.

**II.       Separate and Apart from the Threshold Questions Above, a Stay Would Not Further the Interest in Economical Use of Judicial Time and Resources.**

The government spends the bulk of its motion on this subject. To be clear, however, courts in the Sixth Circuit view the "balance of hardships" as preeminent. In other words, establishing

that a stay would preserve judicial resources is a necessary showing for a moving party, but such a showing does not overcome the threshold questions discussed above.

In any event, a stay does not further the interest of preserving judicial resources. Generally, courts consider whether another action involves "the same issues and parties and is likely to consider adequately all interests before the court considering a stay." *Int'l Bhd. of Elec. Workers*, at *8. *Miller* does not involve the same parties, and as noted above, will not adequately consider all of Plaintiff's interests. As the Sixth Circuit noted in *Int'l Bhd. of Elec. Workers*:

> As we have discussed previously, it is also clear that the Union in this case seeks to vindicate different rights, under different legal theories, on behalf of a different group of employees, than the EEOC in the Illinois class action. While some overlap of remedies is likely, and the employees represented by the Union are a subset of the larger group represented in the nationwide class action, the district court did not abuse its discretion in ruling that the processing of the class action would not automatically protect the rights and interests of the Union's members under the Columbus plant CBA. *Given this potential divergence of interests, along with AT & T's inability to prove irreparable injury, the district court was within its discretion in denying the stay*.

*Id.* at *9 (emphasis added).

To be sure, the Court is within its discretion to stay a duplicative suit. *See Smith v. Sec. and Exch. Comm'n*, 129 F.3d 356, 361 (6th Cir. 1997) ("When a federal court is presented with such a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit."). And staying overlapping suits would always have some tendency to conserve judicial resources. However, "the mere potential for conflict in the results of adjudications does not, without more,

12

warrant staying exercise of federal jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976).[2]

Moreover, deferral to an earlier filed action is appropriate only where the litigation is *truly duplicative*, i.e. materially on all fours with the other litigation and having such an identity that a determination in one action leaves little or nothing to be determined in the other. *Eberly v. Wilkinson*, No. 2:03-CV-272, 2008 WL 886138, *3 (S.D. Ohio Mar. 28, 2008) (emphasis added); *see Banus v. Whole Foods Mkt. Grp., Inc.*, No. 17-CV-2132, 2018 WL 549272, *1 (N.D. Ohio Jan. 25, 2018) (One of the key considerations when deciding whether two cases are duplicative under the first-to-file rule is whether the determination of the first-filed action would leave little or nothing to decide in the later action); *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (for suits filed in different districts to be truly duplicative, they must involve nearly identical parties and issues). A court abuses its discretion when it enjoins a party from proceeding in another suit that is not truly duplicative of the suit before it. *See Smith*, 129 F.3d at 361.

These differences entail that, contrary to the government's position, the instant litigation is not truly duplicative. This case is not "on all fours" with the other litigation, because even if the *Miller* court rules that the government violated white farmers' and ranchers' equal protection rights by basing loan forgiveness on the color of their skin, such determination does not leave "little or nothing to be determined in the other"—it leaves substantive questions still to be determined.

---

[2] Additionally, Plaintiff may yet pursue a request to opt out of the *Miller* classes. *See Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989 (5th Cir. 1981) (describing class actions that have provided for opt-outs under F.R.C.P. 23(b)(2) to "ameliorate any 'antagonistic interests' between the class representatives and the absent members" and to "permit the class members to seek monetary relief in individual actions if they so chose"). The argument that Plaintiff would necessarily be bound by a judgment impacting another class raises a "serious possibility" of a due process violation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). Regardless of Plaintiff's ability to opt out of the *Miller* classes, however, this Court should deny Defendants' motion for stay.

This situation is similar to *Smith*, where the court found that the two actions under consideration were not identical, since the first-to-file case, if allowed to proceed, would focus on an issue not presented in the other action. 129 F.3d at 361. In so finding, the Sixth Circuit held that the district court abused its discretion, since its injunction served only to ensure that the matters in dispute between the two parties would be disposed of in piecemeal fashion. *Id.* That is exactly what would occur here if this case were to be stayed. Even if the government loses in *Miller*, this case would need further proceedings to patch up the missing parts that were not covered under the *Miller* determination. Because the *Miller* case cannot resolve *all the issues between the parties*, application of the first-to-file rule is not warranted. *Cf. Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790 (6th Cir. 2016) (because the earlier filed case could resolve all the issues between the parties, the chronology of the two actions favors applying the first-to-file rule).

The government, in an attempt to bolster its argument in calling for a stay, cites a number of out-of-circuit cases. A closer look at these cases, however, shows that they are inapplicable to the instant matter, as none involve a court staying a case after it had reviewed briefs, heard oral argument, and issued an opinion granting a plaintiff's motion for preliminary injunction.

For example, the government cites the First Circuit's decision in *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977) as "illustrat[ing] the propriety of a stay in circumstances strikingly similar to this case." Defs' Mot. to Stay, Doc. 45 at PageID 901. This is a convenient reading of *Taunton Gardens*. Distinct from this case, where the court has already heard argument and granted a preliminary injunction, the district court in *Taunton Gardens* was merely considering a motion for preliminary injunction by the time *a final judgment* in a concurrent case had been issued. *See Taunton Gardens Co. v. Hills*, 421 F. Supp. 524, 525-26 (D. Mass. 1976). And contrary to the indefinite stay proposed by the government in this case, the First Circuit noted that

14

"the duration of the stay [was] adequately circumscribed by reference to the determination of the appeal presently pending." *Taunton Gardens*, 557 F.2d at 879.

The other cases the government cites are equally inapplicable. The court in *Aleman ex rel. Ryder Sys., Inc. v. Sancez*, for instamce, was not addressing a stay motion whatsoever; the quoted language referred to an entirely separate case. 21-cv-20539, 2021 WL 917969, *2 (S.D. Fla. Mar. 10, 2021); *see* Defs' Mot. to Stay, Doc. 45 at PageID 900. Additionally, the court in *Richard K. v. United Behavioral Health* deferred to a class action lawsuit filed over four years before the complaint was filed and, like the case above, featured lawsuits with overlapping claims. 18-cv-6318, 2019 WL 3083019, *5 (S.D.N.Y. June 28, 2019), report and recommendation adopted, 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019). These cases are inapposite and do not justify staying this case.

Finally, the government's argument that *Miller* was the "first filed" case rests on a false premise. The original plaintiff in *Miller* possessed neither farm loans nor standing to press his claims, and the additional plaintiffs were not added until a later time. Initially, the sole plaintiff and proposed class representative in *Miller* was Sid Miller, the Agriculture Commissioner for the State of Texas (in his personal capacity). *Miller*, No. 4:21-cv-595 (N.D. Tex. Apr. 26, 2021), Doc. 1 at PageID 3. Although Mr. Miller never held any farm loans that would be eligible for relief under Section 1005, he nonetheless sought to "represent a class of all farmers and ranchers in the United States who are currently excluded from the Department's interpretation of 'socially disadvantaged farmer.'" *Id.* at PageID 9. As the initial *Miller* complaint featured a single plaintiff with no farm loans, he lacked standing to challenge Section 1005. *Miller's* amended complaint remedied that defect by adding plaintiffs with standing due to their holding farm loans. The *Miller* amended complaint was filed the same day, however, as Plaintiff filed his complaint, for which

15

this Court's jurisdiction attached immediately. *Compare* Compl., Doc. 1 (filed June 2, 2021), *with* Am. Compl., *Miller v. Vilsack*, 4:21-cv-00595 (N.D. Tex. June 2, 2021), Doc. 11 (filed June 2, 2021). The government's argument that *Miller* was the first filed case is therefore inaccurate, and does not support the granting of a stay.

## CONCLUSION

For these reasons, the Court should deny the government's Motion to Stay.

Dated: July 28, 2021.                    Respectfully submitted,


    *s/ William E. Trachman*
William E. Trachman*
CO. Bar No. 45684
Corey C. Bartkus*
CO. Bar No. 54789
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@ mslegal.org
corey@mslegal.org

*/s/ B.H. Boucek*
BRADEN H. BOUCEK
TN BPR No. 021399
CELIA H. O'LEARY*
GA Bar No. 747472
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org
coleary@southeasternlegal.org
*Appearing Pro Hac Vice

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below I filed the documents on the Court's electronic filing system. I future certify that I served the following persons in the manner indicated below.

| Counsel | Via |
|---|---|
| Emily Newton<br>U.S. Department of Justice<br>20 Massachusetts Ave. NW<br>Washington, DC 20530<br>202/305-8356<br>Fax: 202/616-8470<br>Email: emily.s.newton@usdoj.gov | ☐ United States mail, postage prepaid<br>☐ Hand delivery<br>☐ Fax<br>☐ Email<br>☐ FedEx<br>☒ Efile |
| Kyla Snow<br>DOJ-Civ<br>Federal Programs Branch<br>1100 L. St. NW<br>Washington, DC 20005<br>202/514-3259<br>Email: kyla.snow@usdoj.gov | |
| Audrey Calkins<br>United States Attorney – Western District of Tennessee<br>167 N. Main Street, Suite 800<br>Memphis, TN 38103<br>901/544-4231<br>Fax: 901/544-4230<br>Email: audrey.calkins@usdoj.gov | |

Dated: <u>July 28, 2021</u>.                Respectfully submitted,


                                             *s/ William E. Trachman*
                                             William E. Trachman

17