## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

_____

| | |
|---|---|
| **ROBERT HOLMAN,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 1:21-cv-01085-STA-jay** |
| ) | |
| **THOMAS J. VILSACK,** in his official ) | |
| capacity as Secretary of Agriculture; ) | |
| and **ZACH DUCHENEAUX,** in his official ) | |
| capacity as Administrator of the Farm ) | |
| Service Agency, ) | |
| ) | |
|     **Defendants.** ) | |

_____

## DEFENDANTS' PARTIAL MOTION TO DISMISS COUNTS TWO AND THREE FOR LACK OF SUBJECT-MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

_____

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

    I.    Legal and Factual Background ........................................................................ 3

        A.    ARPA Section 1005 ......................................................................... 3

        B.    Statutory Provisions Concerning "Debt Forgiveness" ............................ 4

    II.    Procedural History ........................................................................................ 5

STANDARD OF REVIEW .................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

    I.    Plaintiff lacks Article III standing to challenge USDA's determination that other farmers are eligible for future USDA loans. ................................................. 7

        A.    Plaintiff fails to allege a concrete and particularized injury-in-fact. ................ 8

        B.    Plaintiff fails to allege an actual or imminent injury-in-fact. ............................ 11

        C.    Plaintiff alleges no injury specific to any independent "debt forgiveness" equal-protection claim. ................................................................................... 12

    II.    Plaintiff's claims are not ripe for review. ....................................................... 14

    III.    Plaintiff lacks a private right of action to challenge USDA's general statutory authority to approve future loan applications. ...................................... 15

    IV.    Plaintiff fails to state a claim for relief ........................................................... 17

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abbot Labs. v. Gardner,*
    387 U.S. 136 (1967) ....................................................................................14, 15

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ....................................................................................15, 16

*Allen v. Wright,*
    468 U.S. 737 (1984) ......................................................................................9, 12

*Banerjee v. Univ. of Tenn.,*
    No. 17-526, 2018 WL 10195668 (E.D. Tenn. Oct. 9, 2018) ...............................2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................................7

*Binno v. Am. Bar Ass'n,*
    826 F.3d 338 (6th Cir. 2016) ..............................................................................10

*Briggs v. Ohio Elections Comm'n,*
    61 F.3d 487 (6th Cir. 1995) ................................................................................10

*Cannon v. Univ. of Chicago,*
    441 U.S. 677 (1979) ............................................................................................16

*Carney v. Adams,*
    141 S. Ct. 493 (2020) .............................................................................................7

*Citizens Bank of Maryland v. Strumpf,*
    516 U.S. 16 (1995) ..............................................................................................20

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ..............................................................................................14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .........................................................................................7, 11

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ....................................................................................6, 7, 12

*Frothingham v. Mellon,*
    262 U.S. 447 (1923) ............................................................................................10

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ........................................................................................7, 9

*Lance v. Coffman,*
   549 U.S. 437 (2007) ...................................................................................................8, 10

*Lewis v. Casey,*
   518 U.S. 343 (1996) ........................................................................................................7

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ...............................................................................................6, 7, 11

*Marie v. Am. Red Cross,*
   No. 11-474, 2013 WL 2417981 (S.D. Ohio June 3, 2013) ..........................................2

*Mich. Corr. Org. v. Mich. Dep't of Corr.,*
   774 F.3d 895 (6th Cir. 2014) ......................................................................................16

*Moody v. Mich. Gaming Control Bd.,*
   847 F.3d 399 (6th Cir. 2017) ......................................................................................10

*Ohlendorf v. United Food & Com. Workers Int'l Union, Loc. 876,*
   883 F.3d 636 (6th Cir. 2018) ......................................................................................16

*Pension Benefit Guar. Corp. v. LTV Corp.,*
   496 U.S. 633 (1990) ......................................................................................................20

*Princeton Univ. v. Schmid,*
   455 U.S. 100 (1982) ......................................................................................................10

*Rubin v. Islamic Republic of Iran,*
   138 S. Ct. 816 (2018) ....................................................................................................19

*Schlesinger v. Reservists Committee to Stop the War,*
   418 U.S. 208 (1974) ........................................................................................................9

*Stew Farm, Ltd. v. Nat. Res. Conservation Serv.,*
   767 F.3d 554 (6th Cir. 2014) ..................................................................................16, 17

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ........................................................................................................7

*Texas & Pacific R. Co. v. Abilene Cotton Oil Co.,*
   204 U.S. 426 (1907) ......................................................................................................20

*Touche Ross & Co. v. Reddington,*
   442 U.S. 560 (1979) ......................................................................................................16

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) ...............................................................................................7, 9

*Trump v. New York,*
  141 S. Ct. 530 (2020) ..................................................................................................14

*United States v. Richardson,*
  418 U.S. 166 (1974) ...................................................................................................10

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982) .....................................................................................................9

*W. Va. Univ. Hosps., Inc. v. Casey,*
  499 U.S. 83 (1991) .....................................................................................................20

*Warshak v. United States,*
  532 F.3d 521 (6th Cir. 2008) ...............................................................................14, 15

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990) ................................................................................................9, 11

**Statutes**

7 U.S.C. § 1922 ..............................................................................................................11

7 U.S.C. § 1941 ..............................................................................................................11

7 U.S.C. § 1981 ..............................................................................................................18

7 U.S.C. § 1991 .........................................................................................................*passim*

7 U.S.C. § 2001 ..............................................................................................................18

7 U.S.C. § 2005 ..............................................................................................................18

7 U.S.C. § 2008h .......................................................................................................*passim*

7 U.S.C. § 2279 ................................................................................................................3

American Rescue Plan, (ARPA) Pub. L. No. 117-2, 135 Stat. 4 (2021) ...................3, 4, 18, 19

**Rules**

Federal Rule of Civil Procedure 12(a)(4) .......................................................................2

Federal Rule of Civil Procedure 12(b)(1) .......................................................................6

Federal Rule of Civil Procedure 12(b)(6) .......................................................................7

**Regulations**

7 C.F.R. § 764.101(d) .................................................................................................5, 15

86 Fed. Reg. 28,329 (May 26, 2021) ("NOFA") ...............................................3, 4, 18

**Other Authorities**

American Rescue Plan Act of 2021, H.R. 1319 ..............................................................19

FARM SERVICE AGENCY, Handbook, 5-FLP,
    https://www.fsa.usda.gov/Internet/FSA_File/5-flp_r00_a46.pdf .......................19

FARM SERVICE AGENCY, *Primary and Preservation loan Servicing for Delinquent FSA Borrowers*,
*Fact Sheet*, (Aug. 2019), available at https://perma.cc/FDL3-CVK4 ........................4

USDA, *American Rescue Plan Act Section 1005 Litigation FAQs*,
    https://perma.cc/73NZ-84VL ...........................................................................4

USDA, *American Rescue Plan Debt Payments FAQ* (May 21, 2021),
    https://perma.cc/R3MJ-Z38Y...........................................................................4

## INTRODUCTION

As part of a broader relief package designed to alleviate economic burdens caused by the ongoing COVID-19 pandemic, Congress enacted § 1005, a measure authorizing funds to pay the outstanding balance of U.S. Department of Agriculture (USDA) farm loans held by socially disadvantaged farmers and ranchers (SDFRs) as of January 2021. Through § 1005, Congress sought to remedy the lingering effects of historic racial discrimination in USDA's farm loan programs, which were made worse by the pandemic and the general failure of Congress's previous agricultural and pandemic funds to reach SDFRs. Shortly after its enactment, Plaintiff, a self-identified white farmer, brought this equal protection challenge to § 1005 and sought to halt the distribution of funds under that provision. While Plaintiff's equal protection challenge to § 1005 forms the crux of Plaintiff's Complaint, Plaintiff also brings two ancillary claims likewise targeting the relief program Congress adopted in § 1005.

Specifically, in counts two and three of his Complaint, Plaintiff challenges USDA's determination that future recipients of § 1005 debt relief will remain eligible for future USDA loans. According to Plaintiff, a pre-ARPA statute that bars USDA from making loans to borrowers who receive "debt forgiveness" prohibits USDA from granting any additional loans to borrowers who accept § 1005 relief. Despite that alleged bar, he asserts that USDA has adopted a "plan" to "disregard" the statute, as reflected by its advice to borrowers on a "Frequently Asked Questions" page of its website that they *will* remain eligible for future loans even after receiving § 1005 relief. Compl. ¶ 80, ECF No. 1. To prevent USDA from carrying out this alleged plan, Plaintiff seeks a declaration from this Court "that providing further loans to those who receive loan forgiveness is illegal and unconstitutional, both facially and as applied." *Id.* at p.17, Relief Requested.

For multiple reasons, the Court should dismiss these claims. At the threshold, Plaintiff lacks Article III standing. His generalized grievance that USDA allegedly plans to sidestep the limits on its

loan-making authority when it comes to evaluating the hypothetical future loan applications of other farmers—and not Plaintiff—is not an injury that is concrete and particularized to Plaintiff or imminently occurring. Plaintiff's request for an advisory opinion regarding USDA's authority to approve hypothetical loan applications of others runs counter to fundamental principles of Article III standing, and the Court should reject it. Additionally, for many of the same reasons, Plaintiff cannot show that his claims are ripe for judicial review. On either basis, the Court should dismiss counts two and three for lack of subject-matter jurisdiction.

Even if the Court overlooks threshold jurisdictional these defects, it should dismiss counts two and three for failure to state a claim. For one, Plaintiff identifies no private right of action to enforce any statutory provision governing USDA's general loan-making authority. And these claims fare no better on their merits. Plaintiff's arguments fly in the face of the statutory definition of "debt forgiveness" in the pre-ARPA statute on which he relies. Plaintiff attempts to overcome the clear text by pointing to an un-enacted prior version of § 1005; but this stray piece of legislative history from 2021 did not and cannot amend a longstanding statutory definition. Indeed, such an outcome, as Plaintiff acknowledges, would contradict § 1005's remedial design. Mem. of Law & Fact in Supp. of Mot. for Prelim. Inj., ("Pl.'s PI Br.") at 9, ECF No. 7-1. If the Court has jurisdiction over these claims at all, it should dismiss them for failure to state a claim.[1]

---

[1] Defendants will answer any claims that remain pending within 14 days of the Court's ruling on the Motion to Dismiss, in accordance with Federal Rule of Civil Procedure 12(a)(4)(A). *See Banerjee v. Univ. of Tenn.*, No. 17-526, 2018 WL 10195668, at *2 (E.D. Tenn. Oct. 9, 2018) ("[F]iling a partial motion to dismiss tolls the time within which a defendant must answer."); *Marie v. Am. Red Cross*, No. 11-474, 2013 WL 2417981, at *1 (S.D. Ohio June 3, 2013) (citing cases).

# BACKGROUND

## I.    Legal and Factual Background

### A.    ARPA Section 1005

On March 11, 2021, Congress passed the American Rescue Plan Act (ARPA) to provide widespread pandemic relief to the American people, including farmers.[2] *See* Pub. L. No. 117-2, 135-Stat. 4 (2021). Included within this relief package was § 1005, a loan assistance program that authorizes funds to pay "up to 120 percent of the outstanding indebtedness," as of January 1, 2021, of certain direct or guaranteed USDA farm loans held by SDFRs. ARPA § 1005(a)(2).[3] Congress appropriated "such sums as may be necessary, to remain available until expended, for the cost of loan modifications and payments" made under § 1005. *Id.* § 1005(a)(1).

For purposes of § 1005, Congress gave the term "socially disadvantaged farmer or rancher" the same meaning as in Section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990, codified at 7 U.S.C. § 2279(a). *See* ARPA § 1005(b)(3). That provision defines a "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group," 7 U.S.C. § 2279(a)(5), which is further defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities," *id.* § 2279(a)(6). In a Notice of Funds Availability ("NOFA") published by USDA in May 2021, the Agency stated that a socially disadvantaged group would include the following five groups: American Indians or Alaskan Natives; Asians; Blacks or African Americans; Hispanics or Latinos; and Native Hawaiians or other Pacific Islanders. *See* Notice of Funds Availability, American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA), 86 Fed. Reg. 28,329, 28,330 (May 26, 2021) ("NOFA").

---

[2] Throughout this brief, Defendants use "farmers" to refer to "farmers and ranchers."

[3] Section 1005(b)(1) delineates which loans qualify as "farm loans" covered by the Act.

Socially disadvantaged farmers with qualifying loans need not apply to receive § 1005 loan payments. Instead, USDA is identifying and sending offer letters to eligible borrowers using data it already has on file. NOFA at 28,330-31. After a borrower formally accepts the offer for § 1005 debt relief, USDA may disburse funds to the borrower's account. *Id.* Although USDA is in the process of identifying and notifying eligible borrowers, and receiving formal acceptances, it is not yet disbursing those funds, in accordance with this Court's (and other courts') preliminary-injunction order. *See American Rescue Plan Act Section 1005 Litigation FAQs*, USDA, https://perma.cc/73NZ-84VL. USDA has announced that those who receive § 1005 relief will remain eligible for future USDA loans. *See American Rescue Plan Debt Payments FAQ*, USDA (May 21, 2021), https://perma.cc/R3MJ-Z38Y.

### B. Statutory Provisions Concerning "Debt Forgiveness"

Separate, pre-ARPA provisions govern various forms of assistance, or "primary loan servicing," distinct from ARPA § 1005. These loan servicing options are available to Farm Service Agency borrowers who "are unable to make scheduled payments on their farm loan programs debt to the Agency because of reasons beyond their control[.]" *Primary and Preservation loan Servicing for Delinquent FSA Borrowers, Fact Sheet*, FARM SERVICE AGENCY (Aug. 2019), available at https://perma.cc/FDL3-CVK4. One form of loan servicing is "debt forgiveness." Under 7 U.S.C. § 1991(a)(12)(A), "'debt forgiveness' means reducing or terminating a farmer program loan . . . in a manner that results in a loss to the Secretary, through" one of four methods:

> (i) writing down or writing off a loan under section 2001 of this title; (ii) compromising, adjusting, reducing, or charging-off a debt or claim under section 1981 of this title; (iii) paying a loss on a guaranteed loan under section 2005 of this title; or (iv) discharging a debt as a result of bankruptcy.

7 U.S.C. § 1991(a)(12)(A). It does not include: "(i) consolidation, rescheduling, reamortization, or deferral of a loan; or (ii) any write-down provided as part of a resolution of a discrimination complaint against the Secretary." *Id.* § 1991(a)(12)(B).

Borrowers who receive debt forgiveness may be ineligible to obtain additional USDA loans: 7 U.S.C. § 2008h(b)(1) provides that, with some exceptions, the Secretary is generally precluded from providing a loan "to a borrower that has received debt forgiveness" on a prior direct or guaranteed USDA loan. *See also* 7 C.F.R. § 764.101(d) (eligibility requirements for direct loans); *id.* § 762.120(a) (eligibility requirements for guaranteed loans). That general preclusion is qualified, however; some direct-loan borrowers who received debt forgiveness may nonetheless "cure[]" the "debt forgiveness . . . by repayment of the Agency's loss" and thereby remain eligible for a future loan. *Id.* § 764.101(d)(2) ("If the debt forgiveness is cured by repayment of the Agency's loss," the applicant may be eligible for a loan, but "the Agency may still consider the debt forgiveness in determining the applicant's credit worthiness").

## II.     Procedural History

Plaintiff, a self-identified white farmer who holds a direct loan administered by the USDA, Compl. ¶ 69, brings three claims challenging the administration of § 1005. In his first claim, Plaintiff asserts that USDA's interpretation of SDFR in § 1005 to include farmers who identify as falling within certain racial groups violates the constitutional guarantee of equal protection. *Id.* ¶¶ 64-74.

In claims two and three, relying on substantially overlapping allegations, Plaintiff challenges USDA's alleged "plan" to provide future loans to SDFRs who receive § 1005 funds. According to Plaintiff, USDA is statutorily prohibited by 7 U.S.C. § 2008h, a pre-ARPA provision, from providing future loans to those who receive "debt forgiveness." *Id.* ¶¶ 76-77. Based on his assumption that § 1005 relief qualifies as "debt forgiveness" under that statute, he asserts that § 1005 triggers 7 U.S.C. § 2008h's general bar against providing loans to recipients of debt forgiveness. Compl. ¶¶ 76-79. Plaintiff asserts that USDA nonetheless plans to "disregard th[at] statutory prohibition" and allow SDFRs to remain eligible for another USDA farm loan after receiving § 1005 fund. *Id.* ¶ 80-81. In count two, Plaintiff alleges that this purported "disregard" of the statutory prohibition is "illegal" and

amounts to an equal protection violation: Because § 1005 is a race-conscious remedial measure, Plaintiff contends that USDA's alleged waiver of the statutory eligibility bar is necessarily a race-conscious action as well. *Id.* ¶ 81. In count three, Plaintiff alleges that "[b]ecause the Department lacks the authority to treat anyone who received loan forgiveness as eligible for future loans, but has said that it will do so anyway, it plans to act unlawfully," *id.* ¶ 83—in other words, USDA is "illegally allowing future eligibility," *id.* p.16 (capitalizations removed). As relief for these claims, Plaintiff asks the Court to declare "that providing further loans to those who receive loan forgiveness is illegal and unconstitutional, both facially and as applied." *Id.* p.17, Relief Requested at B.

Shortly after filing his Complaint, Plaintiff obtained a preliminary injunction that enjoins USDA from disbursing § 1005 funds. Order Granting Mot. for Prelim. Inj. ("PI Order"), ECF No. 41. Plaintiff's requested injunctive relief rested on the merits of his first claim only (that § 1005 is unconstitutional in its entirety—and not that USDA plans to unlawfully provide future loans to SDFRs). In its preliminary-injunction order, the Court concluded that Plaintiff was likely to succeed on the merits of that claim and deferred consideration of claims two and three based on "Plaintiff's statement at the hearing that he is not relying on [those claims] as a basis for his motion for injunctive relief." PI Order at 21 n.17.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden to establish a court's jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted). Under Rules 12(b)(1) and 12(b)(6), to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

# ARGUMENT

**I.    Plaintiff lacks Article III standing to challenge USDA's determination that other farmers are eligible for future USDA loans.**

Article III grants federal courts the power to resolve "certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Courts "have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). The standing inquiry under Article III is meant to ensure "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). "Where that need does not exist, allowing courts to oversee legislative or executive action would significantly alter the allocation of power away from a democratic form of government." *Id.* (alternations and citation omitted).

A genuine case or controversy exists if a litigant has a "personal stake in the outcome" that is "distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (internal quotation marks and citations omitted). To establish a personal stake in the case, the litigant must prove: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also Lujan*, 504 U.S. at 560–61. At all times, the plaintiff bears the burden of showing that all three elements are met "for each claim" and "for each form of relief sought." *DaimlerChrysler*, 547 U.S. at 352; *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross.").

Plaintiff has not alleged an injury-in-fact sufficient to establish standing with respect to claims two and three of his Complaint for at least three reasons. First, he alleges only a generalized grievance based on his claim that USDA will not follow the law with respect to other loan applicants—and not with respect to him. Second, his alleged future injuries are not imminent, but instead are based on a

hypothetical chain of events that may not even occur. And third, with respect to the equal protection aspects of his second and third claims, Plaintiff alleges no injury independent of his § 1005 equal protection claim in count one of the Complaint. For any and all of these reasons, Plaintiff fails to establish an injury-in-fact that would allow him to challenge USDA's authority to grant future loans to future recipients of § 1005 relief—or any borrower who receives debt forgiveness at any point in time. At bottom, Plaintiff seeks an advisory opinion that USDA should follow the law in the future if certain hypothetical events come to pass. That is not a sufficient basis for standing.

### A. Plaintiff fails to allege a concrete and particularized injury-in-fact.

To begin, Plaintiff does not allege that USDA has taken (or imminently plans to take) any action that injures him in any concrete and particular way. He does not allege, for example, that USDA improperly denied him a loan by misapplying eligibility requirements to his own application (indeed, he already has a loan), or that he is in any way prohibited from obtaining a loan for which he is eligible. Rather, Plaintiff complains that USDA plans to approve loan applications *submitted in the future by others*—namely, those who will have received § 1005 relief, which he asserts is "debt forgiveness"—in violation of its statutory authority. Compl. ¶¶ 81-83. Specifically, Plaintiff alleges in counts two and three that this violates a purported "statutory prohibition" at 7 U.S.C. § 2008h against providing "future loans for anyone who receives forgiveness." Compl. ¶¶ 81-83. And he asserts that the manner in which USDA plans to allegedly violate that statute independently violates equal protection. *Id.* at ¶ 81.

As to Plaintiff's claim that USDA plans to violate its statutory authority, the "only injury [he] allege[s] is that the law" will "not be[] followed" by USDA when it evaluates others farmers' eligibility for loans. *Lance v. Coffman*, 549 U.S. 437, 442 (2007). That injury is not concrete and particularized to Plaintiff. Rather, it is precisely "the kind of undifferentiated, generalized grievance about the conduct of government" that the Supreme Court has "refused to countenance in the past." *Gill*, 138 S. Ct. at

1931 (citation omitted). The Supreme Court "has repeatedly held that an asserted right to have the Government act in accordance with the law is not sufficient standing alone to confer jurisdiction on a federal court." *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990); *TransUnion*, 141 S. Ct. at 2206-07 (explaining that merely seeking to ensure a defendant's compliance with the law (and, as the case may be, to obtain damages) is not sufficient to establish standing where a plaintiff does not otherwise suffer a concrete personal harm due to the allegedly unlawful conduct); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482 (1982) (The "requirements of standing are not satisfied by 'the abstract injury in nonobservance of the Constitution asserted by . . . citizens.'" (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 223 n. 13 (1974))). "[O]bservation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Valley Forge Christian Coll.*, 454 U.S. at 485-86; *see Allen v. Wright*, 468 U.S. 737, 754–55 (1984), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Yet Plaintiff alleges nothing more than his general disagreement with USDA's conclusion that future § 1005 recipients will remain eligible for future USDA loans.

Plaintiff fails to make his allegations any more concrete with his blanket assertion that he will suffer competitive disadvantage because USDA plans to approve loans for others even though it allegedly lacks authority to do so. *See* Compl. ¶ 84. Plaintiff does not allege that any farmer who might receive another loan in the future is directly competing with his business. And he does not specify how he individually is incurring, or will incur, any economic loss whatsoever due to USDA's hypothetical approval of another borrower's future loan application. Accordingly, this conclusory assertion of competitive injury falls far short of satisfying the concrete and particularized requirement and shows only that Plaintiff's grievance is one "that he suffers in some indefinite way in common with people generally." *United States v. Richardson*, 418 U.S. 166, 172 (1974) (quoting *Frothingham v.*

*Mellon*, 262 U.S. 447, 488 (1923)); *see also Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) ("Conclusory allegations do not satisfy the requirements of Article III.").

That Plaintiff lacks a personal stake in the proper construction of USDA's loan-approval authority is best illustrated by his requested relief. As a remedy for these claims, Plaintiff seeks "a declaratory judgment that providing further loans to those who receive loan forgiveness is illegal and unconstitutional, both facially and as applied." Compl. p.17, Relief Requested. In effect, Plaintiff requests an "advisory opinion[] on [an] abstract question[] of law." *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995) (noting that Article III requirements exist to prevent courts from "issuing advisory opinions based on hypothetical situations"). This is exactly what Article III's injury-in-fact requirement is designed to prevent. *Cf. Lance*, 549 U.S. at 441 ("Refusing to entertain generalized grievances ensures that 'there is a real need to exercise the power of judicial review' in a particular case, and it helps guarantee that courts fashion remedies 'no broader than required by the precise facts to which the court's ruling would be applied.'" (citation omitted)). In short, because Plaintiff's alleged injury is nothing more than a general desire to see federal law followed (in accordance with his interpretation), he lacks the type of concrete and particularized injury required for Article III standing.[4]

---

[4] Plaintiff spent a large portion of his preliminary injunction motion arguing that, because (under Plaintiff's incorrect reading of the law) SDFRs will be barred from receiving future USDA loans, a ruling in his favor will actually benefit SDFRs. To the extent Plaintiff may rely on the same assertions in opposing the instant motion, they would be irrelevant to the Court's jurisdiction because Plaintiff cannot meet the requirements for third-party standing, which would require him to prove: (1) injury-in-fact to himself, (2) a close relationship with the SDFRs whose rights he alleges to be protecting asserts, and (3) a hindrance preventing SDFRs from raising their own claim. *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). Even assuming Plaintiff's reading of the statutory loan-eligibility bar were well-founded, Plaintiff fails to allege an injury-in-fact; he does not claim to have any relationship (much less a close one) to all SDFRs who stand to receive § 1005 funds, and he does not allege that SDFRs would be hindered from asserting their own legal interests.

**B. Plaintiff fails to allege an actual or imminent injury-in-fact.**

Additionally, Plaintiff's theory of injury is too speculative and remote to satisfy Article III, because it rests entirely on uncertain, future events. To satisfy Article III, Plaintiff must show more than a "possible future injury"; he must show that harm has actually occurred or is "certainly impending." *Whitmore*, 495 U.S. at 158. Neither conjectural future injuries nor alleged fear of such injuries are sufficient to confer standing. *See Clapper*, 568 U.S. at 409. "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'" *Lujan*, 504 U.S. at 564 n.2 (quoting *Whitmore*, 495 U.S. at 155).

Plaintiff does not allege any present harm. Rather, his complaint centers on an alleged plan by USDA to act outside of its statutory authority in the future by unlawfully approving future loan applications submitted by those who have received debt forgiveness. Compl. ¶ 81. Once this plan is realized, Plaintiff asserts that "he will be at a competitive disadvantage relative to similarly situated farmers." *Id.* ¶ 84. Even assuming that Plaintiff suffered any concrete harm related to that alleged future plan, it nonetheless fails Article III's "imminence" requirement. This alleged some-day competitive injury depends on the realization of several events that, if they will occur at all, lie far in the future. Before any real harm to Plaintiff's pocketbook could conceivably come to pass, the following events would have to occur: (1) USDA would have to distribute § 1005 funds to SDFRs, a result currently precluded by multiple nationwide injunctions, including one issued by this Court; (2) a recipient of § 1005 funds would have to apply for another direct or guaranteed loan; (3) USDA would have to determine that the applicant is eligible for the loan and approve the application—no small matter given existing eligibility restrictions, including on repeated borrowing, *see, e.g.*, 7 U.S.C. §§ 1922(b)(1), 1941(c)(1); and (4) the borrower would have to conduct business in a way that competes with Plaintiff. None of these events are likely to occur any time soon (if at all). Even if Plaintiff had

made such allegations, these future events are too speculative and remote to establish an imminent injury.

### C. Plaintiff alleges no injury specific to any independent "debt forgiveness" equal protection claim.

Plaintiff's alleged injuries with respect to the equal protection aspect of his debt-forgiveness claim in count two fail to establish standing for another reason: they are unconnected to any question related to USDA's loan-making authority and instead merely restate his purported injuries connected to his broader challenge to the provision of debt relief under to SDFRs under § 1005. As such, they run afoul of the fundamental principle that Plaintiff must "demonstrate standing for *each claim* he seeks to press." *DaimlerChrysler*, 547 U.S. at 352; *Allen*, 468 U.S. at 752 (emphasis added) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.").

In count two, Plaintiff reframes his allegations concerning USDA's alleged future violation of its statutory loan-making authority in terms of differential treatments—that is, he asserts that the *manner* in which USDA plans to disregard its statutory authority independently violates equal protection. According to Plaintiff, USDA intends to selectively waive the purported bar against receiving future loans only for recipients of § 1005 relief; and its doing so, he says, is a race-conscious action in violation of equal protection because § 1005 itself is race-conscious. Compl. ¶ 81. That harms him, he says, because he must "pay off his loans in full" if he wishes to remain eligible for future loans, but SDFRs benefitting from § 1005 relief need not. *Id.* ¶ 85.

These allegations, and Plaintiff's purported injury stemming from them, simply restate Plaintiff's equal protection challenge to USDA's implementation of § 1005 itself, in count one of his Complaint. If Plaintiff alleges that he is injured because he will not have his ledger wiped clean and then be allowed to apply for additional USDA loans, that asserted injury has to do with *§ 1005's implementation*, not USDA's determination of its authority to provide future loans to recipients of debt

forgiveness. Importantly, Plaintiff does not allege that USDA plans to allow any SDFR to obtain a future loan regardless of whether they have ever received any form of "debt forgiveness" as defined at 7 U.S.C. § 1991(a)(12)(A). *See supra* Background I.B. (discussing 7 U.S.C. § 1991(a)(12)(A)); *infra* Part IV. Indeed, there is no dispute that borrowers who receive the types of debt forgiveness specified in 7 U.S.C. § 1991(A)(12)(a) face the same eligibility hurdle to obtaining a future loan under 7 U.S.C. § 2008h. Section 2008h would equally limit the ability of any one of them to obtain a future USDA loan, regardless of whether they also have received the relief offered by § 1005.

Nor does Plaintiff allege that, after § 1005 is implemented, he will face any additional hurdles to obtaining a future USDA loan that an SDFR will not—there is no dispute that both now and after distribution of § 1005 funds, Plaintiff and SDFRs will face the same eligibility requirements that correspond to the loans offered by USDA. Thus, Plaintiff does not show any injury connected to USDA's alleged unequal treatment in the manner in which it approves loans. Rather, Plaintiff's alleged injury is that farmers who are eligible for § 1005 relief—which do not include him—will have their loans paid off in full. That injury is connected to his equal protection challenge to § 1005 itself in count one of his Complaint. It does not provide a jurisdictional hook to raise separate claims seeking declaratory relief as to USDA's authority to approve future loan applications for all borrowers "who receive loan forgiveness."[5] Compl. p.17, Relief Requested. Accordingly, Plaintiff fails to establish standing to raise his "debt forgiveness" equal-protection claim in count two, and the Court should dismiss that claim on this independent basis.

---

[5] This is further illustrated by the fact that a ruling on Plaintiff's equal protection challenge to § 1005 will fully resolve the equal protection allegations asserted with respect to future loan approvals: Whether the Court rules that providing § 1005 debt relief to SDFRs is consistent with equal protection principles or not, that ruling will necessarily moot any question as to whether allowing those same recipients to obtain future loans violates equal protection.

## II.    Plaintiff's claims are not ripe for review.

For similar reasons, Plaintiff's claims are not ripe for judicial review. Doctrines of ripeness and standing "unquestionably [] overlap." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc). "Like standing, ripeness is drawn from . . . Article III limitations on judicial power" and "serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Id.* at 525–26 (cleaned up). The ripeness analysis consists of two parts. First, courts ask whether the claim is "fit[] . . . for judicial decision," *Abbot Labs. v. Gardner*, 387 U.S. 136, 148 (1967), or in other words, whether it "arises in a concrete factual context and concerns a dispute that is likely to come to pass." *Warshak*, 532 F.3d at 525. Second, courts ask whether "withholding court consideration" would cause "hardship to the parties." *Abbot Labs.*, 387 U.S. at 149. Here, the answer to both questions is "no."

First, Plaintiff's claims are not "fit" for judicial review for the same reasons that he fails to allege an injury-in-fact. His claims turn on "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quotation omitted): USDA disbursing § 1005 funds to SDFRs; an SDFR applying for another loan; USDA approving that loan application; and the borrower at least competing with Plaintiff in the relevant market (which Plaintiff does not even allege will occur). Whether this series of events will come to pass at all, let alone whether they occur imminently and in such a way as to injure Plaintiff, is "'no more than conjecture' at this time." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). Moreover, to the extent Plaintiff seeks a declaration of USDA's authority to make or guarantee loans of *any* farmer who has ever received debt forgiveness, the record is not adequately developed to produce a fair adjudication on the merits. Indeed, Plaintiff overstates the scope of 7 U.S.C. § 2008h's limit on USDA's authority to authorize loans for those who received debt forgiveness. Contrary to Plaintiff' assertion, USDA does not "lack[] the authority to treat *anyone* who received loan forgiveness as eligible

for future loans," Compl. ¶ 83 (emphasis added), because statutes and regulations set forth various exceptions and even grant the Secretary some measure of discretion. For instance, in some cases, a borrower who has received debt forgiveness may reestablish loan eligibility by "cur[ing]" the "debt forgiveness . . . [through] repayment of the Agency's loss" and thereby remain eligible for a future loan. 7 C.F.R. § 764.101(d)(2). And even 7 U.S.C. § 2008h itself specifies circumstances that would allow USDA to make specific types of loans to those who received debt forgiveness under certain circumstances (*e.g.*, an emergency loan to borrower who has "not received debt forgiveness on a loan" after April 4, 1996, *id.* § 2008h(b)(2)(B)). It would be premature for the Court to grant Plaintiff's request for a broad, across-the-board declaration concerning USDA's loan-making authority, divorced from review of any specific USDA determination with respect to a particular loan application.

Second, delaying judicial review would cause no hardship to the parties. Plaintiff's challenge to USDA's future use of its loan-making authority does not require him to "modify his behavior in order to avoid future adverse consequences . . . or require [plaintiff] to engage in, or to refrain from, any conduct." *Warshak*, 532 F.3d at 531 (internal citations and alterations omitted). Plaintiff does not challenge any USDA action affecting his conduct in any way whatsoever—either now or in the future. As Plaintiff incurs no concrete harm from USDA's alleged plan to approve loans to others when (so he says), it should not, he will suffer no hardship from the Court "withholding . . . consideration" of his claims. *Abbott Labs*, 387 U.S. at 149.

III.    **Plaintiff lacks a private right of action to challenge USDA's general statutory authority to approve future loan applications.**

Even if Plaintiff satisfied Article III, he nonetheless lacks any private right of action to enforce any asserted statutory limits on USDA's authority to provide future loans to those who have received debt forgiveness. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause

of action in favor of that person." *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)). "Before individuals may file such a lawsuit, they must identify a statutory cause of action that allows them to do so." *Ohlendorf v. United Food & Com. Workers Int'l Union, Loc. 876*, 883 F.3d 636, 640 (6th Cir. 2018) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). The cause of action may be express or implied. *Id.*

Plaintiff does not identify a cause of action in his Complaint. The only statute he cites in support of his claim that USDA "plans" to act unlawfully is 7 U.S.C. § 2008h, the provision he alleges prevents USDA from making loans to recipients of debt forgiveness. That provision contains no express right for a private party to bring a claim in federal court to enforce its terms. *See Ohlendorf*, 883 F.3d at 640 ("Nothing in [the statute] says that private parties may enforce the law.").

Nor does the statute create an implied right of action. To show an implied right of action, the Court must be able to "infer that Congress created a private *right* and provided for a private *remedy*, all without taking the conventional route of doing so expressly." *Id.*; *Sandoval*, 532 U.S. at 286. Legislative intent "is determinative" in this regard. *Id.* Without a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87; *see Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 903 (6th Cir. 2014) ("If a statute fails to provide a private remedy, the federal courts may not create what Congress did not.").

There is no basis to infer that Congress intended to grant a private right of action through 7 U.S.C. § 2008h for borrowers to enforce any limitations on USDA's authority to grant loans to recipients of debt forgiveness. The statute does not purport to protect any right held by Plaintiff, or any other borrower, that would entitle him to any form of relief. *See Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 767 F.3d 554, 565 (6th Cir. 2014) (considering whether a statute was focused on the protection of certain individuals as a factor in determining whether the statute grants those individuals

a private right of action). And granting Plaintiff a private remedy would have no conceivable relation to any purpose furthered by general statutory limitations on USDA's authority to make loans to recipients of debt forgiveness, which has to do with minimizing losses to the Secretary. *E.g.*, 7 U.S.C. § 1991(a)(12)(A) (defining "debt forgiveness" as an action that "results in a loss to the Secretary"); *id.* § 2001(a) (directing the Secretary to avoid incurring a loss, "to the maximum extent possible," when considering write-down options). These statutory provisions are not remotely concerned with protecting farmers from competition from other farmers. *See Stew Farm*, 767 F.3d at 565. Plaintiff fails to show that 7 U.S.C. § 2008h, or any other statute, provides a private right of action to seek declaratory relief concerning USDA's loan-making authority.

## IV.    Plaintiff fails to state a claim for relief.

Finally, the Court should dismiss counts two and three for failure to state a claim, even assuming they are properly before the Court in the first instance. In claims two and three, Plaintiff asserts that a borrower who accepts the relief authorized by § 1005 will be forever precluded from obtaining a future USDA loan because a separate provision bars the Secretary from making or guaranteeing loans to past recipients of "debt forgiveness." Compl. ¶¶ 75-85; *see* 7 U.S.C. § 2008h(b)(1) ("[T]he Secretary may not make [or guarantee] a loan . . . to a borrower that has received debt forgiveness on" certain USDA direct or guaranteed loans.). Plaintiff's argument thus rests on his assumption that § 1005 loan payments are a form of "debt forgiveness" that triggers this general statutory bar providing on additional loans. Compl. ¶¶ 76-79. That assumption is wrong.

The debt relief provided in § 1005 is not "debt forgiveness" as that term is statutorily defined and understood. By statute, "the term 'debt forgiveness' means," with a few exceptions, "reducing or terminating a farmer program loan . . . in a manner that results in a loss to the Secretary, through" one of four methods:

> (i) writing down or writing off a loan under section 2001 of this title; (ii) compromising, adjusting, reducing, or charging-off a debt or claim under section 1981 of this title;

      (iii) paying a loss on a guaranteed loan under section 2005 of this title; or

      (iv) discharging a debt as a result of bankruptcy.

7 U.S.C. § 1991(a)(12)(A). Plaintiff makes no attempt to show—either in his Complaint or his motion for preliminary injunction—that § 1005 payments would fall within the definition that applies (and his Complaint omits the definition entirely). Indeed, that statutory definition references relief under three specific statutory authorities—§ 2001 (write off), § 1981 (compromise or charge-off), and § 2005 (loss on guaranteed loans)—and through bankruptcy. Section 1005, of course, is none of those.

      Nor does § 1005 incorporate the eligibility requirements specific to each form of forgiveness authorized by the relevant statutes. Section 1005, for instance, does not require a farmer to show a delinquency that was beyond the farmer's control or to submit a restructuring plan for the Secretary's consideration, which are prerequisites to a write-off or write-down under 7 U.S.C. § 2001. *See* 7 U.S.C. § 1991(a)(12)(A)(1). And it does not order the Secretary to place SDFRs on an alternate payment plan for collection of less than the full amount of their debts owed over a period of several years, as is the case with an adjustment offered under 7 U.S.C. § 1981. Instead, it provides only that a borrower who falls within the definition of SDFR set by the Act, *see* ARPA § 1005(b)(3), and holds a qualifying direct or guaranteed loan, *id.* § 1005(b)(1), is eligible for § 1005 debt relief. And to receive that relief, USDA requires only that the borrower formally respond to USDA's written offer of payment. *See* NOFA at 28,330, 28,331.

      Moreover, unlike the debt relief triggering the general statutory bar against the provision of future loans, the § 1005 payments offered to SDFRs will not "result[] in a loss to the Secretary." 7 U.S.C. § 1991(a)(12). Through ARPA, Congress appropriated funds from the Treasury to the Secretary to cover "the cost of loan modifications and payments under" Section 1005. ARPA § 1005(a). Thus, unlike the various forms of debt forgiveness identified in Section 1991—each of which is predicated

on the borrower's inability to pay the full amount of debt owed, *e.g.*, 7 U.S.C. § 2001 (write-downs),[6] and thus necessarily "results in a loss to the Secretary" to some degree—Section 1005 relief, drawing on funds newly appropriated by Congress, ensures that the Secretary remains whole.

Accordingly, the definition of "debt forgiveness" plainly does not cover the one-time emergency debt relief Congress authorized through § 1005. The text of § 1005 itself underscores that point. In that section, Congress did not employ the term "debt forgiveness" or otherwise references its definition at 7 U.S.C. § 1991(a)(12). Instead, Congress refers to the relief offered through ARPA as "farm loan assistance," ARPA § 1005 (title) (capitalizations removed), or "loan modifications and payments," *id.* at § 1005(a). Nor does Congress anywhere even remotely suggest within the text of § 1005 that SDFRs who accept such assistance will be barred from receiving future loans. "Had Congress . . . intended [§ 1005 payments] to have such an effect, it knew how to say so." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018). That it did not say so, expressly or impliedly, compels the conclusion that § 1005 debt relief is not meant to preclude SDFRs from receiving other USDA loans in the future. Any limitation on USDA's authority to authorize loans for recipients of "debt forgiveness," as that term is statutorily defined, is therefore irrelevant to § 1005.

Plaintiff's reliance on one provision appearing in a House-proposed version of § 1005 does not throw into question the straightforward reading of the statute's text. As Plaintiff stresses, that earlier version of § 1005 included language clarifying that the debt relief provided therein would "not affect the eligibility of such farmer or rancher for a farm loan after the date on which the payment is provided." *See* American Rescue Plan Act of 2021, 117 H.R. 1319, Title I, § 1005(3). Plaintiff hypothesizes that this language must have been proposed because Congress thought that accepting a § 1005 payments might "forever render[]" an SDFR "ineligible for future [USDA] loans." Pl.'s Mot.

---

[6] *See also* FSA Handbook, 5-FLP, available at https://www.fsa.usda.gov/Internet/FSA_File/5-flp_r00_a46.pdf.

for PI at 9. "Obviously," Plaintiff asserts, Congress did not intend that result. *Id.* Nevertheless, because § 1005 as-enacted omits that House-proposed language, Plaintiff asserts that Congress indeed accomplished what it did not intend: authorizing a relief measure that, once accepted, will be the last form of assistance that SDFR will ever be able to receive from USDA.

Even Plaintiff acknowledges the absurdity of the statutory construction he advocates. His interpretation would result in a law that effectively nullifies itself, canceling out the benefit it is meant to afford SDFRs by forever cutting off those beneficiaries from any further USDA loan assistance. *See* Pl.'s PI Br. at 9 (asserting that the law actually causes "substantial harm" to those Congress "aimed to help"). Such an approach to statutory interpretation runs counter to "an elementary rule of construction that '[an] act cannot be held to destroy itself.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995) (quoting *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 446 (1907)). Worse still, Plaintiff's approach turns on speculations about the reason for a proposal included in one version of a House bill that was evidently dropped without debate. While there may be various "tenable inferences" to draw from the initial inclusion of that provision and its absence in the enacted law, *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990), the more plausible one here is that Congress concluded that its inclusion would be superfluous. That inference is readily supported by the statutory definition of "debt forgiveness," which plainly does not include § 1005 relief, and is also consistent with both the text of § 1005 and the Congress's evident intent to provide emergency assistance to SDFRs. In any event, the text of the statute Congress enacted is always "[t]he best evidence of [Congress'] purpose." *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991).

The text of the relevant statutes provide no support for Plaintiff's claims. Thus, Plaintiff fails to state a valid claim that continued eligibility for future loans after receiving § 1005 relief contravenes USDA's statutory authority. If the Court concludes that it has jurisdiction and Plaintiff has a cause of action, the Court should nonetheless dismiss counts two and three for failure to state a claim for relief.

# CONCLUSION

For the foregoing reasons, the Court should dismiss counts two and three for lack of jurisdiction or, alternatively, failure to state a claim.

DATE: October 13, 2021                 Respectfully submitted,

                                       JOSEPH C. MURPHY, JR.
                                       Acting United States Attorney

                                       *s/ Audrey M. Calkins*
                                       Audrey M. Calkins (TN BPR # 030093)
                                       Audrey.calkins@usdoj.gov
                                       167 N. Main Street, Suite 800
                                       Memphis, TN 38103
                                       901-544-4231
                                       Fax: 901-544-4230

                                       BRIAN M. BOYNTON
                                       Acting Assistant Attorney General

                                       LESLEY FARBY
                                       Assistant Branch Director
                                       Civil Division, Federal Programs Branch

                                       */s/ Kyla M. Snow*
                                       EMILY SUE NEWTON (VA Bar No. 80745)
                                       Senior Trial Counsel
                                       KYLA M. SNOW (Ohio Bar No. 96662)
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, NW
                                       Washington, D.C. 20005
                                       Tel: (202) 514-3259 / Fax: (202) 616-8460
                                       Kyla.snow@usdoj.gov

                                       *Counsel for Defendants*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2021, the foregoing Motion to Dismiss was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Kyla M. Snow*
KYLA M. SNOW
Trial Attorney, U.S. Department of Justice