# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

_____

| | | |
|---|---|---|
| ROBERT HOLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-01085-STA-jay |
| | ) | |
| THOMAS J. VILSACK, in his official | ) | |
| capacity as Secretary of Agriculture; | ) | |
| and ZACH DUCHENEAUX, in his official | ) | |
| capacity as Administrator of the Farm | ) | |
| Service Agency, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## DEFENDANTS' MOTION FOR RECONSIDERATION OF STAY DECISION OR TO STAY DISCOVERY AND OTHER CASE DEADLINES PENDING RESOLUTION OF MOTION TO DISMISS

_____

# INTRODUCTION

The legal and factual landscape has changed significantly since this Court denied the Government's motion to stay the proceedings in this case, and the Court's primary bases for doing so no longer apply. *See* Defs.' Stay Mot., ECF No. 45. The Government thus respectfully requests that the Court reconsider and reverse that decision and stay proceedings in this case as it did in *Joyner*.

First, since denying the Government's stay motion here, this Court granted the Government's stay motion in *Joyner*, a case raising an identical challenge to § 1005, because the plaintiff is a member of the class action in the Northern District of Texas certified under Federal Rule of Civil Procedure Rule 23(b)(2), *see* Class Cert. & PI Order, ECF No. 60, *Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex.). *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.), Order (Aug. 19, 2021), ECF No. 21. On that basis, among others, this Court held that continuing litigation in this court, concurrently with the class action, would waste judicial resources and not benefit the plaintiff, whose interests were being adequately represented in the class action and who is protected by overlapping preliminary injunctions in the meantime. That conclusion applies equally to Plaintiff in this case, who does not dispute that he is a member of the certified classes. Indeed, largely for that reason, all six courts to have resolved Defendants' similar stay motions have issued stays pending resolution of the *Miller* class action. *Infra* Background II.

Second, the *Miller* court recently issued an order confirming that the Rule 23(b)(2) classes certified there afford members no opportunity to opt out. *Miller*, Order Denying Opt Out, ECF No. 100 (attached as Ex. A). That order clarifies that Plaintiff here may not opt out of the *Miller* class action—contrary to his prior assertion that he might seek to do so—and that his interests thus will not go unrepresented. And the order resolves any question whether Plaintiff will "necessarily be bound by [the] judgment" entered by the *Miller* court with respect to the classes to which he belongs. Pl.'s Opp'n to Stay 13 n.2, ECF No. 48. He will. And so will the Government. The *Miller* order thus

underscores the fact that allowing Plaintiff to continue litigation individually will be unnecessarily duplicative and risk placing inconsistent obligations on Plaintiff and the Government if the courts' judgments conflict.

Third, the Court in *Miller* recently issued a scheduling order, thus addressing any concerns expressed in the Court's stay denial over delayed resolution of Plaintiff's claim. Plaintiff, who is adequately represented by class counsel in *Miller*, will have his claim adjudicated expeditiously in that case.

Fourth and finally, Defendants have moved to dismiss the only claims distinguishing this case from *Joyner* and *Miller*, Plaintiff's "debt forgiveness" claims at counts two and three of the Complaint. *See* Motion to Dismiss, ECF No. 57. The Court had noted in its stay order that those claims might remain unadjudicated if the action here is stayed. But resolution of the equal protection challenge to § 1005 in *Miller* could moot Plaintiff's ancillary claims. And in any event, as Defendants' motion to dismiss shows, the Court lacks subject-matter jurisdiction over Plaintiff's additional claims, and they otherwise fail to state a claim. Without those claims at issue, there is no distinction between *Joyner* and this case warranting a stay there but not here.

Based on these new facts and legal developments occurring since August 2, Defendants respectfully submit that the Court should reconsider its prior stay order and stay this case pending resolution of the certified class action. Alternatively, if the Court is not inclined at this time to issue a stay pending resolution of the class action, it should stay discovery and defer entry of case deadlines until after it resolves Defendants' jurisdictional motion to dismiss Plaintiff's "debt forgiveness" claims. Courts in this district often exercise their discretion to stay discovery pending dispositive motions— especially those challenging a court's jurisdiction. A stay of discovery on those claims accords with various courts' recognition that jurisdiction is a threshold issue that must be addressed before all else. But a stay of discovery on the only other claim in this case—Plaintiff's equal protection challenge to

§ 1005—is likewise warranted while the Court considers the motion to dismiss. That § 1005 claim is already being litigated in *Miller* on Plaintiff's behalf (and along a similar timeline as would apply here).

Thus, as explained further below, Defendants respectfully request that that Court reconsider its prior denial of a stay in this case and stay proceedings pending resolution of the class action in *Miller*. But if the Court is not inclined to stay the case entirely at this time, it should instead stay discovery and defer entering a scheduling order until after it resolves Defendants' motion to dismiss. And while the stay of discovery should extend to all claims raised in this case, at a minimum the Court should stay discovery on Plaintiff's "debt forgiveness" claims at issue in the motion to dismiss.

## BACKGROUND

### I.    The Court's August 2, 2021 Order Denying Defendants' Stay Motion

On July 1, 2021, the Northern District of Texas certified two classes under Rule 23(b)(2) that, like Plaintiff here, challenge § 1005 on equal protection grounds. *See Miller*, Class Cert. & PI Order, ECF No. 60. The court simultaneously issued a class-wide preliminary injunction that enjoins disbursement of § 1005 funds. *Id.* Plaintiff does not dispute that he is a member of the certified classes. *See generally* Pl.'s Opp'n to Stay (Pl.'s Opp'n"), ECF No. 48.

Less than one week after the *Miller* court's order, this Court entered a preliminary injunction that likewise enjoins disbursement of § 1005 funds. PI Order, ECF No. 41. Shortly thereafter, Defendants moved to stay this case and all other cases (save one[1]) around the country where plaintiffs have brought virtually identical equal protection challenges to § 1005.[2] Defs.' Stay Mot., ECF No. 45.

---

[1] In the one case where Defendants did not move for a stay, the parties filed a stipulation to stay the case so long as the plaintiff remains a member of the classes certified in *Miller*. *Nuest v. Vilsack*, No. 21-cv-1572 (D. Minn.), ECF No. 19.

[2] This case is one of twelve cases nationwide challenging § 1005 on equal protection grounds and seeking declaratory and injunctive relief.

Defendants' motion to stay primarily argued that: (1) continuing litigation in this Court would be duplicative of the litigation in the Northern District of Texas and risk inconsistent results, because Plaintiff is a member of the mandatory classes certified in that court under Rule 23(b)(2) asserting the same equal protection challenge as Plaintiff, Defs.' Stay Mot. 6-8; (2) because the Rule 23(b)(2) classes afford no opportunity to opt-out, Plaintiff (and Defendants) will be bound by the relief granted in that case should the class plaintiffs prevail on their claim, *id.*; (3) a stay will promote judicial efficiency and conserve government resources, *id.* at 6-9; and (4) courts routinely grant stays pending resolution of a related class action to avoid duplicative litigation, *id.* at 9-12.

Plaintiff responded in opposition to the stay motion on July 28, Pl.'s Opp'n to Stay, ECF No. 48. Six days later, on August 2, this Court issued its order denying the stay. Stay Order, ECF No. 49.

The Court denied Defendants' stay motion on three primary bases. First, the Court concluded that the Sixth Circuit's decision in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021),[3] is binding on this Court whereas it is not binding in *Miller*. Stay Order at 2. Second, the Court agreed with Plaintiff that he would have no say in the pace or strategy used in the *Miller* litigation and concluded that Plaintiff's interests may not be completely aligned with the class plaintiffs' interests in *Miller*. *Id.* at 3. The Court noted that Plaintiff here brings two additional claims to the § 1005 challenge in *Miller*, which concern USDA's loan-making authority. *Id.* Finally, the Court reasoned that "Plaintiff may choose to opt out of the *Miller* classes," Stay Order at 3, as his opposition to Defendants' stay motion had suggested, Pl.'s Opp'n at 13 n.2, and that could "leav[e] his interest unrepresented," Stay Order at 3. The Order did not address Defendants' argument that Plaintiff is a member of the classes certified in *Miller* under Rule 23(b)(2), which provides no opportunity to opt out.

---

[3] As Defendants explained in their opposition to Plaintiff's motion for a preliminary injunction, *Vitolo* concerned a different remedial measure applicable to a different agency. Defs.' PI Opp'n 13-14, ECF No. 28-1.

## II.   **Stay Decisions in Six Other Cases**

This Court's decision in *Holman* was the first to address Defendants' arguments for a stay. Meanwhile, litigation over Defendants' motions to stay in nine other cases was ongoing. Six of those motions have been decided—all in Defendants' favor. *See Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.), Order (Aug. 19, 2021), ECF No. 21; *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.), Order (Aug. 16, 2021), ECF No. 33; *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.), Order (Aug. 23, 2021), ECF No. 66; *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.), Order (Aug. 30, 2021), ECF No. 40; *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.), Order (Sept. 7, 2021), ECF No. 20; *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.), Order (Sept. 21, 2021), ECF No. 42. In the three other cases, the motions remain pending, *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.), and in one of those three cases, the court granted Defendants' motion for an administrative stay of case deadlines pending further order from the court, *Kent*, Minute Order, ECF No. 18. In the only other case where litigation is ongoing, Defendants' motion to stay, which was filed four days after the court entered a scheduling order, is pending after recently becoming ripe for decision.[4] *See Wynn*, No. 3:21-cv-514, ECF Nos. 43, 44.

The majority of those courts stayed proceedings in part because they recognized that the respective plaintiffs would likely be unable to opt out of the mandatory (b)(2) classes that the *Milller* Court certified. *See Carpenter* Order 5-6 (calling "speculative" a scenario in which the plaintiff would be permitted to opt out of the *Miller* classes because "Rule 23(b)(2) classes are 'mandatory classes' with no opt-out opportunity") (quoting *Wal-Mart, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)); *Joyner* Order 6 (citing same); *Faust* Order 2 (citing same); *Tiegs* Order 3 (citing same). In granting the stay motions, the courts also rejected the plaintiffs' arguments that they should be permitted to litigate their

---

[4] The Court in *Wynn* allowed Defendants to file a reply and Plaintiff to file a sur-reply, *Wynn*, ECF No. 56, and the latter was filed on September 7, 2021, *id.*, ECF No. 61.

individual claims with their chosen counsel in their chosen fora on the grounds that, *inter alia*: (1) doing so would waste judicial, party, and taxpayer resources, *see Carpenter* Order 9; *Faust* Order 2; *Joyner* Order 3; *McKinney* Order 4; *Tiegs* Order 6; *Dunlap* Order 4; (2) the *Miller* Court had determined that class counsel will adequately represent the interests of all class members, *see McKinney* Order 4; *Joyner* Order 2-3; *Dunlap* Order 4; and (3) the plaintiffs could use procedural mechanisms, such as intervention or amicus filings, to raise any concerns with class counsel, *see McKinney* Order 4; *Joyner* Order 2-3; *Faust* Order 2.

### III.   This Court's August 19, 2021 Grant of Defendants' Stay Motion in *Joyner*

On August 19, 2021, this Court granted Defendants' motion to stay in *Joyner*, where the Plaintiff brings a challenge to § 1005 identical to Plaintiff challenge here. *See Joyner* Stay Order. Unlike in this case, the Court granted Defendants leave to file a reply in support of their motion to stay, which the plaintiff there did not oppose. *Joyner*, Defs.' Mot. for Leave, ECF No. 16. The reply brief allowed Defendants to address, among other things, "the Court's conclusion in *Holman* that a plaintiff may opt out of the Rule 23(b)(2) class." *Id.* at 2.

The Court issued its decision staying *Joyner* three days after Defendants filed their reply brief. *Joyner* Stay Order. Its decision was based in part on the fact that the plaintiff is a member of the certified class action in *Miller*. Indeed, the "[m]ost compelling[]" factor in favor of a stay, the Court explained, was the fact that the plaintiff was a member of, and thus "bound by[,] the class certification in *Miller*, which was certified under Rule 23(b)(2)." *Joyner* Stay Order 6. As the Court stated, "[t]he Supreme Court has instructed that classes certified under Rule 23(b)(2) are mandatory, providing 'no opportunity' for class members to opt out and not even requiring district courts to afford class members notice of the certification." *Id.* (quoting *Wal-Mart*, 564 U.S. at 361-62). The Court further concluded that, because of the plaintiff's membership in the certified classes, it would be a waste of

judicial resources to continue litigation in this Court concurrently with *Miller*. *Id.*[5] And the Court also noted that the plaintiff would not be prejudiced by the stay, because class counsel would adequately represent his interests and Plaintiff could avail himself of intervention or other procedural tools should he wish to try to "control[] the pace of the litigation and the legal theories employed[.]" *Id.* at 5. Thus, the plaintiff would "not be deprived of 'his day in court,'" as he asserted. *Id.* at 6. In the meantime, the Court stated, the preliminary injunction in *Holman* would preserve Plaintiff's interests. *Id.* at 4.

Finally, the Court distinguished *Joyner* from *Holman* on the ground that *Holman* raises additional claims concerning USDA's authority to grant additional loans to farmers who receive § 1005 debt relief that were not raised in *Joyner* or *Miller*. *Id.* at 4 n.1.

## IV.   The *Miller* Court's Denial of Various Plaintiffs' Motion to Opt Out

On September 3, 2021, plaintiffs in five cases pending in other jurisdictions moved to opt out of the classes certified in *Miller* or for an amendment of the class certification order to exclude them. *Miller*, Pl.'s Opt Out Mot., ECF No. 78. The Government opposed the motion. *Miller*, Def.'s Opp'n, ECF No. 88.[6]

---

[5] The Court found this conclusion was further underscored by the fact that *Miller* was the first-filed case and therefore had "priority over" subsequently filed cases. The Court's stay order in this case did not address the first-filed rule, although Defendants relied on that as a basis for a stay here as well. Plaintiff's stay opposition argued that the first-filed rule should not apply because the *Miller* Court did not have jurisdiction over the action filed there until the plaintiffs filed an amended complaint on the same day this Plaintiff filed his Complaint. Pl.'s Opp'n at 15. But the propriety of the first court's jurisdiction "is never a condition precedent to applying" the first-filed rule. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999) (citing cases from other circuits). "[T]he 'chronology of events' factor" in the first-filed analysis "simply asks which of the two overlapping *cases* was filed first." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790 (citations omitted) (6th Cir. 2016) (emphasis added); *see also Carpenter* Order 6 n.2 (rejecting a similar argument as "unpersuasive" and holding that "[t]here is no dispute that jurisdiction vested first with the *Miller* court").

[6] Although Plaintiff here had noted that he might move to opt out of the classes certified in *Miller*, Pl.'s Opp'n to Stay 13 n.2, and this Court's order denying Defendants' stay motion cited that potential as among the reasons to deny the stay, Stay Order 3, Plaintiff did not move to opt out.

Earlier this week, the *Miller* court denied that motion. *Miller*, Order Denying Opt Out, ECF No. 100. The court observed at outset that the movants could not "explain how they could, as a practical matter, be excluded for the certified classes." *Id.* at 2. Indeed, the court continued, "no court has permitted an opt out in these circumstances," where the class "representatives sought purely injunctive relief," as they do in *Miller. Id.* at 3. And the court explained that the lack of precedent on that score simply "underscore[d] the commentaries' observations that" allowing opt out of a Rule 23(b)(2) class "'would thwart the objectives of representative suits under'" that Rule. *Id.* at 3 (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1784.1 (3d ed.)). The court saw no reason to conclude differently there. It held that allowing the movants to opt out, or otherwise excluding them from the classes, "would undermine the very reasons the Court certified the classes"— among them being the fact that "answering Plaintiffs' substantive legal questions will provide a common answer for all class members regarding issues of law," and any relief granted "would apply generally to the classes as a whole[.]" *Id.* at 4.

## V.   Recent Procedural History in This Case

When the Court issued its preliminary injunction order in July, it instructed the parties to meet and confer and submit a joint proposed scheduling order within 14 days. PI Order 25, ECF No. 41. Defendants filed their stay motion before the expiration of that 14-day time-period. At the same time, Defendants requested an administrative stay of case deadlines pending resolution of the broader motion to stay the case. Admin. Stay Mot., ECF No. 46. The Court granted in part and denied in part the administrative-stay motion, declining to enter an administrative stay but continuing all case deadlines, to "be re-set at a later date" pending resolution of the motion to stay the case. Admin. Stay Order, ECF No. 47. After the Court denied Defendants' stay motion on August 2, it again ordered the parties to submit a joint proposed scheduling order within 14 days. Stay Order at 3-4. The Court also set a scheduling conference for September 2, ECF No. 50, which it subsequently deferred to

October 7, *see* August 25, 2021 Order, ECF No. 54. Before the scheduling conference, the parties submitted competing proposed case schedules. Joint Proposed Schedule, ECF No. 51. A week before the scheduling conference, on September 28, 2021, counsel for Plaintiff sent counsel for Defendants initial discovery requests.

At the October 7 scheduling conference, Counsel for the Government urged the Court to stay this case for the reasons it articulated in *Joyner*, or, in the alternative, to defer setting a schedule pending resolution of Defendants' forthcoming jurisdictional motion to dismiss. The Court ordered the Government to file its motion to dismiss by October 13, 2021, and stated that is would consider the arguments for a stay in an appropriate written motion. It also ordered the parties to submit a new joint proposed scheduling order that splits the difference between the dates provided in their previous proposed schedules. Minute Order, ECF No. 56. Pursuant to the Court's order, the Government filed its motion to dismiss on October 13, 2021. It now files this motion for reconsideration. The parties will also submit a joint proposed scheduling order, which the Government maintains the Court should enter only if it denies this motion.

## ANALYSIS

I.   **New Events Warrant Reconsideration of the Court's Stay Decision and Entry of a Stay Pending Resolution of the Class Action in the Northern District of Texas.**

Events occurring since the Court denied Defendants' stay motion on August 2 warrant reconsideration of that decision and a stay of this case. "A district court has the inherent power to reconsider, rescind, or modify an interlocutory order before entry of a final judgment." *Tyler v. Taco Bell Corp.*, No. 2:15-cv-02084-JPM-cgc, 2016 WL 3162145, at *1 (W.D. Tenn. June 3, 2016) (citing *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945-46 (6th Cir. 2004)). Under Federal Rule of Civil Procedure 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Hollis v. Dump Cable, Inc.*, No. 1:13-

CV-01077-JDB-EGB, 2014 WL 12526725, at *2 (W.D. Tenn. Aug. 12, 2014). The Western District

of Tennessee requires that a motion for reconsideration show one of three elements:

> (1) a material difference in fact or law from that which was presented to the Court
> before entry of the interlocutory order for which revision is sought, and that in the
> exercise of reasonable diligence the party applying for revision did not know such fact
> or law at the time of the interlocutory order; or (2) the occurrence of new material
> facts or a change of law occurring after the time of such order; or (3) a manifest failure
> by the Court to consider material facts or dispositive legal arguments that were
> presented to the Court before such interlocutory order.

*Hensley v. Methodist Healthcare Memphis*, No. 13-2463-STA-cgc, 2014 WL 11514825, at *2 (W.D. Tenn.

Sept. 26, 2014) (quoting Local Rule 7.3). Additionally, Local Rule 7.3 prohibits a party from using a

motion for reconsideration to "repeat[] any oral or written argument made by the movant in support

of or in opposition to the interlocutory order that the party seeks to have revised." *Id.* (quoting Local

Rule 7.3).

There are several material differences in law and fact occurring after August 2 that warrant

reconsideration of the Court's stay decision issued on that date. The first is this Court's August 19

legal conclusion in the *Joyner* stay decision that the plaintiff was "bound by the class certification in

*Miller*, which was certified under Rule 23(b)(2)" and afforded Plaintiff no "[]ability to opt out." *Joyner*

Order 6. The stay order in this case did not address the mandatory nature of the classes certified in

*Miller*, but the Court's subsequent legal conclusion in *Joyner* applies equally to Plaintiff here. As in *Joyner*,

Plaintiff in this case does not dispute that he is a member of the certified classes raising an identical

§ 1005 equal protection claim. Accordingly, *Joyner* makes plain that Plaintiff's claim is being litigated

simultaneously in two courts—as an individual in this court and as part of the class action in Texas—

which results in unnecessarily duplicative litigation and heightens the risk that he, and Defendants,

will be subject to inconsistent judgments on the same claim.

Moreover, the opinion in *Joyner* shows that, because Plaintiff's claim is being litigated on his

behalf in *Miller*, he will not be prejudiced by a stay. Indeed, *Joyner* credited "the *Miller* court's finding

that counsel for that class action 'will adequately represent the interests of class members similarly situated in zealously pursuing the requested relief." *See Joyner* Order 5. The judicial system, on the other hand, will be prejudiced by the "inefficient use of judicial resources to continue litigation in this court while the *Miller* case is ongoing." *Joyner* Order 6. These conclusions in this Court's *Joyner* decision, issued after the stay order here, warrant a stay of this case.

Second, the *Miller* court's recently-issued order denying some plaintiffs' motion to opt out further confirms Plaintiff's "inability to opt out of the *Miller* class action." *Joyner* Order 6. In opposing Defendants' Motion to Stay, Plaintiff suggested that he might move to opt out of the classes, and even posited that not allowing him to opt out could raise due process concerns. Pl.'s Opp'n at 13 n.2. In this Court's decision denying a stay, the Court also reasoned that "Plaintiff may choose to opt out of the *Miller* classes, thus leaving his interests unrepresented." Stay Order 3. But the *Miller* decision resolves any question about Plaintiff's opt-out rights. Plaintiff has no ability to opt out of the class action. Thus, Plaintiff's interests will undoubtedly be represented, regardless of whether this litigation proceeds. And it is undisputed that the judgment and relief entered in *Miller* will apply equally to Plaintiff just as it applies to all other members of the classes to which he belongs. *Miller*, Order Denying Opt Out at 4. Indeed, as the *Miller* decision explains, allowing Plaintiff to proceed here, separately from the classes to which he belongs, would thwart the very purpose of Rule 23(b)(2) class certification. *Id.* "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. The *Miller* decision clarifying Plaintiffs' inability to opt out of that class action is another reason to revisit the Court's prior order and stay this litigation.

Additionally, the court in *Miller* recently entered a scheduling order, *see Miller*, Scheduling Order, ECF No. 85, that adopts deadlines in line with those to which the parties have agreed in this

case (should the Court deny this Motion) and will be reflected in their joint proposed scheduling order. The *Miller* scheduling order addresses one of the Court's concerns in its stay denial that Plaintiff might be prejudiced by any delays in the *Miller* litigation. Stay Order 3. The *Miller* court's scheduling order shows that the case is on track to be resolved expeditiously, on pace with the litigation schedule that would govern litigation in this Court. Accordingly, this new development likewise weighs in favor of staying this case. Meanwhile, Plaintiff's interests are protected by the overlapping preliminary injunctions, including the one issued in this case. *See Joyner* Order 4-5.

Finally, Plaintiff's "debt forgiveness" claims in counts two and three of his Complaint, which provide the sole distinction between this case and *Miller* and *Joyner*, *see Joyner* Order 4 n.1,[7] are now subject to a jurisdictional motion to dismiss, *see* Defs.' Mot. to Dismiss. As Defendants argue in that motion, the Court lacks subject-matter jurisdiction over those claims for several reasons—including because Plaintiff lacks Article III standing—but Plaintiff would fail to state a claim even if counts two and three were properly before this Court. *See generally id.* And apart from those claims, there is no distinction between *Joyner* and this case that would warrant a stay there but not here. Thus, the pending jurisdictional motion to dismiss is an additional factual change that warrants reconsideration of the stay motion. At the very least, the Court should stay all proceedings apart from the litigation on the motion to dismiss, which would ensure that "Plaintiff's claim[s] concerning eligibility for future loans" are addressed, Stay Order 3, while at the same time allowing Plaintiff to participate in the class action

---

[7] Indeed, Plaintiff did not argue in his brief opposing a stay that his § 1005 claim is distinct from the one asserted in *Miller*. Rather, he asserted that he may not agree with every form of *relief* that may be sought by the classes—namely, expansion of § 1005 to grant relief to Plaintiff—if the *Miller* Court concludes that § 1005 as currently implemented is unconstitutional. Pl.'s Opp'n at 10-11. But questions of proper relief are not yet before any court, including *Miller*. *See, e.g.*, *Miller*, Stipulation ¶ 6, ECF No. 83 (stating that the parties will "separately brief the appropriate remedy" if the court rules in plaintiff's favor on the merits). And this Court in *Joyner* rejected the plaintiff's contention that the specific remedy he sought provided a basis for denying a stay there. *Joyner* Order 4. Moreover, as previously stated, nothing precludes Plaintiff from attempting to influence the arguments made in *Miller*, either now or if and when remedies are at issue, through intervention or other procedural mechanisms. *Id.* at 6.

litigation over his § 1005 claim through intervention or other procedures, *Joyner* Order 5 (noting the availability of intervention or other mechanisms to influence the court of the litigation); *infra* Part II. But staying the case altogether makes even more sense. As further stated in the motion to dismiss, these additional claims may be mooted if the *Miller* court determines that § 1005 is unconstitutional. Defs.' Mot. to Dismiss 13 n.5, ECF No. 57. Thus, even setting aside the jurisdictional issues, continuing litigation here solely based on the existence of those claims may well result in unnecessary time and expense to the parties and the Court.

Each of the above events occurring since this Court's August 2 denial of Defendants' stay motion—(1) the Court's stay order in *Joyner* reflecting that Plaintiff's claim is being litigated in multiple courts given his membership in the mandatory Rule 23(b)(2) classes; (2) the *Miller* court's order denying other plaintiffs' motion to opt out; (3) the *Miller* court's recent scheduling order demonstrating that litigation would proceed there apace with this one, thus addressing any concerns over delayed adjudication of Plaintiff's claim; and (4) Defendants' motion to dismiss showing that the Court lacks subject-matter jurisdiction over the only claims distinguishing this case from *Joyner* and *Miller*—warrants revisiting that denial. For any and all of the above reasons, the Court should reconsider its prior decision and stay this case pending resolution of the *Miller* class action.

**II.     The Court Should Stay Discovery And Defer Entry Of Case Deadlines Pending Resolution of Defendants' Jurisdictional Motion to Dismiss Counts Two and Three of the Complaint.**

If the Court is not inclined to revisit its prior order and enter a stay at this time, it should still stay discovery and defer entering case deadlines until after resolution of Defendants' jurisdictional motion to dismiss. "Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank,* 190 F.3d 708, 719 (6th Cir. 1999) (citing *Landis v. North Am. Co.,* 299 U.S. 248, 254–55 (1936)); *Kareem v. JPMorgan Chase Bank, N.A.,* No. 15-4387, 2016 WL 9405838, at *2 (6th Cir. Nov. 21, 2016) ("A court has the

discretion to stay discovery until questions that may dispose of the case, including a motion to dismiss for failure to state a claim, are determined." (citing *Hahn,* 190 F.3d at 719)). "[W]hen considering a motion to stay discovery, 'a court weighs the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery.'" *Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-02482-TLP-cgc, 2021 WL 1894821, at *1 (W.D. Tenn. Apr. 22, 2021) (quoting *Bowens v. Columbus Metro. Libr. Bd. of Trs.*, No. 2:10-cv-00219, 2010 WL 3719245, at *1 (S.D. Ohio Sept. 16, 2010)). While the party seeking relief from discovery bears the burden of showing it is appropriate, that burden is "is lighter" when the party "seeks a stay, rather than a prohibition, of discovery." *Wright v. Blair*, No. CV 10-2304, 2010 WL 11452308, at *1 (W.D. Tenn. June 22, 2010) (quoting *Rothstein v. Steinberg*, No. 5:08CV0673, 2008 WL 5716138, at *3 (N.D. Ohio June 9, 2008)).

If granted, Defendants' motion to dismiss would dispose of two of the claims in this case. And once those claims are dismissed, the only remaining claim will be Plaintiff's equal protection challenge to § 1005. For the reasons outlined in *Joyner*, any litigation on that claim should be stayed pending resolution of the duplicative litigation in the class action in the Northern District of Texas to which Plaintiff belongs. Thus, the Court should exercise its broad discretion and stay all discovery and defer entry of all case deadlines in this case aside from the parties' agreed briefing schedule on Defendants' motion to dismiss; but at a minimum, the Court should stay discovery related to Plaintiff's debt forgiveness claims at counts two and three of the Complaint pending resolution of Defendants' jurisdictional motion to dismiss.

For starters, Defendants filed a dispositive motion for which discovery is unnecessary, and "[s]tays are favored where a case can be resolved 'based on legal determinations that could not be altered by any further discovery.'" *Lubinski v. Hub Grp. Trucking, Inc.*, No. 2:14-CV-02843-JPM, 2015 WL 4603878, at *1 (W.D. Tenn. July 30, 2015) (quoting *Muzquiz v. W.A. Foot Mem'l Hosp., Inc.*, 70 F.3d

14

422, 430 (6th Cir. 1995)); *Osborn v. Griffin*, No. CV 11-89-WOB-CJS, 2011 WL 13156649, at *1 (E.D. Ky. Dec. 9, 2011) ("[L]imitations on discovery are particularly appropriate when the claims at issue may be dismissed based on legal or procedural determinations for which discovery is not necessary."). A week before the October 7 scheduling conference, counsel for Plaintiff sent counsel for Defendants requests for production, requests for admission, and interrogatories. But none of the information sought in those requests is relevant to any of the issues raised in Defendants' motion to dismiss. Discovery is not necessary to resolve the Court's jurisdiction—specifically, whether Plaintiff has Article III standing and whether his claims are ripe for judicial review. Nor is discovery necessary to resolve the remaining issues which turn on statutory interpretation—specifically, whether any statute grants Plaintiff a private right of action to bring his claims and whether, on the merits, § 1005 relief falls within the statutory definition of "debt forgiveness." That discovery has no bearing on these legal issues weighs in favor of a stay pending resolution of the motion to dismiss. *See Lani v. Schiller Kessler & Gomez, PLLC*, No. 3:16-CV-00819-GNS, 2017 WL 3092098, at *2 (W.D. Ky. Apr. 4, 2017) (granting a stay of discovery when the defendants moved to dismiss for lack of subject matter jurisdiction and plaintiff had no need for discovery to respond to that motion). Indeed, Plaintiff's need for discovery is dubious even on the merits of Plaintiff's equal protection challenge to § 1005. *See Tiegs* Stay Order 5 ("[I]t is unclear what facts plaintiffs intend to discover" that would be relevant to their "facial" "challenge to section 1005").

Moreover, because Defendants' motion to dismiss raises several challenges to the Court's subject-matter jurisdiction, a stay of discovery is especially appropriate. "Challenges to the court's personal or subject-matter jurisdiction should take priority." *In re Copper Tubing Litig.*, No. 04-2771 DV, 2006 WL 8434911, at *4 (W.D. Tenn. Oct. 3, 2006) (quoting Manual for Complex Litigation (4th ed.) § 11.32 (2004)). Jurisdiction "is a threshold issue that must be present to support any subsequent order of the district court," *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010), including

discovery orders, *Lewis v. Loftin*, No. 16-2726-DKV, 2017 WL 5505337, at *1–2 (W.D. Tenn. Mar. 1, 2017) (court should determine whether it had jurisdiction before entering discovery orders). As the Supreme Court has put it, "[t]he requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception," and therefore "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citations omitted).

Thus, it is common for courts in this district (and others) to stay discovery while resolving questions concerning the court's power to exercise jurisdiction over a case. *See In re Copper Tubing Litig.*, 2006 WL 8434911, at *4 (citing cases in the Southern District of New York, the Southern District of Iowa, and the Western District of Louisiana); *see also Lani*, No. 2017 WL 3092098, at *2 (granting a stay of discovery when the defendants moved to dismiss for lack of subject matter jurisdiction and plaintiff had no need for discovery to respond to that motion); *Lewis v. Loftin*, 2017 WL 5505337, at *1–2 (staying discovery pending motion to dismiss for lack of personal jurisdiction); *Victoria's Secret Stores Brand Mgmt., Inc. v. Bob's Stores LLC*, No. 2:13-CV-1261, 2014 WL 1045994, at *2 (S.D. Ohio Mar. 17, 2014) ("[B]ecause personal jurisdiction is a threshold issue that determines whether a court has the power to bind the defendant, the nature of the pending motion in this case supports a stay of merits discovery."); *Ohio Power Co. v. Frontier N. Inc.*, No. 2:14-CV-341, 2014 WL 12586318, at *3 (S.D. Ohio Oct. 30, 2014) (staying discovery pending resolution of a jurisdictional motion to dismiss because the motion, if granted, would divest the court of jurisdiction and dispose of the entire case, and discovery would not alter the outcome of the jurisdictional motion to dismiss); *Sentell v. Tennessee*, No. 3:12-CV-593, 2013 WL 3297124, at *1-2 (E.D. Tenn. June 28, 2013) (staying discovery when the defendants asserted immunity from suit, which "defenses, if true, may support dismissing the matter in whole, and as a matter of law, their defenses should be addressed before discovery proceeds"). *Cf.*

*Siegert v. Gilley*, 500 U.S. 226, 231 (1991) ("[D]iscovery should not be allowed" until "threshold immunity question is resolved").

These principles plainly support a stay of discovery related to Plaintiff's "debt forgiveness" claims at counts two and three of the Complaint. Neither the Court's nor the parties' time is well served by engaging in a "struggle over the substance of the suit" when a jurisdictional motion is pending. *Democratic Republic of Congo v. FG Hemisphere Assocs., LLC*, 508 F.3d 1062, 1064 (D.C. Cir. 2007) (jurisdictional defenses should be raised at the outset to avoid unnecessary litigation). Staying discovery now would avoid potentially unnecessary burden and expense on the parties and the Court. *See Lewis*, 2017 WL 5505337, at *1–2 ("it makes no sense for" courts to adjudicate discovery disputes "without first determining if [they] have the power to bind the parties" (citing *Victoria's Secret*, 2014 WL 1045994, at *2). Indeed, as courts in this district recognize, staying discovery pending resolution of dispositive motions—especially those challenging jurisdiction—"is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *In re Copper Tubing Litig.*, 2006 WL 8434911, at *3 (quoting *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (2001)) (also noting that "Rule 1 states that the Federal Rules of Civil Procedure 'shall be construed and administered to secure the just, speedy, and inexpensive determination of every action'").

But for additional reasons specific to this case, a stay of discovery on all claims—and a corresponding deferral of any case deadlines—is appropriate here. Apart from the two claims that are the subject of Defendants' jurisdictional motion, the only claim Plaintiff raises here is identical to the claim raised in *Joyner*. Thus, if the Court dismisses claims two and three, there will be no distinction between *Joyner* and this case that would warrant a stay there but not here. The only claim Plaintiff would be litigating at that point would be the § 1005 claim that is already being litigated on his behalf in the Northern District of Texas. But as this Court recognized in *Joyner*, because Plaintiff is a member

of the classes—and because he has no opportunity to opt out and indeed has not even attempted to do so—his interests are already being adequately represented by counsel "zealously pursuing the requested relief." *Joyner* Stay Order 5. Moreover, although Plaintiff's need for discovery on his facial challenge to § 1005 is dubious in any event, *see id.*; *Tiegs* Order 5, Plaintiff can seek to intervene in *Miller* and seek discovery there should he believe discovery is necessary to resolve the classes' equal protection claim, *McKinney* Order 3-4. Notwithstanding the fact that Defendants' motion to dismiss, if granted, would only dispose of some of the claims in this case, duplicative litigation of the only other claim that would remain warrants a stay of discovery on that claim as well. It would waste the Court's and the parties' resources to permit discovery over a claim that is already being litigated on behalf of Plaintiff in another Court, along the same schedule as is contemplated here.

Thus, the Court should stay discovery on all claims in this case and defer entering a scheduling order until after the Court resolves the motion to dismiss. The Court may then revisit whether the case should go forward—on all claims, on only the § 1005 claim, or on none of the claims—after resolving the threshold jurisdictional questions raised in the motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court should reconsider its prior stay decision and stay this case in its entirety pending resolution of the certified class action in *Miller*. Alternatively, the Court should stay discovery and defer setting any case deadlines aside from the parties' agreed briefing schedule on the motion to dismiss until after that motion is resolved. If the Court is not inclined to do either of the above, it should stay any discovery related to the "debt forgiveness" claims in counts two and three of Plaintiff's Complaint until after the Court determines that it has subject-matter jurisdiction over those claims.

DATE: October 15, 2021                    Respectfully submitted,

                                          JOSEPH C. MURPHY, JR.

Acting United States Attorney

*s/ Audrey M. Calkins*
Audrey M. Calkins (TN BPR # 030093)
Audrey.calkins@usdoj.gov
167 N. Main Street, Suite 800
Memphis, TN 38103
901-544-4231
Fax: 901-544-4230

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
EMILY SUE NEWTON (VA Bar No. 80745)
Senior Trial Counsel
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF CONSULTATION

I certify that on October 14, 2021, counsel for Defendants, Kyla Snow, conferred with counsel for Plaintiff, Braden Boucek, via email regarding this Motion and that on October 15, counsel for Plaintiff indicated that Plaintiff will oppose this Motion.

*/s/ Kyla M. Snow*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2021, the foregoing Motion was filed electronically via the Court's ECF system, which effects service upon counsel of record.

<u>/s/ Kyla M. Snow</u>
KYLA M. SNOW
Trial Attorney, U.S. Department of Justice