# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

_____

| | |
|---|---|
| **ROBERT HOLMAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-01085-STA-jay |
| | ) |
| **THOMAS J. VILSACK**, in his official | ) |
| capacity as Secretary of Agriculture; | ) |
| and **ZACH DUCHENEAUX**, in his official | ) |
| capacity as Administrator of the Farm | ) |
| Service Agency, | ) |
| | ) |
| Defendants. | ) |

_____

## REPLY IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS
_____

In Section 1005 of the American Rescue Plan Act (ARPA), Congress allocated Treasury funds to the U.S. Department of Agriculture (USDA) to pay off certain outstanding farm loan debts of socially disadvantaged farmers or ranchers (SDFRs). American Rescue Plan, Public L. No. 117-2 § 1005, 135 Stat. 4, 12 (2021). Several months later, USDA advised borrowers, through a "Frequently Asked Questions" page on its website, that § 1005 recipients would remain eligible for future USDA loans. Plaintiff believes the FAQ advice is erroneous, and brings claims in counts two and three of his Complaint to correct that purported error. At count three, Plaintiff alleges that USDA's announcement that § 1005 recipients remain eligible for future USDA loans violates 7 U.S.C. § 2008h, which limits the Secretary's authority to approve loans for recipients of "debt forgiveness" as that term is defined at 7 U.S.C. § 1991(a)(12)(A). At count two, Plaintiff alleges that USDA's purported violation of § 2008h violates the constitutional guarantee of equal protection as well, because (he says)

1

USDA plans to ignore the statutory bar only for recipients of § 1005 relief. The Court should dismiss these claims.

As Plaintiff's opposition confirms, these claims have no merit. The relief provided by § 1005 does not trigger any restriction on the Secretary's authority to provide new loans to recipients of "debt forgiveness," because § 1005 payments plainly do not fall within the statutory definition of the term. Plaintiff's assertion to the contrary is founded on his conjecture about the meaning of a single piece of § 1005's legislative history that does not overcome the plain text of the definition of "debt forgiveness" in 7 U.S.C. § 1991. Thus, Plaintiff fails to state a claim that USDA plans to approve loans for § 1005 beneficiaries in violation of any statutory bar against providing loans to recipients of "debt forgiveness," and the Court should dismiss counts two and three for failure to state a valid claim.

But the Court need not—and should not—address the claims on their merits in any event, because Plaintiff cannot clear the threshold hurdles to establishing subject matter jurisdiction. At the start, Plaintiff fails to show that he suffers a concrete and particularized injury-in-fact related to either claim. Plaintiff asserts nothing more than a generalized grievance over USDA's proper application of the law. And he fails to allege any equal protection injury specific to USDA's loan-making authority but simply restates his equal protection challenge to § 1005 at count one of his Complaint. Finally, Plaintiff has no private right of action to enforce any limits on USDA's authority to provide loans to others.

For all of these reasons, the court should dismiss counts two and three of the Complaint.

**I.    Plaintiff Lacks Article III Standing.**

   **A. Plaintiff Fails to Establish an Injury-in-Fact Related to his Statutory Debt Forgiveness Claim at Count Three.**

Plaintiff's opposition presents virtually no argument that he has suffered or will suffer an injury-in-fact if USDA approves new loans for recipients of § 1005 relief, allegedly in violation 7 U.S.C. § 2008h, in support of his claim at count three. Plaintiff's failure in this regard is unsurprising because

2

any alleged interest on Plaintiff's part in USDA's proper application of that statute does not distinguish him from "the public at large." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992). Plaintiff does not assert that USDA has improperly applied loan eligibility provisions to any loan application submitted *by him*. And whether USDA erroneously approves—or for that matter, denies—*another* farmer's loan application does not bear on Plaintiff's interests any more than it bears on the interests of "every citizen" concerned with the proper application of the laws. *Id*. Plaintiff's count three raises only a generalized grievance regarding the proper application of 7 U.S.C. § 2008h; Plaintiff has failed to establish that he suffers a concrete and particularized injury related to USDA's approval of loans to others allegedly in violation of statute. The Court should dismiss Count three for lack of standing.

### B. Plaintiff Fails to Allege an Injury-in-Fact Related to his Equal Protection Debt Forgiveness Claim at Count Two.

Plaintiff's attempts to establish injury connected to his claim in count two of his Complaint—that USDA's approval of additional loans to those who receive § 1005 relief violates equal protection—fare no better.

At the outset, although Plaintiff bears the burden of demonstrating standing in support of "each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), he fails to explain how he suffers an equal protection injury specific to his challenge, at count two, to USDA's determination that § 1005 recipients will remain eligible for future loans. Instead of attempting to show a distinct injury related to that claim, Plaintiff falls back on his asserted injuries stemming from his equal protection challenge to § 1005 in count one. Plaintiff says, for instance, that his allegations "in Claim One of [his] Complaint," show that he will not receive § 1005 relief "solely because of his skin color." Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss ("Pl.'s Opp'n") 15, ECF No. 60. And he emphasizes that the Government's provision of § 1005 relief "to some farmers but not others, based on race," subjects him to the injury of differential treatment. *Id*. But these assertions conflate the two distinct benefits provided by USDA, which are separately challenged at counts one and two: (1) the

3

provision of § 1005 relief (count one), and (2) the provision of new USDA loans (count two). Plaintiff's allegations may suffice to show an injury-in-fact related to the § 1005 relief at issue in count one, but they have no relation to USDA's loan-eligibility determination at issue in count two.

At count two, Plaintiff alleges no equal protection injury whatsoever. Plaintiff does not contend that he has been unlawfully denied a loan because of his race—indeed, he acknowledges that he *already has* a USDA loan. Nor does Plaintiff allege that he is barred from applying for additional USDA loans because of his race—or, for that matter, any reason at all. Put differently, Plaintiff does not allege that he is "able and ready" to apply for new loans but that the Government has enacted a "discriminatory policy [that] prevents [him] from doing so on an equal basis" with other applicants. Pl.'s Opp'n 13 (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). Whether Plaintiff is denied the benefit of *§ 1005* relief, as he stresses, is irrelevant for purposes of this claim, because it has no bearing on whether he can apply for future loans. He does not allege that providing § 1005 relief to SDFRs will bar him from obtaining new loans—only that it will bar *SDFRs* from doing so (although on that point, as explained below, he is wrong).

And Plaintiff's conclusory contention of competitive disadvantage only underscores that he has no injury supporting claim two. According to Plaintiff, he is "disadvantaged relative to similarly situated farmers in that they can receive full loan forgiveness, plus 20%, and still receive further loans to upgrade their farming operations." Pl.'s Opp'n 15 (quoting Compl. ¶ 63, ECF No. 1). This "naked assertion" of competitive disadvantage, devoid of "factual enhancement," does not suffice to show an injury-in-fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). In any event, whether Plaintiff is injured, as he asserts, because other farmers will receive payments covering 120% of outstanding USDA loan balances is again connected to his challenge to the implementation of § 1005 in count one. It does not demonstrate an injury caused by any inability to obtain a new loan from USDA—Plaintiff can obtain new loans. Thus, his speculation that SDFRs might obtain loans in order "to

4

upgrade their farming operations," *id.*, does not help his case. Plaintiff, too, may apply for new loans to upgrade his farming operations—or for any other purpose, if he so chooses. It is therefore beside the point whether, as Plaintiff contends, USDA has conditionally approved some new loans for SDFRs, subject to their current ARPA-eligible loans being paid in full.[1] Cobb Decl. ¶ 39, ECF No. 31-1 ("Eligible recipients of payments under Section 1005 may be approved for, and have been approved for, new FSA loans on the condition that the ARPA-eligible debt is paid in full prior to loan closing.").[2] Both before and after SDFRs receive § 1005 relief, they remain on equal footing with Plaintiff when it comes to applying for new loans.

Finally, in his opposition brief, Plaintiff attempts to invent an equal protection injury that he says *may arise in the future* depending on what relief the Court grants if he succeeds on his challenge to § 1005 in count one. Specifically, Plaintiff says that if the Court rules in his favor on claim one and then orders a remedy requiring that § 1005 relief be extended to all farmers (and not just SDFRs), "a second form of unequal treatment" will arise: "[Plaintiff] will be forever ineligible for future USDA loans," while SDFRs will not. Pl.'s Opp'n 15. As an initial matter, there is no basis whatsoever for Plaintiff's contention that, if § 1005 relief were extended to all farmers, USDA would allow only SDFRs to remain eligible for future loans. As Plaintiff himself alleges, USDA has determined, and stated on its website, that "*ARPA payment recipients* [will] be eligible for future [USDA] loans." *Id.* at 16 (emphasis added) (quoting https://perma.cc/R3MJ-Z38Y). Thus, were the Court to order a remedy

---

[1] Some of Plaintiff's arguments may be read as suggesting that USDA's determination that § 1005 beneficiaries will remain eligible for future loans means that USDA will automatically provide new loans to those beneficiaries after administering § 1005 payments. *See, e.g.*, Pl.'s Opp'n 16 n.8. That is incorrect. Any individual applying for a USDA loan must demonstrate that they meet the attendant eligibility requirements. There is no factual basis for Plaintiff's suggestions that the pre-existing application requirements for new USDA loans do not apply to expectant recipients of § 1005 relief.
[2] As Plaintiff also notes, prior to any injunction, USDA processed § 1005 payments for four ARPA eligible recipients in efforts to test its payment procedures. Cobb Decl. ¶¶ 29-31. Since then, USDA has not paid off those borrowers' loans or approved them for additional loans; but even if it had, that would not cause an equal protection injury, because Plaintiff likewise may apply for new loans now.

5

extending § 1005 relief to all farmers, Plaintiff would remain eligible for future loans just like all other § 1005 beneficiaries, obviating Plaintiff's ability to establish standing based on future unequal treatment. Furthermore, Plaintiff's remedy-based argument, rooting an injury-in-fact on what the Court might order in the future, contradicts the "longstanding rule that jurisdiction," including Article III standing, "is to be assessed under the facts existing when the complaint is filed." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001) (quoting *Lujan*, 504 U.S. at 570 n.4).

In short, Plaintiff fails to show an injury-in-fact supporting Article III standing to bring claims two and three.

## II. Plaintiff Lacks a Private Right of Action to Enforce 7 U.S.C. § 2008h Against USDA.

Even assuming Plaintiff had established standing to bring his statutory claim in count three of the Complaint—and he has not—that claim cannot proceed because Congress has not granted Plaintiff a private right of action to enforce 7 U.S.C. § 2008h against USDA.[3] Plaintiff contends that it is unnecessary to show that he has a private right of action under 7 U.S.C. § 2008h (or any other statute), because he "only requests prospective equitable relief to halt an illegal action." Pl.'s Br. at 18. According to Plaintiff, *Ex Parte Young*,[4] *Philadelphia v. Stimson*,[5] and their progeny establish that whenever a state or federal official allegedly acts in violation of federal law, a private party may seek declaratory or injunctive relief in federal court to halt the unlawful act. *Id.* at 17-19. That is incorrect.

It is well established that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.,* 441 U.S. 677, 688 (1979). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001)

---

[3] Plaintiff does not rely on the Administrative Procedure Act to supply the cause of action—nor could he, as he does not challenge a final agency action. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).
[4] 209 U.S. 123 (1908).
[5] 223 U.S. 605 (1912).

6

(citation omitted). To determine whether a private party may sue to enforce a federal statute, courts ask two questions: first, whether the statute grants a substantive right to the party seeking to enforce it; and, second whether the statute authorizes a private remedy for the interference with that right. *Ohlendorf v. United Food & Com. Worker Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir. 2018).

Plaintiff mistakenly asserts that any time a party calls on the Court's equitable powers this two-step inquiry is irrelevant. As the Supreme Court and the Sixth Circuit have made clear, however, the Court's power in equity does not itself give rise to a cause of action. *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 905 (6th Cir. 2014) ("[E]ven in a case involving relief sought under *Ex parte Young*, courts must determine whether Congress intended private parties to enforce the statute by private injunction or for that matter by a declaratory judgment."). The court's power to grant injunctive or declaratory relief is implicated only "*if* the plaintiff already has a cause of action from somewhere else." *Id.*; *Davis v. Passman*, 442 U.S. 228, 239 (1979) ("[T]he question whether a litigant has a 'cause of action' is analytically distinct *and prior to* the question of what relief, if any, a litigant may be entitled to receive."(emphasis added)). Whether Plaintiff "has a substantive right in the federal statute . . . he seeks to enforce transcends the division between law and equity." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017). Only if Congress has "created a specific and uniquely federal right or remedy, enforceable in a federal court of equity," may injunctive or declaratory relief issue. *Id.* (quoting *Mitchum v. Foster*, 407 U.S. 225, 237 (1972)).

Plaintiff makes no attempt to show that Congress granted him a private right and a private remedy to enforce any prohibition in 7 U.S.C. § 2008h against providing loans to recipients of debt forgiveness. And as explained in Defendants' opening motion, 7 U.S.C. § 2008h provides no such right or remedy, either expressly or implicitly. *See* Defs.' Mot. 15-17. Because Plaintiff has no private right of action to enforce 7 U.S.C. § 2008h against USDA, the Court should dismiss count three.

## III.     Plaintiff's Counts Two and Three Fail to State Valid Claims for Relief.

7

Finally, even if Plaintiff could surmount all of these jurisdictional hurdles, his claims would still fail because § 1005 payments are not "debt forgiveness" as that term is statutorily defined. Accordingly, there is no merit to Plaintiff's contention that § 1005 payments trigger the statutory bar against providing new loans to past recipients of debt forgiveness or that USDA is ignoring that bar on a racially discriminatory basis.

### A. Plaintiff Fails to Allege that § 1005 Payments Constitute "Debt Forgiveness."

The bar on new loans to recipients of debt forgiveness is found in 7 U.S.C. § 2008h. The clear text of that provision and the definition of "debt forgiveness" that it incorporates defeats Plaintiff's claims. To avoid the clear import of that provision, Plaintiff relies on legislative history—not legislative history related to § 2008h, which became law in 1996, but legislative history from 2020 related to § 1005. His interpretation of § 2008h to include § 1005 payments as "debt forgiveness" is founded on a provision (which clarified that § 1005 beneficiaries remain eligible for future loans) that appeared in an unenacted House draft version of ARPA and that was removed without any recorded debate or explanation. Plaintiff speculates that the provision was intended to prevent 7 U.S.C. § 2008h from barring recipients from obtaining future USDA loans and that, because the provision was not adopted in ARPA as enacted, § 1005 beneficiaries are precluded from receiving new USDA loans. But his conjecture finds no support in the legislative record. Plaintiff points to no evidence illuminating the reason for the provision's inclusion in or its subsequent removal from a House draft of § 1005.[6]

The statutory text of the provisions on which Plaintiff's claims are founded—7 U.S.C. § 2008h (the statutory bar) and 7 U.S.C. § 1991(a)(12)(A) (definition of "debt forgiveness")—is the proper

---

[6] Plaintiff's assertion that the provision was stripped to comply with Senate reconciliation procedures is based on nothing more than his own conjecture and his unsupported overstatement that the provision would "[r]ever[se] the longstanding prohibition against future loan eligibility for those persons who obtain loan forgiveness." Pl.'s PI Mot. 9 n.3, ECF No. 7-1. The proposed subsection to § 1005 merely stated that the relief specified therein did not affect future loan eligibility; it did not purport to amend 7 U.S.C. § 2008h.

8

starting point. That text forecloses Plaintiff's dubious legislative-history-based interpretation of § 1005 payments as "debt forgiveness." The term "debt forgiveness" used in § 2008h is defined as "reducing or terminating a farmer program loan . . . in a manner that results in a loss to the Secretary," through one of four specific statutory mechanisms. 7 U.S.C. § 1991(a)(12)(A). For several reasons, this definition does not cover § 1005 payments, and Plaintiff's extra-textual arguments fail.

First, unlike the loan reductions or terminations specified in 7 U.S.C. § 1991, Section 1005 payments do not "result[] in a loss to the Secretary." As Plaintiff acknowledges, ARPA appropriates funds "*out of amounts in the Treasury*" to pay off SDFRs' farm loan debts under § 1005, *see* ARPA § 1005(a) (emphasis added); this guarantees that the Secretary of Agriculture will remain whole. In other words, unlike the Secretary's provision of various forms of § 1991(a)(12)(A) debt forgiveness to eligible borrowers, under which the Secretary necessarily agrees to recover something less than the borrower's remaining outstanding loan balance, Congress's appropriation of Treasury funds under § 1005 will cover the entire outstanding balance (plus 20%) of eligible SDFR loans. Section 1005 payments thus cause no loss to the Secretary and do not constitute "debt forgiveness."

Plaintiff attempts to undermine this straightforward textual conclusion by positing initially that Congress may not have appropriated sufficient funds from the Treasury to cover the cost of paying off qualifying loans and thus that administering payments may cause a loss to the Secretary. Plaintiff's speculation is unfounded. Section 1005 authorizes "such sums as may be necessary, to remain available until expended, for the cost of loan modifications and payments under" § 1005. ARPA § 1005(a)(1).[7] Because Congress's appropriation is unlimited, it guarantees sufficient funds to the Secretary to

---

[7] Plaintiff wrongly asserts that the Court has expressed doubt as to whether the Treasury's funds are sufficient to cover the cost of § 1005 as-enacted. *See* Pl.'s Opp'n 5. Any concerns expressed by the Court over the availability of funds to pay off USDA farm loan debts related to the possibility of opening up the class of beneficiaries beyond SDFRs and to all farmers holding a qualifying loan. Plaintiff has not previously disputed, and the Court has not expressed doubt, that the funds appropriated to cover the cost of the payments to SDFRs authorized under § 1005—"such sums as may be necessary"—will be sufficient.

9

implement the payments authorized by § 1005. *See, e.g.*, *Rogers v. Brockette*, 588 F.3d 1057, 1071 (5th Cir. 1979) (explaining that Congress altered statute from a "limited authorization" to authorizing "such sums as are necessary" in order to provide enough funds for every party that wanted to participate in program).

Failing to make any plausible text-based argument that § 1005 payments will cause a loss to the Secretary, Plaintiff pivots to focusing on hypothetical factual scenarios, asserting that discovery will somehow bear on the Court's statutory analysis of the meaning of "debt forgiveness" and whether § 1005 payments, as a legal matter, fall within it. But Plaintiff's concerns about losses unconnected to outstanding loan balances are irrelevant to that legal analysis. Specifically, Plaintiff asserts that the Secretary might lose future income through interest payments on some ARPA-eligible loans, but that type of loss has nothing to do with reducing or terminating an outstanding loan balance for purposes of debt forgiveness. Other forms of loan servicing that are expressly excluded from the definition of "debt forgiveness"—consolidation and reamortization, for example, 7 U.S.C. § 1991(a)(12)(A)—allow the agency to alter a delinquent borrower's interest rate, thereby reducing the amount of future revenue the Secretary might gain through loan repayment plans. *See* 7 C.F.R. §§ 766.107 (consolidation and rescheduling), 766.108 (reamortization). Additionally, Plaintiff stresses that implementing § 1005 will cause administrative costs, but that is true of every program administered by USDA—and in any event, Congress allocated additional Treasury funds in § 1003 of ARPA to cover the "administrative expenses associated with carrying out" § 1005. ARPA § 1003. And finally, Plaintiff asserts that the Secretary might lose out on the value of § 1005 recipients' collateral, but the value of borrowers' collateral is irrelevant given that their loans will be paid in full under § 1005.

<u>Second</u>, § 1005 is not "debt forgiveness" under § 1991 because it is not administered through one of the methods specified in 7 U.S.C. § 1991(A)(12)(A), each of which is regulated by a detailed, pre-ARPA statutory scheme and implementing regulations. Those methods are: (i) a write-down or

10

write-off under 7 U.S.C. § 2001, (ii) a compromise, adjustment, reduction, or charge-off under 7 U.S.C. § 1981, (iii) the payment on a loss on a guaranteed loan under 7 U.S.C. § 2005, or (iv) the discharge due to bankruptcy. *See, e.g.*, 7 CFR §§ 766.111 (write-down), 761.401-408 (Farm Loan Programs Debt Settlement), part 762 (Guaranteed Farm Loans). Section 1005, on the other hand, is a distinct remedial measure provided through a broader emergency relief package> It is a "payment"—made to "the loan directly or to the [SDFR] (or a combination of both)"—"in an amount up to 120 percent of the outstanding indebtedness" of the SDFR's eligible loans. ARPA § 1005(a)(2). The definition of "debt forgiveness" plainly does not cover these one-time payments under ARPA.

Plaintiff's attempts to fit § 1005 payments within the meaning of "compromise," "reduce," "charge-off," or "adjust" in 7 U.S.C. § 1991(a)(12)(A)(2) come up short. Payments under § 1005 are not "under section 1981," as that definition requires. And his entire argument may be distilled to one point: each of those forms of debt forgiveness reduces a borrower's loan balance to "zero," and so does § 1005. *See* Pl.'s Opp'n 5. Yet Congress did not define "debt forgiveness" so broadly as to involve any action that reduces a loan balance to zero, as Plaintiff would have it. Rather, it defined "debt forgiveness" to cover specific, enumerated actions with reference to particular statutory provisions falling within a broader statutory structure governing USDA lending and loan servicing programs. *See* Ch. 50, Title 7, U.S. Code ("Agricultural Credit"). ARPA makes no reference to those programs or otherwise suggests that § 1005 relief falls within the plain meaning of 7 U.S.C. § 1991(a)(12)(A). Section 1005 relief thus does not trigger any statutory bar against providing future loans to eligible recipients, and Plaintiff fails to state a valid claim that USDA plans to approve loans in violation of 7 U.S.C. § 2008h.

**B. Plaintiff Fails to Allege a Free-Standing Equal Protection Debt Forgiveness Claim.**

Additionally, because Plaintiff's claim in count three that USDA plans to unlawfully approve future loans to recipients of § 1005 relief fails, so too does his claim in count two that USDA will do

11

so in a discriminatory manner. But even assuming that USDA has erroneously determined that § 1005 beneficiaries are eligible for future loans, his equal protection challenge on the same basis would still fail, because Plaintiff does not allege that this determination turns on race. For instance, Plaintiff does not allege that SDFRs who receive debt forgiveness through any mechanism specified in 7 U.S.C. § 1991(a)(12)(A) will be eligible for future loans while he will not. Indeed, like Plaintiff, all SDFRs are subject to the same eligibility restrictions on obtaining new loans after receiving debt forgiveness under 7 U.S.C. § 1991. Nor does Plaintiff allege that USDA is providing relief under § 1005 to SDFRs and non-SDFRs alike but only permitting SDFRs to obtain new USDA loans after benefitting from such relief. In arguing that he would be barred from obtaining a future loan if he received debt forgiveness *under 7 U.S.C. § 1991*, Plaintiff wrongly compares himself to SDFRs able obtain a loan after receiving relief *under § 1005*. Given the differences in the programs discussed above, Plaintiff fails state a plausible claim he will be treated differently from similarly situated individuals when it comes to seeking new loans solely because of his race.

Accordingly, Plaintiff's claims at counts two and three fail to state a valid claim for relief.

## IV. The Court should reject Plaintiff's request for leave to amend.

In one sentence at the end of his brief, Plaintiff asserts that if the Court is inclined to grant Defendants' motion to dismiss, it should allow Plaintiff leave to amend his Complaint. Yet Plaintiff does not specify what amendments he would make or explain how such amendments would change the outcome on any of the issues raised in Defendants' Motion to Dismiss. Allowing Plaintiff to amend his Complaint would be futile and would unnecessarily delay resolution of claims two and three. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 519 (6th Cir. 2001). The Court should reject Plaintiff's unsupported request for leave to amend.

## CONCLUSION

The Court should dismiss claims two and three of Plaintiff's Complaint.

DATE: November 5, 2021						Respectfully submitted,

JOSEPH C. MURPHY, JR.
Acting United States Attorney

*s/ Audrey M. Calkins*
Audrey M. Calkins (TN BPR # 030093)
Audrey.calkins@usdoj.gov
167 N. Main Street, Suite 800
Memphis, TN 38103
901-544-4231
Fax: 901-544-4230

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
EMILY SUE NEWTON (VA Bar No. 80745)
Senior Trial Counsel
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendants*

13