# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

ROBERT HOLMAN,         )
                             )

      **Plaintiff,**         )
                             )

VS.                     )        No. 21-1085-STA-jay
                             )

THOMAS J. VILSACK,      )
in his official capacity as Secretary   )
of the United States Department    )
of Agriculture,          )
                             )

and                    )
                             )

ZACH DUCHENEAUX,      )
in his official capacity as Administrator )
of the Farm Service Agency,    )
                             )

      **Defendants.**      )
                             )

---

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

---

Plaintiff Robert Holman filed this action against Thomas J. Vilsack, Secretary of the United States Department of Agriculture ("USDA"), and Zach Ducheneaux, Administrator of the Farm Service Agency ("FSA"), seeking a declaratory judgment that the farm debt relief program found in the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, § 1005 (2021) ("Section 1005"), is unconstitutional. Defendants have filed a motion to dismiss claims two and three of the complaint for lack of subject-matter jurisdiction and failure to state a claim. (ECF No. 57.) Plaintiff has filed a response to the motion (ECF No. 60), and Defendants have filed a reply to the response. (ECF No. 65.) For the reasons set forth below, Defendant's partial motion to dismiss is **GRANTED**.

<u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(1) motions for lack of subject matter jurisdiction "come in two varieties: a facial attack or a factual attack." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009) (citation and quotation marks omitted). A facial attack, as in the present case, "questions merely the sufficiency of the pleading." *Id.* (citation and quotation marks omitted). In reviewing the facial attack, courts must accept all allegations as true, *id.*, and when reviewing the complaint, we look for a "short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *O'Bryan*, 556 F.3d at 376 (citation omitted). The plaintiff bears the burden of proving that jurisdiction exists.  *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (explaining that, when "subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion").

"Proper jurisdiction is a requirement in determining the validity of a claim, and as such, Rule 12(b)(1) motions must be considered prior to any other challenges." *Lemke v. H&R Block Mortg. Corp.*, 2012 WL 715894, at *1 (E.D. Mich. Mar. 6, 2012) (citing *Bell v. Hood*, 327 U.S. 678 (1946)); *see also Moir*, 895 F.2d at 269 (quoting *Bell v. Hood* for the proposition that, when a defendant moves to dismiss under both Rule 12(b)(1) and (b)(6), the court should consider the 12(b)(1) motion first because "the 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction.").

Defendants contend that this Court lacks subject-matter jurisdiction over Plaintiff's claims for the following reasons: (1) Plaintiff lacks standing to bring his claim; (2) Plaintiff fails to allege an actual or imminent injury-in-fact; (3) the claim is not ripe for review; and (4) there is

no private right of action under Section 1005. The Court finds Defendants' contentions to be meritorious and grants Defendants' partial motion to dismiss because it lacks subject matter over the complaint. Accordingly, the Court will not address the portion of Defendants' motion seeking dismissal under Rule 12(b)(6).

Background

As discussed in the order granting Plaintiff's motion for preliminary injunction,[1] Plaintiff contends that Section 1005 of the ARPA, facially and as applied, violates the guarantee of equal protection of the law under the Fifth Amendment to the United States Constitution. (Order, ECF No. 41.) In that order, the Court described the background of this litigation. The Court will not reiterate that description except to point out that Section 1005 allots funds for debt relief to "socially disadvantaged" farmers and ranchers[2] as part of a broad relief package designed to alleviate economic burdens caused by the ongoing COVID-19 pandemic. "Socially disadvantaged" is interpreted to mean the racial classifications of "Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander." Farmers, such as Plaintiff, who are white/Caucasian are not considered to be socially disadvantaged and, thus, are not eligible for debt relief regardless of their individual circumstances.

Plaintiff, who has two USDA loans that had outstanding balances as of January 1, 2021, filed this complaint, contending that the government should be enjoined from carrying out Section 1005's debt relief program because it is entirely based on race, and the denial of a government benefit based on race is a violation of the equal protection guarantee. Plaintiff has

---

[1] On July 8, 2021, the Court granted Plaintiff's motion for a preliminary injunction and enjoined disbursement of Section 1005 funds on a nationwide basis pending resolution of this case on the merits.

[2] Although Section 1005 refers to both "farmers and ranchers," the briefing has focused on farmers.

brought three claims.  In his first claim, Plaintiff asserts that the USDA's interpretation of the term "socially disadvantaged farmers and ranchers" in Section 1005 to include only those farmers who fall within certain racial groups violates the constitutional guarantee of equal protection.

In claims two and three, Plaintiff challenges the USDA's determination that recipients of Section 1005 debt relief will remain eligible for future USDA loans.  Plaintiff contends that a borrower who accepts the relief authorized by Section 1005 is forever precluded from obtaining a future USDA loan because 7 U.S.C. § 2008h(b)(1) bars the Secretary from making or guaranteeing loans to past recipients of debt forgiveness. [3]  Plaintiff interprets 7 U.S.C. § 2008h,[4] a pre-ARPA statute, as barring the USDA from making loans to borrowers who receive "debt forgiveness" and prohibiting the USDA from granting any additional loans to borrowers who accept Section 1005 relief.  Plaintiff asserts that the USDA plans to "disregard" the statute and the alleged bar. In claim two, Plaintiff alleges that this purported disregard of the statutory prohibition is an unconstitutional equal protection violation.  That is, because Section 1005 is a race-conscious remedial measure, the USDA's alleged waiver of the statutory eligibility bar is necessarily a race conscious action as well, according to Plaintiff. In claim three, Plaintiff alleges that the USDA plans to act unlawfully in violation of the statute because it lacks the authority to treat anyone who receives loan forgiveness as eligible for future loans; thus, the USDA plans to "illegally allow[ ] future eligibility."

Plaintiff's claims two and three rest on his assumption that Section 1005 loan payments are a form of "debt forgiveness" that triggers the general statutory bar against additional loans.

---

[3]  The government disagrees with this interpretation.  For the purpose of deciding this motion only, the Court will assume that Plaintiff's interpretation of 7 U.S.C. § 2008h is correct.

[4]  "[T]he Secretary may not make [or guarantee] a loan . . . to a borrower that has received debt forgiveness on" certain USDA direct or guaranteed loans.  7 U.S.C. § 2008h(b)(1).

Plaintiff seeks a declaration from this Court that providing further USDA loans to those who receive forgiveness under Section 1005 is illegal and unconstitutional, both facially and as applied.

As noted by Defendants, this case is one of twelve brought in courts around the country that challenge the implementation of Section 1005 on equal protection grounds: *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.); *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.); *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.); *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.).

On July 2, 2021, the *Miller* Court certified two classes of farmers and ranchers bringing an equal protection challenge to Section 1005 and issued an injunction preventing the government from disbursing Section 1005 funds during the pendency of the lawsuit. (Ex. A. to Mot. to Stay, Order on Class Cert. & PI, ECF No. 45-1.)  Plaintiff is a member of the two classes certified by *Miller* under Fed. R. Civ. P. 23(b)(2), and Defendants will be bound by any relief granted to the classes with respect to Plaintiff should the classes' equal protection claim prevail.[5] Because the classes in *Miller* were certified under Rule 23(b)(2), Plaintiff cannot opt out of any judgment applicable to the classes. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-63 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.")

---

[5] Although *Miller* certified two classes, the classes were specific to the plaintiffs' challenge to the enforcement of the racial exclusions in Section 1005, *i.e.*, Plaintiff's claim one.  (*Miller* Order at p. 13.)

On August 2, 2021, this Court denied Defendants' motion to stay proceedings pending resolution of the *Miller* class action, finding that

> the interests of the *Miller* plaintiffs are not completely aligned with Plaintiff's interests, thus negating Defendants' claim of duplicative lawsuits. Plaintiff has alleged in his complaint that loan forgiveness will bar him from obtaining future loans from the USDA. While the government's position is that it can allow future loan eligibility for those who receive loan forgiveness under Section 1005, this Court has not decided the issue, and the issue has not been raised in *Miller*.

(Order p. 3, ECF No. 49 (citation omitted.)) Thus, although Plaintiff will be bound by the decision of the *Miller* Court on his first claim, claims two and three are not before that Court. Instead, Plaintiff is proceeding in this Court on those claims, and they are now the subject of Defendants' partial motion to dismiss.

<u>Analysis</u>

<u>Standing</u>

Defendants first argue that Plaintiff lacks Article III standing to challenge the USDA's determination that farmers who receive relief under Section 1005 will be eligible for future USDA loans. "The Constitution grants Article III courts the power to decide 'Cases' or 'Controversies.' Art. III, § 2" and "that constitutional phrase [is understood] to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). A genuine case or controversy exists if a litigant has a "personal stake in the outcome" that is "distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (internal quotation marks and citations omitted). The standing inquiry under Article III is meant to ensure "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). When "that need does not exist, allowing courts to oversee legislative or

executive action would significantly alter the allocation of power away from a democratic form of government." *Id.* (alterations and citation omitted).

To establish a personal stake in the case, the litigant must prove: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "In the context of claims for injunctive or declaratory relief, the threatened injury in fact must be concrete and particularized, as well as actual and imminent, not conjectural or hypothetical." *Sullivan v. Benningfield*, 920 F.3d 401, 407-08 (6th Cir. 2019) (citations and quotations omitted). The plaintiff bears the burden of showing that all three elements are met for each claim and for each form of relief sought. *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross."). That is, Plaintiff must "demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The Court finds that Plaintiff has not done so in the present case.

Defendants argue that Plaintiff has not alleged an injury-in-fact sufficient to establish standing with respect to claims two and three. Defendants contend that Plaintiff alleges a "generalized grievance" based on his claim that the USDA will not follow the law with respect to other loan applicants. Defendants also contend that Plaintiff's "speculation" that the USDA plans to disregard the purported limits on its loan-making authority when it comes to evaluating future loan applications of minority farmers is not an injury that is concrete and particularized to Plaintiff. Defendants label Plaintiff's claims two and three as a request for an advisory opinion regarding the USDA's authority to approve hypothetical loan applications. Defendants also claim that Plaintiff's alleged injuries are not imminent but, instead, are based on a "hypothetical

chain of events that may not even occur." Additionally, Defendants contend that the equal protection aspect of Plaintiff's second claim does not provide for an injury independent of his equal protection claim (claim one) that is the subject of the *Miller* class action.

Looking at claim two first, the Court agrees with Defendants that Plaintiff has alleged no injury specific to a "debt forgiveness" equal protection claim.  Instead, claim two is derivative of claim one which also alleges a denial of Plaintiff's right to equal protection - there is no claim two without claim one.  In claim two, Plaintiff couches his allegations concerning the USDA's alleged future violation of its statutory authority in terms of differential treatment; that is, he asserts that the manner in which the USDA allegedly plans to disregard its statutory authority violates his constitutional right to equal protection. According to Plaintiff, the USDA intends to selectively waive the purported bar against receiving future loans which, he contends, is a race-conscious action in violation of equal protection because Section 1005 itself is race-conscious.

In support of his argument, Plaintiff points to *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), which explained that

> one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff. The government's use of racial preferences causes that injury. And that injury is redressable by a decision ordering the government not to grant priority consideration based on the race of applicants.

*Id.* at 359 (citations omitted).  Thus, any classification that makes it "more difficult for members of one [racial] group to obtain a benefit" is an injury sufficient to confer standing. *Id.* (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). To establish standing, a party "need only demonstrate that it is able and ready" to engage in activity "and that a discriminatory policy prevents it from doing so on an equal basis." *Id.*

While Plaintiff has correctly stated the law, he fails to explain how he suffers an equal protection injury specific to his challenge, at claim two, to the USDA's determination that Section 1005 recipients will remain eligible for future loans. Instead of showing an injury distinct to claim two, Plaintiff relies on his alleged injuries stemming from his equal protection challenge in claim one. Defendants correctly point out that a ruling on Plaintiff's equal protection challenge to Section 1005 (claim one) will resolve the equal protection allegations asserted with respect to future loan approvals (claim two) regardless of how the Court rules. If the *Miller* Court rules in favor of the classes and invalidates Section 1005, then Plaintiff's claim two becomes moot.  If the *Miller* Court rules in favor the defendants and finds that Section 1005 does not violate the equal protection clause, then Plaintiff's claim two likewise becomes moot because there will be a judicial determination of no equal protection violation.

Plaintiff's response to Defendants' motion as to why claim two should not be dismissed supports this analysis.

> In other words, the government gives access to a benefit to some farmers but not others, based on race. The resulting injury is that the government treats Plaintiff differently and places him at a distinct competitive disadvantage, which Plaintiff pleaded clearly. (*See id.* at ¶ 63 ("Plaintiff is disadvantaged relative to similarly situated farmers in that they can receive full loan forgiveness, plus 20%, and still receive further loans to upgrade their farming operations.")) Much as in *Vitolo*, "[t]he injury here is 'the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.'" 999 F.3d at 358-59 (quoting *Ne. Fla. Chapter of Associated Gen. Contractors*, 508 U.S. at 666). Accordingly, Plaintiff has pleaded an injury arising from "being forced to compete in a race-based system that may prejudice" him. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).

(Resp. p. 15, ECF No. 60.)

Plaintiff's argument is centered around the injury he alleges in claim one.  Plaintiff does not allege that he is "able and ready" to apply for new loans but that the government has enacted a "discriminatory policy [that] prevents [him] from doing so on an equal basis" with other

applicants. He does not allege that providing Section 1005 relief to socially disadvantaged farmers will bar him from obtaining new loans — only that it will bar the socially disadvantaged farmers from doing so.  This is not sufficient to create standing on claim two.

Much of Plaintiff's response is based on the premise that, if the plaintiffs in *Miller* prevail, Section 1005 may be rewritten to include debt relief for all farmers with USDA loans and not just those defined as socially disadvantaged, thus subjecting Plaintiff to the forgiveness of his own USDA loans and consequent ineligibility for future loans under 7 U.S.C. § 2008h(b)(1).[6]   However, Plaintiff has pointed to no authority that would allow a court to rewrite Section 1005. The stated purpose of Section 1005 is to help socially disadvantaged farmers and ranchers.  Judicially rewriting the statute to include all farmers and ranchers would subvert that purpose and would require new legislation.  *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986) (citations omitted) ("[A]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute ... or judicially rewriting it.") Accordingly, Plaintiff fails to establish standing to raise his equal protection claim in claim two after having raised it in claim one.

In claim three, Plaintiff alleges that the USDA plans to approve future loan applications submitted by Section 1005 recipients in violation of a purported statutory prohibition at 7 U.S.C. § 2008h against providing future loans for anyone who has received loan forgiveness.  However, Plaintiff's claim that the USDA plans to violate its statutory authority when it evaluates other farmers' future eligibility for loans is not concrete and particularized to Plaintiff. The Supreme Court "has repeatedly held that an asserted right to have the government act in accordance with

---

[6]  This issue is also discussed below in the ripeness section.

the law is not sufficient standing alone to confer jurisdiction on a federal court." *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990); *see also TransUnion*, 141 S. Ct. at 2206-07 (explaining that merely seeking to ensure a defendant's compliance with the law is not sufficient to establish standing when a plaintiff does not otherwise suffer a concrete personal harm due to the allegedly unlawful conduct). Plaintiff alleges nothing more than his disagreement with the USDA's conclusion that Section 1005 recipients will remain eligible for future USDA loans. Any alleged interest on Plaintiff's part in the USDA's proper application of that statute does not distinguish him from "the public at large." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992). The approval of another farmer's loan application, whether properly or improperly approved, does not affect Plaintiff's interests any more than it affects the interests of "every citizen" concerned with the proper application of the laws. *Id.*

Although Plaintiff does assert that he will suffer a competitive disadvantage if the USDA approves future loans for Section 1005 recipients, even though it allegedly lacks authority to do so, he does not allege that any farmer who might receive another loan in the future is competing with his business. Plaintiff's bare assertion of competitive injury does not satisfy the concrete and particularized requirement and, instead, shows only that Plaintiff's grievance is one "that he suffers in some indefinite way in common with people generally." *United States v. Richardson*, 418 U.S. 166, 172 (1974) (quoting *Frothingham v. Mellon*, 262 U.S. 447, 488 (1923)); *see also Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) ("Conclusory allegations do not satisfy the requirements of Article III.").

 Additionally, Plaintiff's alleged injury of a competitive disadvantage is too speculative and remote to satisfy Article III because it rests on uncertain, future events. Plaintiff must show more than a "possible future injury;" instead, he must show that harm has actually occurred or is

"certainly impending." *Whitmore*, 495 U.S. at 158.  Speculative or hypothetical future injuries are not sufficient to confer standing.  *See*, *e.g.*, *Legatus v. Sebelius*, 988 F. Supp. 2d 794, 804 (E.D. Mich. 2013) ("Legatus focuses on the largely hypothetical competitive disadvantage it would face as an employer . . . . Taken alone, as an undeveloped assertion, this injury may be too speculative to confer standing.")  Plaintiff's claim three raises only a generalized grievance regarding the proper application of 7 U.S.C. § 2008h, and, therefore, he has failed to establish that he suffers a concrete and particularized injury related to the USDA's approval of loans allegedly in violation of the statute.

In summary, the Court finds that Plaintiff has failed to show that he has standing to challenge the USDA's authority to grant future loans to recipients of Section 1005 relief for both claims two and three.

Ripeness

The ripeness doctrine arises "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n.18 (1993). "The ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985). The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . and also to protect [entities] from judicial interference until a[ ] . . . decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), abrogated on other

grounds by *Califano v. Sanders*, 430 U.S. 99 (1977). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted); *see also Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (stating that the ripeness doctrine asks whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").

Ripeness is present when "an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention" or "when the court would be in no better position to adjudicate the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010). A "future injury" will be deemed ripe if either "the injury is certainly impending" or "there is substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *see also Caprock Plains Fed. Bank Ass'n v. Farm Credit Admin.*, 843 F.2d 840, 845 (5th Cir. 1988) (concluding that "too many ifs" that render an injury a "mere potential[ity]," not just one or two that may render such a result into a substantial possibility or even a probability, will make a case unripe).

In evaluating a claim to determine whether it is ripe for judicial review, the court must consider "the fitness of the issues for judicial decision" and "the hardship of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *see also Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (explaining that, to determine whether a claim is ripe, a court must consider (1) the likelihood that the injury alleged by the plaintiff will ever occur; (2) whether the factual record is sufficiently developed to allow for adjudication; and (3) the hardship to the parties from refusing consideration). For pre-enforcement challenges, as in the present case, a case is ordinarily ripe for review "only if the probability of the future event

occurring is substantial and of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). The ripeness doctrine acknowledges the problem inherent in adjudicating a dispute "anchored in future events that may not occur as anticipated, or at all." *Id.*

The ripeness doctrine applies to declaratory judgment actions. "It is clear that the declaratory judgment procedure is available in the federal courts only in cases involving actual controversies and may not be used to obtain an advisory opinion in a controversy not yet arisen." *Marek v. Navient Corp.*, 2017 WL 32943, at *1 (N.D. Ohio Jan. 4, 2017) (quoting *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 116 (1947)). "The requirements of standing, ripeness, and mootness guard against the issuing of advisory opinions." *Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 232 (6th Cir. 1985); *see also Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995) (noting that a court is "obliged under Article III to limit its jurisdiction to ripe cases, to avoid issuing advisory opinions based upon hypothetical situations.").

Doctrines of ripeness and standing "unquestionably [] overlap." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc). "Like standing, ripeness is drawn from . . . Article III limitations on judicial power" and "serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Id.* at 525–26 (citations omitted). The ripeness analysis consists of two parts. First, courts ask whether the claim is "fit[] . . . for judicial decision," *Abbott Labs.*, 387 U.S. at 148, or, in other words, whether it "arises in a concrete factual context and concerns a dispute that is likely to come to pass." *Warshak*, 532 F.3d at 525. Second, courts ask whether

"withholding court consideration" would cause "hardship to the parties." *Abbott Labs.*, 387 U.S. at 149.

Defendants contend that Plaintiff's claims are not "fit" for judicial review for the same reasons that he fails to allege an injury-in-fact. They argue that his claims turn on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quotation omitted). Defendants outline the following chain of events that would need to occur in order for Plaintiff's claims to be ripe for judicial review. The USDA would have to disburse Section 1005 funds to socially disadvantaged farmers and ranchers; one of those recipients would then have to apply for another USDA loan; the USDA would have to approve that loan application; and the borrower would have to compete with Plaintiff in the relevant market. The Court agrees with Defendants that, whether this series of events will occur, let alone whether the events occur imminently and in such a way as to injure Plaintiff, is "'no more than conjecture' at this time." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). Moreover, as mentioned previously, a ruling either way by the *Miller* Court will moot Plaintiff's claim two, and a ruling in favor of the classes will moot Plaintiff's claim three.

Plaintiff has responded that his equal protection injury is ripe because it is a barrier to his eligibility for future loans. He argues that it would cause a hardship to him if the question of his future loan eligibility were not resolved now because the government has advanced the argument that Plaintiff will become eligible for relief under Section 1005 if the *Miller* classes prevail, thus, rending him ineligible for future USDA loans. This Court has previously rejected the argument that, at some point, courts could "re-write" Section 1005 to include Plaintiff. (Ord. Grt'ing Prelim. Inj., ECF No. 41.)

> The legislative intent of Section 1005 is to remedy past discrimination suffered by those farmers defined as "socially disadvantaged" and to give those farmers a more level playing field with non-minority farmers. Opening eligibility for debt relief to all farmers would gut that intent. Additionally, Defendants have not pointed to a severability clause in the ARPA or Section 1005 to show that Congress would rather have race-neutral debt relief for farmers than no debt relief at all.

(*Id.* at pp. 20-21.) Accordingly, even if the *Miller* classes prevail, Plaintiff will not be entitled to debt relief under Section 1005.

Plaintiff also contends that his alleged injury is not a "some-day" injury because the government approved recipients of forgiveness for new loans prior to the issuance of the first injunction.  The government has admitted that "[e]ligible recipients of payments under Section 1005 may be approved for, and have been approved for, new FSA loans on the condition that the ARPA-eligible debt is paid in full prior to loan closing." However, as noted below, the approval was limited to four recipients as part of a processing test. Any injury suffered by Plaintiff as the result of this limited approval is *de minimis*.

In essence, in claims two and three, Plaintiff seeks an advisory opinion that the USDA must follow the law in the future if certain events occur. However, the record does not contain evidence that Defendants have taken steps to provide future loans to socially disadvantaged farmers or ranchers despite their obtaining either "debt relief" (as Section 1005 is interpreted by Defendants) or "debt forgiveness" (as Section 1005 is interpreted by Plaintiff), and, thus, Plaintiff's request for a declaratory judgment is the type of "premature adjudication" that the ripeness doctrine is meant to avoid. *See Ky. Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (citations omitted) ("Ripeness is a justiciability doctrine designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements. Ripeness becomes an issue when a case is anchored in future events that may not occur as

anticipated, or at all.").[7] Accordingly, the Court finds that Plaintiff's claims two and three are not ripe for judicial review.

<u>Private Right of Action as to Claim Three</u>

According to Defendant, even if Plaintiff has satisfied the requirements of Article III, he still lacks a private right of action to enforce any asserted statutory limits on the USDA's authority to provide future loans to those who have received debt forgiveness because Congress has not granted Plaintiff a private right of action to enforce 7 U.S.C. § 2008h against the USDA.[8] Defendant correctly notes that, "private rights of action to enforce federal law must be created by Congress," *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), and that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)). "Before individuals may file such a lawsuit, they must identify a statutory cause of action that allows them to do so." *Ohlendorf v. United Food & Com. Workers Int'l Union, Loc. 876*, 883 F.3d 636, 640 (6th Cir. 2018) (quoting *Alexander*, 532 U.S. at 286). The cause of action may be express or implied. *Id.*

The statute at issue in claim three is 7 U.S.C. § 2008h, the provision that Plaintiff alleges prevents the USDA from making loans to recipients of debt forgiveness. Clearly, that provision contains no express right for a private party to bring a claim in federal court to enforce its terms. Nor does the statute create an implied right of action.

---

[7]   The government acknowledges that, prior to the issuance of any injunction, the USDA processed Section 1005 payments for four recipients in efforts to test its payment procedures. (Cobb Decl. ¶¶ 29-31, ECF No. 31-1.) Since then, the USDA has not paid off those borrowers' loans or approved them for additional loans.

[8]   The Court agrees with Plaintiff that the government's private right of action argument applies only to claim three which is a statutory claim.

To find an implied right of action, the Court must be able to "infer that Congress created a private right and provided for a private remedy, all without taking the conventional route of doing so expressly." *Id.* Legislative intent "is determinative" in this regard. *Alexander*, 532 U.S. at 286. Without a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87; *see also Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 903 (6th Cir. 2014) ("If a statute fails to provide a private remedy, the federal courts may not create what Congress did not.").

In this case, the Court cannot find that Congress intended to grant a private right of action in 7 U.S.C. § 2008h for borrowers, or for anyone else, to enforce any limitations on the USDA's authority to grant loans to recipients of debt forgiveness. The statute does not purport to protect any right held by Plaintiff, or any other borrower, that would entitle him to any form of relief. *See Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 767 F.3d 554, 565 (6th Cir. 2014) (considering whether a statute was focused on the protection of certain individuals as a factor in determining whether the statute grants those individuals a private right of action).

Moreover, granting Plaintiff a private remedy would have no relation to any purpose furthered by general statutory limitations on the USDA's authority to make loans to recipients of debt forgiveness, which has to do with minimizing losses to the Secretary, *e.g.*, 7 U.S.C. § 1991(a)(12)(A) (defining "debt forgiveness" as an action that "results in a loss to the Secretary"); *id.* § 2001(a) (directing the Secretary to avoid incurring a loss "to the maximum extent possible" when considering write-down options). These statutory provisions are not concerned with protecting farmers from competition from other farmers. *See Stew Farm*, 767 F.3d at 565 ("[T]he

18

statute [at issue] does not focus on the individuals protected, thereby further suggesting no intent on the part of Congress to create a private right of action.")

Plaintiff responds that the government is incorrect that he lacks a right of action to challenge its stated intention to provide future loans to recipients of loan forgiveness on statutory (claim three) grounds. In support of his argument, he relies on the Court's well-established ability to issue an injunction to stop the government from acting illegally. *See Ex parte Young*, 209 U.S. 123, 167-68 (1908) (permitting suit in federal court against state officials for constitutional violations); *see also Philadelphia Co. v. Stimson*, 223 U.S. 605, 620 (1912) (extending the *Ex parte Young* principle to federal government officials). According to Plaintiff, *Ex parte Young* and its progeny establish that, whenever a state or federal official allegedly acts in violation of federal law, a private party may seek declaratory or injunctive relief in federal court to halt the unlawful act. Plaintiff asserts that it is unnecessary to show a private right of action under a statute when a plaintiff requests prospective equitable relief to halt an illegal action.[9]

Plaintiff is mistaken. The Court's equitable power does not itself give rise to a cause of action. *See Mich. Corr. Org.*, 774 F.3d at 905 ("[E]ven in a case involving relief sought under *Ex parte Young*, courts must determine whether Congress intended private parties to enforce the statute by private injunction or for that matter by a declaratory judgment."). The power to grant injunctive or declaratory relief is implicated only "if the plaintiff already has a cause of action from somewhere else." *Id.*; *see also Davis v. Passman*, 442 U.S. 228, 239 (1979) ("[T]he

---

[9] Plaintiff acknowledges that, if Congress had created a remedial scheme for the enforcement of its bar on future loans, *see Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S 247, 256 n.3 (2011), or indicated an "intent to foreclose" equitable relief, *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015), then Plaintiff would be left with the legislatively specified remedies.

question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive.") Only if Congress has "created a specific and uniquely federal right or remedy, enforceable in a federal court of equity," may injunctive or declaratory relief issue. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017) (quoting *Mitchum v. Foster*, 407 U.S. 225, 237 (1972)).

Plaintiff has not shown that Congress granted him a private right and a private remedy either expressly or implicitly to enforce any prohibition in 7 U.S.C. § 2008h against providing loans to recipients of debt forgiveness. Because Plaintiff has no private right of action to enforce 7 U.S.C. § 2008h against the USDA, Defendant's motion to dismiss claim three on this ground is granted.

<u>Plaintiff's Request for Leave to Amend the Complaint</u>

Plaintiff has asked the Court for leave to amend his complaint if the Court grants the government's motion for partial dismissal.  In deciding a motion to amend, a court generally will "freely give leave when justice so requires" pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. "Factors that may affect [a Rule 15(a)] determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).

Here, Plaintiff has not specified what amendments he would make or explained how such amendments would affect the outcome of the issues raised in Defendants' motion. Nor has he complied with the Local Rules of this Court in submitting a proposed order or certificate of consultation in support of his request. The Court, therefore, denies Plaintiff's unsupported request for leave to amend.  *See*, *e.g.*, *Tolliver v. Collins*, 2011 WL 4916193, at *2 (S.D. Ohio

Oct. 14, 2011) (denying motion to amend, in part, because "Plaintiff's motion is not sufficiently particular as required by Federal Rule of Civil Procedure 7(b)); *Williams v. Fund*, 2016 WL 1060410, at *1 (E.D. Mich. Mar. 17, 2016) (denying to amend and noting that "Plaintiffs do not specify which claims they seek to pursue against Dawood, but state only generally that they wish to add him as a defendant").

<u>Summary and Conclusion</u>

Defendants' motion for partial dismissal is **GRANTED**, and Plaintiff's claims two and three are hereby dismissed.  Plaintiff's request for leave to amend the complaint is **DENIED**. The Court will entertain a renewed motion by Defendants to stay this action's remaining claim one pending the resolution of the *Miller v. Vilsack* class action.

IT IS SO ORDERED.

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  January 26, 2022.