# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| **ROBERT HOLMAN,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | No. 1:21-cv-01085-STA-jay |
| ) | |
| **THOMAS J. VILSACK, in his official** ) | |
| **capacity as Secretary of Agriculture;** ) | |
| **and ZACH DUCHENEAUX, in his official** ) | |
| **capacity as Administrator of the Farm** ) | |
| **Service Agency,** ) | |
| ) | |
|     **Defendants.** ) | |

## DEFENDANTS' RENEWED MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION

# **INTRODUCTION**

Plaintiff Robert Holman's equal protection challenge to Section 1005 of the American Rescue Plan Act (ARPA) is being litigated in two courts: here, by Plaintiff as an individual; and also in the Northern District of Texas, by two Rule 23(b)(2) classes to which Plaintiff belongs. *See Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex). The Court should stay this case pending resolution of that class action.

This Court's stay order in a similar Section 1005 challenge—*Joyner v. Vilsack*—lays the groundwork for a stay order here. Most important, because Plaintiff is a member of the classes certified in *Miller*—and cannot opt out of them—any relief ordered by the court in *Miller* would be binding on Plaintiff along with all other class members and preclude him from seeking alternative or additional relief in this Court. Thus, continued adjudication of Plaintiff's claims in this Court, separate from the classes to which he belongs, would be unnecessarily duplicative and would risk inconsistent results. And as the *Miller* plaintiffs were the first to file their challenge to Section 1005, the first-filed rule counsels a stay here in deference to the *Miller* litigation, regardless of when the classes were actually certified. A stay, moreover, would not prejudice Plaintiff, whose interests are being adequately represented by class counsel. In the meantime, Plaintiff is further protected by overlapping preliminary injunctions, including one issued by this Court. Largely for these reasons, the vast majority of courts around the country, including this Court in *Joyner*, have stayed similar challenges to Section 1005 pending resolution of *Miller*.

This Court previously denied a stay in this case because Plaintiff brought two additional claims that are not at issue in *Miller* or *Joyner*. But the Court's recent dismissal of those two claims for lack of subject matter jurisdiction eliminates any material distinction between this case and *Miller*; and the dismissal resolves any difference between this case and *Joyner* that might warrant continued litigation here but a stay there. As in *Joyner*, Plaintiff's only remaining claim is his equal

1

protection challenge to Section 1005, which is also pending before the *Miller* court. Just as it did in *Joyner*, the Court should stay this case pending resolution of *Miller*.

## BACKGROUND

### I. Nationwide Challenges to Section 1005 on Equal Protection Grounds

On June 2, 2021, Plaintiff filed this case, alleging that the U.S. Department of Agriculture's (USDA) implementation of Section 1005, which authorizes debt relief to socially disadvantaged farmers or ranchers, violates his right to equal protection. *See* Compl., ECF No. 1. This case is one of twelve brought in courts around the country that challenge the implementation of Section 1005 on equal protection grounds. *Miller*, 4:21-cv-595; *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.); *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wisc.); *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.).

On July 8, 2021, this Court issued a preliminary injunction that prohibits USDA from disbursing programmatic funds. ECF No. 41. Two other courts have issued similar injunctions. *See* Order on Class Cert. & PI, *Miller*, ECF No. 60; PI Order, *Wynn*, ECF No. 41.

### II. Class Certification in the First-Filed Case

Several days before Plaintiff filed his case, multiple plaintiffs in the Northern District of Texas initiated a similar equal protection challenge to Section 1005. On June 30, 2021, that case was certified as a class action under Rule 23(b)(2). Order on Class Cert. & PI, *Miller*. The *Miller* court certified the following classes:

1. All farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act.

2

> 2. All farmers and ranchers in the United States who are currently excluded from the definition of "socially disadvantaged farmer or rancher," as defined in 7 U.S.C. § 2279(a)(5)–(6)[1] and as interpreted by the Department of Agriculture.

*Id.* at 5-6. Although the *Miller* court certified two classes, and the plaintiffs initially brought an additional claim under Title VI,[2] the plaintiffs and the court emphasized that the classes were specific to the plaintiffs' challenge to Section 1005. *Id.* at 13; Class Cert. Reply 1, ECF No. 41 ("The plaintiffs—at this point in the litigation—are seeking classwide relief *only* against the continued enforcement of the racial exclusions in section 1005 of the American Rescue Plan Act."); *id.* at 4 ("These classes are being proposed for the purpose of obtaining preliminary classwide relief against the racial exclusions in section 1005.").

At the same time, the court issued a preliminary injunction that, like the one issued here, prohibits Defendants from disbursing Section 1005 funds. *Id.* at 22-23. And the *Miller* litigation over Section 1005 has continued apace, with summary judgment briefs due on March 11, 2022.

In September 2021, various plaintiffs in other Section 1005 cases moved to opt out of the *Miller* class action. The *Miller* court denied that motion. Order Denying Opt Out, *Miller*, ECF No. 100.[3] The court observed that allowing the movants to opt out, or otherwise excluding them from the classes, "would undermine the very reasons the Court certified the classes"—among them being the fact that "answering Plaintiffs' substantive legal questions will provide a common answer for all class members regarding issues of law," and any relief granted "would apply generally to the classes as a whole[.]" *Id.* at 4; *see also id.* (discussing "the commentaries'

---

[1] Section 1005 incorporates the definition of "socially disadvantaged farmer or rancher" set out in 7 U.S.C. § 2279(a).
[2] Plaintiffs have since dropped their Title VI claim, and the challenge to Section 1005 is the only remaining claim in the case. Third Am. Compl., *Miller*, ECF No. 135.
[3] Although Plaintiff here had noted that he might move to opt out of the classes certified in *Miller*, Pl.'s Opp'n to Stay 13 n.2, ECF No. 48, Plaintiff did not do so.

3

observations that" allowing opt out "'would thwart the objectives of representative suits under'" Rule 23(b)(2) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1784.1 (3d ed.))).

### III.    Stays in Other Cases Pending Resolution of the Class Action

Shortly after the *Miller* court's class certification, Defendants moved to stay this case and all other cases[4] around the country where plaintiffs have brought virtually identical equal protection challenges to Section 1005. Defs.' Stay Mot., ECF No. 45. Almost every court has granted Defendants' stay motions. *See Joyner*, 1:21-cv-1089, Order (Aug. 19, 2021), ECF No. 21; *Carpenter*, 21-cv-103-F, Order (Aug. 16, 2021), ECF No. 33; *Faust*, 1:21-cv-548, Order (Aug. 23, 2021), ECF No. 66; *McKinney*, 2:21-cv-212, Order (Aug. 30, 2021), ECF No. 40; *Tiegs*, 3:21-cv-147, Order (Sept. 7, 2021), ECF No. 20; *Dunlap*, 2:21-cv-942, Order (Sept. 21, 2021), ECF No. 42; *Wynn*, 3:21-cv-514, ECF No. 84 (Dec. 7, 2021).[5]

When staying proceedings, a majority of those courts emphasized that the respective plaintiffs would likely be unable to opt out of the mandatory Rule 23(b)(2) classes and thus would be bound by any judgment rendered in *Miller*. *See Wynn* Order 6 ("[A]t present, Wynn is a member of the class certified by the court in the *Miller* case such that he will be bound by any final judgment entered in that case."); *Carpenter* Order 5-6 ("Rule 23(b)(2) classes are 'mandatory classes' with no opt-out opportunity" (quoting *Wal-Mart, Inc. v. Dukes*, 564 U.S. 338, 362 (2011))); *Joyner* Order 6 (citing same); *Faust* Order 2 (citing same); *Tiegs* Order 3 (citing same). The courts also rejected the plaintiffs' arguments that they should be permitted to litigate their individual claims with their chosen counsel in their chosen fora on the grounds that, *inter alia*: (1) doing so would

---

[4] In *Nuest v. Vilsack*, No. 21-cv-1572 (D. Minn.), the parties agreed to a stay so long as the plaintiff remains a member of the *Miller* classes, obviating the need for a motion. *See* ECF No. 19.
[5] Defendants' stay motion remains pending in *Rogers*, 1:21-cv-1779, and the court denied the government's stay motion in *Kent*, ECF No. 24, No. 3:21-cv-540 (S.D. Ill.).

4

waste judicial, party, and taxpayer resources, *see Carpenter* Order 9; *Faust* Order 2; *Joyner* Order 3; *McKinney* Order 4; *Tiegs* Order 6; *Dunlap* Order 4; (2) the *Miller* Court had determined that class counsel will adequately represent the interests of all class members, *see McKinney* Order 4; *Joyner* Order 2-3; *Dunlap* Order 4; and (3) the plaintiffs could use procedural mechanisms, such as intervention or amicus filings, to raise any concerns with class counsel, *see McKinney* Order 4; *Joyner* Order 2-3; *Faust* Order 2.

### IV.   This Court's Stay Decisions in *Holman* and *Joyner*

Defendants also moved to stay proceedings in this case and in a similar case before this Court, *Joyner*. The Court initially denied the stay motion here but granted it in *Joyner*. In denying a stay in this case, the Court noted that, in addition to his equal protection challenge to Section 1005 at count one of the Complaint, Plaintiff brought two additional claims concerning USDA's loan-making authority at counts two and three (hereinafter, "debt forgiveness claims"). Stay Order 3. Those debt forgiveness claims are not at issue in *Miller*, and the Court thus expressed concern that they may be left unadjudicated if Plaintiff chose "to opt out of the *Miller* classes," *id.*; but the Court did not address whether Plaintiff had a legal right to opt out.

Shortly after denying the stay in *Holman*, the Court granted Defendants' motion to stay in *Joyner*. *See Joyner* Stay Order. The Court distinguished *Joyner* from *Holman* on the ground that Mr. Holman brought debt forgiveness claims that were not at issue in *Joyner* or *Miller*. *Id.* at 4 n.1 ("*Holman* is distinguishable from [*Joyner*] because Plaintiff in [*Holman*] raised an additional claim concerning the meaning of 'debt forgiveness,' which is not raised in *Miller* or [*Joyner*]."). In *Joyner*, the Court found that the "[m]ost compelling[]" factor in favor of a stay was that Mr. Joyner is a member of, and had no ability to opt out of, the classes certified in *Miller* under Rule 23(b)(2). *Id.* at 6. Thus, the Court held that it would be a waste of judicial resources to continue litigation in this Court concurrently with *Miller*. *Id.* That conclusion was further underscored, the Court

5

explained, by the fact that *Miller* was the first-filed case and therefore had "priority over" subsequently filed cases. *Id.* at 6. Additionally, the Court reasoned that Mr. Joyner would not be prejudiced by the stay, because class counsel would adequately represent his interests and Mr. Joyner could avail himself of various procedural tools should he wish to influence the course of the class action. *Id.* at 5. In the meantime, the Court stated, the preliminary injunction in *Holman* would preserve Mr. Joyner's interests. *Id.* at 4.

### V.     Recent Procedural History in This Case

On October 7, 2021, the parties in this case appeared for a scheduling conference. At the scheduling conference, the Government urged the Court to stay the case for the reasons articulated in the Court's order in *Joyner*. Alternatively, the Government requested that the Court defer setting a schedule pending resolution of its forthcoming motion to dismiss Plaintiff's debt forgiveness claims. The Court ordered the Government to file its motion to dismiss by October 13, 2021, and directed the parties to submit a new proposed scheduling order. The Court also stated that it would consider the Government's arguments for a stay in an appropriate written motion.

On October 13, the Government separately moved to dismiss claims two and three and for reconsideration of the Court's denial of the stay motion or, in the alternative, for a stay of all case deadlines pending resolution of the motion to dismiss. The parties also submitted a proposed scheduling order, which the Court did not enter. Instead, the Court granted the motion to stay case deadlines, ECF No. 59, but denied the motion for reconsideration of its stay order, ECF No. 68.

On January 26, 2022, the Court granted Defendants' motion to dismiss Plaintiff's debt forgiveness claims for lack of subject matter jurisdiction. MTD Order, ECF No. 72. Thus, the only remaining claim in this case is Plaintiff's equal protection challenge to Section 1005 at count one. In its dismissal order, the Court invited Defendants to file a renewed motion to stay litigation on that remaining claim pending resolution of the *Miller* class action. *Id.* at 21.

6

## STANDARD OF REVIEW

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). When determining whether to grant a stay, courts consider multiple factors, including potential prejudice to the non-movant, hardship to the movant if required to go forward, and "the interest in economical use of judicial time and resources." *Int'l Bhd. of Elec. Workers, Loc. Union No. 2020, AFL-CIO v. AT&T Network Sys.*, 879 F.2d 864, 1989 WL 78212, at *8 (6th Cir. 1989) (Table). "Relevant to this consideration is the question of whether a separate suit in another jurisdiction involves the same issues and parties and is likely to consider adequately all interests before the court considering a stay." *Id.* "Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time." *B&B Hardware, Inc. v. Hargus Indus., Inc.*, 575 U.S. 138, 140 (2015); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation."). Courts should be mindful of the interests in "conserv[ing] judicial resources," "minimizing duplicative or piecemeal litigation," and "protect[ing] the parties and the courts from the possibility of conflicting results." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). Thus, when actions involving the same parties and issues are filed in two different courts, stay or dismissal of the later-filed case is the proper course. *Id.*

## ARGUMENT

As it did in *Joyner*, the Court should stay this case pending resolution of the class action in *Miller*. Plaintiff is a member of the mandatory classes certified in *Miller*, which, like Plaintiff, challenge Section 1005 on equal protection grounds. Accordingly, the *Miller* litigation will resolve Plaintiff's only remaining claim in this case, and its judgment will be binding on Plaintiff together with all other class members. Continuing litigation in this court, simultaneous to the class action,

7

would be unnecessarily duplicative, risk inconsistent judgments, and undermine principles of judicial efficiency. And a stay would not prejudice Plaintiff, whose interests are being adequately represented by class counsel in *Miller* and who is protected by multiple injunctions.

**I.      A Stay Would Avoid Unnecessarily Duplicative Litigation of Plaintiff's Claim and Inconsistent Judgments in Multiple Courts.**

A stay is warranted first, and "[m]ost compellingly," *Joyner* Order 6, to avoid unnecessarily duplicative litigation of Plaintiff's claim in this Court and in *Miller* at the same time. Plaintiff does not dispute that he is a member of the mandatory classes certified in *Miller*: he is a farmer who alleges is being subjected to racial discrimination because the definition of "socially disadvantaged farmer or rancher," for purposes of Section 1005, does not automatically include farmers like him who self-identify as white. Compl., ECF No. 1. Nor may it be disputed that Plaintiff's only remaining claim is identical in all material respects to the claim at issue in *Miller*. In both cases, plaintiffs challenge the provision of debt relief to Socially Disadvantaged Farmers under Section 1005 on equal protection grounds. *Compare id.*, *with* Third Am. Compl., *Miller*, ECF No. 135. Thus, even if there might be "slight distinctions" in the cases, the central issue the courts are called to resolve is the same: the constitutionality of Section 1005. *See Wynn* Order 6. And Plaintiff has not argued otherwise. In his prior brief opposing a stay, he did not deny the identical nature of his claim here and the claim in *Miller* but only asserted that he may not agree with every form of *relief* the *Miller* court may enter. Pl.'s Opp'n 10-11, ECF No. 48. But this Court in *Joyner* rejected the plaintiff's contention that any difference in the remedy sought might provide a basis for concurrent litigation on the merits. *Joyner* Order 4 (rejecting arguments based on speculative forms of relief that *Miller* might order); *see also Holman* MTD Order 15.

Because Plaintiff is a member of the classes certified in *Miller*, which are litigating the same claim he raises here, the *Miller* litigation stands to resolve this case. Any judgment and relief

8

ordered in *Miller* will apply equally to Plaintiff as it does to all other class members. *Wal-Mart*, 564 U.S. at 361-62 (noting that the relief sought in a Rule 23(b)(2) class "perforce affect[s] the entire class at once"); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1312 (11th Cir. 2012) ("Class action judgments will typically bind all members of the class."). And as this Court found in *Joyner*, because the classes were certified under Rule 23(b)(2), Plaintiff cannot opt out of any judgment entered with respect to the classes. *Joyner* Order 6; *see also* MTD Order 5 (citing *Wal-Mart*, 564 U.S. at 361-63, for the proposition that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). Rather, the court's ruling will be *binding* on Plaintiff and preclude him, like all other class members, from obtaining an alternative judgment in another proceeding. *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984).

This Court's previous decision denying a stay did not address Plaintiff's op-out rights. Instead, it credited Plaintiff's previous suggestion that he "may choose to opt out of the *Miller* classes," and denied the stay in part on that basis. Stay Order 3. Since then, Plaintiff has not attempted to opt out. But more importantly, the *Miller* court's subsequent order denying various other plaintiffs' motion to opt out of the certified classes confirms that Plaintiff would have no "[]ability to opt out of the *Miller* class action," even if he did seek to do so. *Joyner* Order 6.

Accordingly, permitting Plaintiff to continue litigating his claim in this Court would create a risk of inconsistent results that could undermine the preclusive effect of a class-wide judgment and confuse Defendants' obligations to different class members. *See Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993), *aff'd,* 193 F.3d 1185 (11th Cir. 1999) (expressing concern with "avoid[ing] conflicting orders"). For instance, if the plaintiff class succeeds in its equal protection challenge to Section 1005 in *Miller* but Plaintiff loses his claim here (or vice

9

versa), Defendants would be subject to conflicting judgments concerning the constitutionality of Section 1005 and, importantly, their obligations toward this Plaintiff. Staying this case pending resolution of the class challenge to Section 1005 would avoid this risk of contradictory outcomes.

That *Miller* certified the classes after Plaintiff commenced this action does not support continued, separate litigation of Plaintiff's claim here. Under the first-filed rule, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Baatz*, 814 F.3d at 789 (citation omitted); *see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, No. 00–3183, 2001 WL 897452, *3 (6th Cir. July 31, 2001) ("The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank.") *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) (noting the concern with avoiding "piecemeal resolution of issues that call for a uniform result"). The parties and issues in this case and *Miller* are more than "nearly identical"—because he is a *Miller* class member, *this Plaintiff's claim* is being simultaneously litigated in two courts. And because Plaintiff and Defendants will both be bound by any class-wide judgment on Section 1005, litigating the cases separately does not benefit Plaintiff; it only burdens judicial resources at the risk of creating conflicting outcomes. *See Joyner* Order 6; *Cf. Wynn* Order 8 & n.3 (rejecting the plaintiff's argument that the *Miller* plaintiffs lacked standing when the case was initially filed as a basis to disregard the first-filed rule).

Plaintiff's response to Defendants' motion for reconsideration provides no basis to reach a different outcome. *See* Resp. in Opp'n., ECF No. 66. His opposition relies on the *Kent* court's conclusion that several differences between the way the *Miller* and the *Kent* plaintiffs pleaded their Section 1005 claims militates against a stay. *See generally Kent* Order. But those distinctions are immaterial. Indeed, the first *Kent* rationale on which Plaintiff relies—the existence of an additional

10

Title VI claim in *Miller*—no longer has any relevance, as the *Miller* plaintiffs have since dropped that claim. *See Miller* Third Am. Compl., ECF No. 135. Additionally, *Kent* was wrong to conclude that any desire for fact discovery from the Farm Service Agency is reason to continue litigation apart from the class action, as such discovery is not relevant to the plaintiffs' facial challenges to the constitutionality of Section 1005 in *Miller*, *Kent*, or this case.[6] Finally, any request for nominal damages is not reason to continue litigation on the merits of Plaintiff's claim apart from the class action, despite *Kent*'s finding to the contrary. For one, there is no valid waiver of sovereign immunity that would permit an award of nominal damages against the federal government. *See, e.g.*, *ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53 (1st Cir. 2013) ("[A] claim for nominal damages is foreclosed by HHS's sovereign immunity."). In any event, Plaintiff's request for nominal damages here would not overcome the preclusive effect of any class-wide judgment in his favor; and whether Plaintiff is entitled to nominal damages if the *Miller* court rules in favor of the classes may be addressed, if necessary, after *Miller* enters judgment. Thus, as the *Wynn* court concluded, regardless of any minor differences in the ways the plaintiffs' pleaded their claims, "the central issue and *character* of each suit is the same." *Wynn* Order 6.

Given the duplicative nature of the cases, it would be "an inefficient use of judicial resources to continue litigation in this Court while the *Miller* case is ongoing." *Joyner* Order 6. Based on similar rationale, courts routinely conclude that a stay is warranted where the plaintiff is a member of a certified class action.[7] *See Jiaming Hu v. U.S. Dep't of Homeland Sec.*, 4:17-cv-

---

[6] Moreover, as the *Wynn* court pointed out, "the cases share an overlapping Defendant—Tom Vislack, in his official capacity as the Secretary of Agriculture. As such, the Court finds that the parties substantially overlap in these two cases as well." *Wynn* Order 6-7.

[7] Indeed, federal courts regularly stay cases when a class certification motion is only *pending*, rather than already granted, in an earlier-filed related case. *See, e.g.*, *Sanchez-Cobarrubias v. Bland*, CV609-005, 2011 WL 841082, at *1 (S.D. Ga. Mar. 7, 2011) (reciting case history); *Bargas v. Rite Aid Corp.*, CV1303865MWFJEMX, 2014 WL 12538151, at *3 (C.D. Cal. Oct. 21, 2014).

11

02363, 2018 WL 1251911, at *4 (E.D. Mo. Mar. 12, 2018) ("Since class members generally cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified." (internal quotation marks omitted) (citing cases)); *see also Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (affirming dismissal without prejudice "based on the rule against duplicative litigation" where plaintiff's allegations "duplicated claims that had been included in separate class actions" against the defendant, and plaintiffs "were members of those classes"); *Aleman ex rel. Ryder Sys., Inc. v. Sanchez*, 21-cv-20539, 2021 WL 917969, at *2 (S.D. Fla. Mar. 10, 2021) (noting that "the Court entered an order staying proceedings" pending resolution of a related class action, "recognizing that the cases are related, and that the resolution of the issues raised in the Class Action will necessarily impact the proceedings in" the case); *Richard K. v. United Behavioral Health*, 18-cv-6318, 2019 WL 3083019, at *7 (S.D.N.Y. June 28, 2019), report and recommendation adopted, 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (stay and dismissal without prejudice "are routinely found appropriate where, as here, the claims made in an individual lawsuit overlap with the claims being pursued by a certified class of which the individual plaintiff is a member"). And for that reason, almost every court has stayed litigation of the Section 1005 cases pending resolution of *Miller*. This Court should do the same.

**II.  A stay would not prejudice Plaintiff**

Additionally, Plaintiff would not be prejudiced by a stay pending resolution of his claim in *Miller*. On the contrary, his membership in the *Miller* classes ensures that his interests will be represented, regardless of whether litigation in this Court proceeds as well. *Joyner* Order 6 ("Plaintiff will not be deprived of 'his day in court' as he asserts, because he is a member of a mandatory class action litigating the same claim he brings in this Court."). In its prior decision denying a stay, this Court expressed concern that if Plaintiff chose to opt out of the *Miller* classes,

12

his interests might be left unrepresented. Stay Order 3. Subsequent events should allay the Court's concerns in that regard. The *Miller* court's order clarifies that no plaintiff is able to opt out of the class action; and that necessarily ensures that Plaintiff's interests will be represented along with all other members of the classes.[8] As the *Miller* court concluded in certifying the classes, class members will be adequately represented by counsel who will be "zealously pursuing the relief requested." *Joyner* Order 5 (quoting *Miller*, ECF No. 12-1 at 121). It is undisputed, moreover, that any judgment and relief entered in *Miller* would apply to Plaintiff equally with all other class members.

Additionally, the *Miller* litigation is on track to be resolved expeditiously, such that Plaintiff will not be prejudiced by any delay in the resolution of his claim. *See* Order, *Miller*, ECF Nos. 85, 146 (setting summary judgment response deadlines for April 1, 2022). Plaintiff may contend that he is prejudiced by a stay here because he had no ability to influence the pace of the *Miller* litigation or strategic decisions made. But, again, the *Miller* court and this Court in *Joyner* have determined that class counsel will adequately represent Plaintiff's interests; and in any event, other procedural mechanisms may be available to Plaintiff "should he wish to raise any concerns in the Texas litigation." *Joyner* Order 5. Plaintiff has had ample time to avail himself of any such procedural tools and cannot complain that he is prejudiced now because he opted not to pursue them.

---

[8] In any event, if for any reason Plaintiff drops out of the class, this Court may lift the stay.

## CONCLUSION

For the foregoing reasons, the Court should stay this case pending resolution of the class action in *Miller*.

DATED: February 1, 2022                    Respectfully submitted,

                                                        JOSEPH C. MURPHY, JR.
Acting United States Attorney

*s/ Audrey M. Calkins*
Audrey M. Calkins (TN BPR # 030093)
Audrey.calkins@usdoj.gov
167 N. Main Street, Suite 800
Memphis, TN 38103
901-544-4231
Fax: 901-544-4230

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF CONSULTATION

I certify that on January 26, 2022, counsel for Defendants, Kyla Snow, conferred with counsel for Plaintiff, Braden Boucek, via email regarding this Motion, and counsel for Plaintiff indicated that Plaintiff will oppose this Motion.

                                                                                                        */s/ Kyla M. Snow*