# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| ROBERT HOLMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:21-cv-01085-STA-jay |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and | ) ) ) ) ) |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, | ) ) ) ) |
| Defendants. | ) |

**RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION [Doc. 77]**

Robert Holman hereby responds to the government's *fifth* request to stay his case so that it can litigate in its preferred forum in Texas. (Docs. 45, 46 (July 14, 2021), 58 (Oct. 14, 2021) (alternative requests), (Doc. 77).) By its Renewed Motion to Stay (Doc. 77), the government again asks this Court to halt all proceedings for an indefinite period to await resolution of the class action, *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.) challenging Section 1005. This Court has already rejected the government's request to stay the case on that basis. (Doc. 49 at 2.) Now, the government contends that a stay is warranted because this matter is indistinguishable from another case this Court stayed—*Joyner v. Vilsack*, 1:21-cv-1089. The government is incorrect, and, in any event, there are other reasons why Mr. Holman's case should be allowed to proceed in this Court,

-1-

including recent litigation decisions in *Miller* and significant remaining differences between *Miller* and Mr. Holman's case

As this Court previously recognized, the government prefers to defend Section 1005's stark racial discrimination somewhere else—anywhere else—besides where *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021) is the law. (Doc. 49 at 2.) This remains true. The Court correctly observed when it last denied the government's bid to stay, "[t]his fact *alone* militates against granting a motion to stay." (Id. at 3) (emphasis added). Thus, the government's desire to force Mr. Holman to litigate his case in another circuit with counsel not of his choosing has nothing to do with *Miller*. *Miller* was filed on April 26, 2021, *see* (*Miller*, Doc. 1), and the class had already been certified when this Court last rejected the government's bid for a stay. (Doc. 49 at 2.) The Court also denied the stay request out of a concern that Mr. Holman would be out of control of a case that would determine his fate. (Id.) A brief look at developments in *Miller* only reinforces this concern.

This Court should again find that the government has not carried its burden of showing that it faces an "irreparable injury" if the case proceeds, however much it might prefer the convenience of consolidating all Section 1005 cases. *Int'l Bhd. of Elec. Workers, Loc. Union No. 2020, AFL-CIO v. AT&T Network Sys.*, 879 F.2d 864, 1989 U.S. App. LEXIS 10266, at *23 (6th Cir. 1989) (table). Indeed, the district court in *Kent v. Vilsack*, No.3:21-cv-540 (S.D. Ill.) agreed with this Court's previous ruling in denying the government's request to stay bolstering this Court's reasoning with several of its own that apply equally here.[1]

---

[1] The *Kent* order was previously filed as supplemental authority in this case. (Doc. 66-1.)

**INTRODUCTION**

On July 7, 2021, the Court held an evidentiary hearing where the government failed to make the necessary showing to support Section 1005. (Doc. 41.) The Court left the door open for the government to produce additional evidence to support the program. (Id. at 12 n. 12.) Instead of doing so, the government once again seeks another indefinite stay.

Little is needed to resolve this case considering the injunction hearing. Indeed, if the case had proceeded on Mr. Holman's suggested timeline, dispositive motions would have been filed on December 10, 2022. (Doc. 51 at 2.) The only reason that this Court cannot convert its preliminary injunction to a permanent one now is to afford the government a chance to produce additional evidence—something it has steadfastly avoided doing. *See United States v. Miami Univ.*, 294 F.3d 797, 815 (6th Cir. 2002). In fact, despite being served with discovery by Mr. Holman on September 28, 2021, the government has provided nothing.[2] Likewise, although the Court ruled on its partial motion to dismiss on January 26, 2022, the government has yet to file an answer to Mr. Holman's complaint. The government's motion should be denied.

**BACKGROUND**

This Court previously found that Section 1005 of the American Rescue Plan Act of 2021 was likely unconstitutional when granting a preliminary injunction enjoining the disbursement of

---

[2] Even with this Court's temporary stay, the government has missed its deadline to respond. Mr. Holman served discovery on September 28, 2021. The Court stayed discovery on October 22, 2021 (Doc. 59) pending a ruling on the government's partial motion to dismiss, which was granted on January 26, 2022. Thus, 24 days elapsed between service of discovery and the stay order. Another 20 days have elapsed since the Court granted the government's partial motion to dismiss, for a total of 44 days as of this filing. The government's missed discovery deadlines are sure to delay this case further.

funds on a nationwide basis. (Doc. 41.) Courts in two other cases issued similar injunctions (Doc. 41 at 9): the Northern District of Texas in *Miller* and the Middle District of Florida in *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.).[3]

In *Miller*, the government opposed class certification. In so doing, it indicated a preference to try these cases in multiple districts by opposing class certification. (Doc. 28, 4:21-cv-595 (N.D. Tex.).) However, after the class was certified in *Miller* and after the government lost every motion for an injunction that reached a hearing, the government switched tactics, attempting to funnel all cases into *Miller*. The government largely succeeded, staying all other Section 1005 cases pending *Miller* (Doc. 77 at 4) except for *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.), *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.) (where the stay request is still pending), and Mr. Holman's case.

In *Kent*, the Southern District of Illinois relied on this Court's previous order in denying the government's request. (Doc. 66-1.) There, the government unsuccessfully argued that the court should not "compound [the *Holman* court's] earlier error" by denying its stay request. (*Kent*, Doc. 66-1 at 4.) Instead, the court in *Kent* ruled that (1) the *Miller* plaintiffs brought different, Title VI claims (2) the *Miller* plaintiffs did not name the administrator of the FSA as a defendant, significant since the *Miller* attorneys forewent factual discovery, and (3) the plaintiffs in *Kent* sought nominal damages. (Id. at 4-5.) The court also ruled that a stay would "unduly prejudice and tactically disadvantage Plaintiffs." (Id. at 6.)

---

[3]The court in *Wynn* subsequently stayed the proceedings in light of *Miller*. (Doc. 67-1.) The Eastern District of Wisconsin also issued a nationwide TRO in *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wisc.) (Doc. 41 at 9.) That TRO was dissolved on July 6, 2021, because of the nationwide injunction issued in *Wynn*. (Faust, Doc. 49.)

The court in *Kent* also dismissed the government's concern about conflicting judgments because "four courts have granted preliminary relief" and are "consistent with one another." (Id. at 7.) Nor did it find that "outsourc[ing] the litigation to the Northern District of Texas" would simplify the issues. Instead, it would prevent the issue from "percolating among the federal courts." (Id. at 8.) The court also noted the possibility that it could wind up waiting on *Miller*, only to see the case mooted by legislative change, and then still be forced to rule because, unlike *Miller*, the plaintiffs in *Kent* requested nominal damages. (Id.) Plaintiffs' motion for summary is now pending in *Kent*. (*Kent*, Doc. 47.)

The government attempted to employ its stay tactic here as well. The government's first two stay requests were filed on July 14, 2021 (Docs. 45, 46.) As it does again today, the government requested a stay pending resolution of the *Miller* class action. (Doc. 45.) It concurrently requested an administrative stay while the Court ruled on the motion to stay. (Doc. 46.) The Court granted the government's motion for an administrative stay (Doc. 47) but denied the motion to stay pending *Miller*. (Doc. 49.) In denying the motion, this Court began by recognizing that courts must "tread carefully in granting a stay of the proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." (Id. at 1 (quoting *Ohio Envtl. Council*, 565 F.2d at 396).) The Court stated that, under the law of the Sixth Circuit, "the burden is on the party seeking the stay to show that there is a pressing need for delay." (Id.) The Court further recognized: "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." (Id. at 2 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

The Court rejected the idea that Mr. Holman should be forced to proceed exclusively under the class in *Miller*. (Id.) It did so by first reasoning that the government wished to defend the program the Court had just ruled was likely unconstitutional (Doc. 41 at 17) in a circuit where the key case, "*Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), is not binding precedent[.]" (Doc. 49 at 2-3.) This Court suggested that this factor was likely dispositive: "This fact alone militates against granting a motion to stay." (Id. at 3.) The government entirely omits this Court's reliance upon *Vitolo* even though it was the first basis for the ruling. (Doc. 77 at 5.)

The Court recognized other factors that also militated against waiting on *Miller*:

> If this matter is stayed, he "would have no say whatsoever in the pace at which *Miller* would proceed, including whether extensions of deadlines may be requested or granted by either party, or whether the government may seek en banc review by the Fifth Circuit, or whether ultimate review by the U.S. Supreme Court may occur." (*Id.* at p. 9.) *Plaintiff could well have to wait years before he is able to resume his case in this Court*.

(Doc. 49 at 3) (emphasis added). The government does not address this consideration either. (Doc. 77 at 5.) Only then did the Court also note that "[a]dditionally, the interests of the *Miller* plaintiffs are not completely aligned" with Mr. Holman's owing to his claims regarding future loan eligibility that the Court was to later dismiss. (Doc. 72.) The misalignment in claims would mean that, regardless of the outcome in *Miller*, an important interest will remain unadjudicated and in indefinite hiatus.[4] (Doc. 49 at 3.).[5]

---

[4] As will be explained more fully below, despite the dismissal of Mr. Holman's future loan eligibility claims, his request for nominal damages will remain unadjudicated since the *Miller* plaintiffs did not request nominal damages. (*Miller*, Doc. 135 at 7-8.)

[5] The Court also observed that Mr. Holman may opt out of the *Miller* classes. (Doc. 49 at 3.) The court in *Miller* denied the request of plaintiffs in other cases to opt out of the certified classes. (*Miller*, Doc. 100.)

On October 13, 2021, the government filed its partial motion to dismiss Mr. Holman's future loan eligibility claim. (Doc. 57.) On October 15, 2021, the government requested this Court reconsider its stay motion and, alternatively, to stay discovery and other case deadlines in consideration of the motion. (Doc 58.) The Court paused this matter pending resolution of the partial motion to dismiss, (Doc. 59) but denied the government's motion to reconsider a stay of the entire case. (Doc. 68.) The Court then granted the partial motion to dismiss on January 26, 2022. (Doc. 72.) The government filed a renewed motion to stay the case pending resolution of the *Miller* case on January 26, 2022. (Doc. 72.)

## LEGAL STANDARD

The Court is familiar with the legal standard for a motion to stay. As this Court appreciated in denying the stay request previously, courts must "tread carefully" before granting a stay and the burden is on the party requesting one to show a "pressing need for delay." (Doc. 49 at 1 (quoting *Ohio Envtl. Council*, 565 F.2d at 396).) "Only in rare circumstances" should a party be forced to stand aside while a litigant somewhere else decides a case that will define his rights. (Id. at 2 (quoting *Landis*, 299 U.S. at 255).)

"[T]he moving party has the burden of proving that *it will suffer irreparable injury* if the case moves forward, and that the non-moving party will not be injured by a stay." *IBEW, 2020,* 1989 U.S. App. LEXIS 10266, at *2 (emphasis added); *see also Wilson v. Unum Life Ins. Co. of Am.*, No. 3:03-0070, 2004 U.S. Dist. LEXIS 24454, at *10 (M.D. Tenn. Jan. 22, 2004) (rejecting request for stay where party "presented no evidence that she will suffer an irreparable injury if the case proceeds."). Courts recognize several factors to guide the decision whether to grant a stay. *Id.* A district court has discretion to stay a matter where it has determined that a stay is necessary to

-7-

avoid piecemeal, duplicative litigation, and potentially conflicting results. *Id.* But "[t]he most important consideration is the balance of hardships." *Id.* at *8. The court must still consider "whether granting the stay will further the interest in economical use of judicial time and resources." *IBEW, 2020*, 1989 U.S. App. LEXIS 10266, at *23-24. "Relevant to this consideration is the question of whether a separate suit in another jurisdiction involves *the same issues and parties and is likely to consider adequately all interests before the court considering a stay*." *Id.* at *24 (emphasis added). Here, that is not the case.

## ARGUMENT

The government has failed to satisfy its burden of showing that it faces an irreparable injury or that Mr. Holman will not be injured if this case is not delayed. In fact, despite now having a second bite at the apple and demanding a stay of indefinite duration, it never mentions its own irreparable injury because it cannot show one. As this Court previously found, Mr. Holman has a strong interest in proceeding in a district where *Vitolo* is the law, by counsel of his own choosing. This interest weighs more heavily in Mr. Holman's favor today than the last time the government sought a stay. Further, as the court found in *Kent*, the government's first-to-file argument is unpersuasive; a stay will tactically benefit the government to the plaintiff's detriment; the risk of inconsistent judgments is a nonfactor; and, a stay will not reduce the burden on the court or litigants. Other factors militating against a stay are the continued misalignment with *Miller* resulting from Mr. Holman's demand for nominal damages and the differing procedural posture of Mr. Holman's case. The fact that the Court dismissed Mr. Holman's debt relief claims and stayed *Joyner* do not obviate all of these other considerations.

### A. Mr. Holman's interest in proceeding in this Court is stronger today than when the Court previously denied the government's request to stay the case.

The government fails to show that it faces an irreparable injury if it does not obtain a stay. Mr. Holman's interest weighs heavily against the granting of one.

The government neglects altogether to address the primary bases for the Court's prior rejection of its bid for a stay. After recognizing that the government carries a burden to show a "pressing need for delay," this Court's prior ruling concluded the government could not meet its burden. (Doc. 49 at 1-2.) This Court ruled based on two reasons which are unaffected by the recent grant of the government's partial motion to dismiss. The Court's primary justification was that "[t]he government asks the Court to take this matter out of the hands of a Plaintiff who has already prevailed on a motion for preliminary injunction, and have his fate determined by other parties with other legal counsel in a court in a different judicial circuit that isn't bound by *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021)." (Id. at 3.) This fact was one that "*alone* militates against granting a motion to stay." (Id. at 3 (emphasis added).) The Court also agreed that forcing Mr. Holman to leave the pacing of matters in the hands of counsel not of his own choosing might cause him to "wait years" to resume his case. (Id.) Neither of these justifications has changed. The government flatly fails to address either of them.

Also prejudicing Mr. Holman, and requiring a compelling justification, the government's stay is for one of "indefinite duration." *Landis*, 299 U.S. at 255. A stay with no fixed time frame should not be granted "in the absence of pressing need." *Id*. The government raises no reason that could be construed as a "pressing need." Rather, they are concerns of convenience.

-9-

In fact, both of the Court's original justifications weigh more heavily today. The government's ongoing refusal to address *Vitolo* underscores how wary it is of the precedent. When it comes to the second reason, the Court agreed with Mr. Holman that he would be unable to control extensions of deadlines or the seeking of en banc review from the Fifth Circuit that could cause years of delay. (Id.) Since this Court denied the government's first stay request, the following has occurred in *Miller,* No. 4:21-cv-595 (N.D. Tex.): (1) plaintiffs have amended their complaint twice (Docs. 87, 135); (2) the parties agreed to extend the time for each of them to file expert reports by three weeks (Doc. 146); (3) a notice of interlocutory appeal to the Fifth Circuit was filed by denied-intervenors (Doc. 147), who then; (4) unsuccessfully sought an emergency stay (Doc. 148); (5) the parties again agreed to extend deadline for exchanging rebuttal expert reports by three weeks and also to entirely *forgo expert depositions* so as to keep their dispositive motion deadlines. (Doc.164.) In short, this Court's concerns about Mr. Holman having no say in how *Miller* unfolded have been entirely validated. (Doc. 49 at 3.)

The government asserts that *Miller* is "proceeding apace," with motions for summary judgment due on March 11, 2022. (Doc. 77 at 3.) But haste has come at a cost. Beyond the questionable decision to forego expert depositions, the *Miller* attorneys agreed early on to entirely forego fact discovery. (*Miller*, Doc. 70 at 2.) And the *Miller* plaintiffs are on their *third* amended complaint. (*Miller*, Doc. 135.) Of further concern, when the parties set original deadlines, they informed the court that they needed "a period of several months" to develop the record *after* receiving expert reports and deposing them. (*Miller*, Doc. 70 at 3.) As such, they requested an expert disclosure deadline of December 17, 2021, and a March 11, 2022, deadline for filing summary judgment motions. Yet, on February 4, 2022 (after the government filed the instant

motion wherein it confidently assured this Court that "class counsel will adequately represent Plaintiff's interests" (Doc. 77 at 13)), the parties in *Miller* agreed to continue to push back deadlines for rebuttal expert reports, while *retaining* the original deadline for filing summary judgment motions. (*Miller*, Docs. 163 & 164.) Thus, without fact or expert discovery and a mere two weeks after receiving full expert disclosures, the parties in *Miller* intend to file summary judgment motions. Mr. Holman has more—not fewer—concerns about litigation strategies not of his choosing than he did the last time this Court ruled.

The government brushes off Mr. Holman's concerns about the litigation strategies employed in *Miller* by suggesting that "other procedural mechanisms may be available to Mr. Holman" should he wish to raise any concerns over strategy in the Texas litigation. (Doc. 77 at 13.) Mr. Holman, however, had no reason to intervene in a class action in Ft. Worth, Texas while his lawsuit was moving forward in the district where he resides, and prior attempts to opt-out failed. More importantly, the damage has been done. The attorneys in *Miller* have already foregone fact and expert discovery and rushed to summary judgment.[6] Indeed, Mr. Holman's counsel are unaware of any "procedural mechanisms" that would allow Mr. Holman to conduct discovery once it has been waived and summary judgment motions are under consideration.

---

[6] The decision to forego fact discovery was made in July 2021, only a month after Mr. Holman filed his complaint and before the government filed its first motion to stay this case. (*Miller*, Doc. 70 at 2.) If the government has ideas as to what "procedural mechanisms" (Doc. 77 at 13) would address this, it never says, especially since it has not been forthcoming with discovery in this case.

-11-

### B. The Court should also adopt the *Kent* court's reasons for denying a stay.

In addition to the reasons in the Court's previous rulings, the Court should also adopt the reasons expressed by the court in *Kent* in denying the government's motion to stay.

First, like *Kent*, a stay will unduly prejudice Mr. Holman and tactically advantage the government. (Doc. 66-1 at 6.) As referenced above, Mr. Holman trusts the attorneys that he selected to make the best litigation decisions in the judicial district where he lives and where *Vitolo* is binding precedent. The government's preference for litigating in another circuit is to its tactical advantage. The government signaled its preference to litigate multiple cases rather than one case when it opposed class certification in *Miller*. (*Miller*, Doc. 28.) Moreover, by arguing in this case that any injunctive relief must be geographically limited (Doc. 31 at 40), the government necessarily acquiesced to being sued in various jurisdictions. If the government was concerned about conserving resources or inconsistent results, it would have made the opposite litigation decisions early on, instead of doing a strategic 180-degree turn after its initial tactics failed.

Second, as in *Kent*, the government's purported concern over conflicting judgments is unwarranted. (Doc. 66-1 at 7.) The prospect doesn't rise to the level of an irreparable injury in any event. *See Brenkus v. Healthy Life Mktg.*, No. 4:04-cv-01763, 2005 U.S. Dist. LEXIS 59537, at *3 (N.D. Ohio Jan. 6, 2005) (preclusive effect does not rise to the level of irreparable hardship). But it is simply a baseless fear since every court that reached a result on a request for an injunction ruled consistently—the egregious race preference in Section 1005 is likely unconstitutional. (Doc. 66-1 at 7.) If the government has better evidence now, Mr. Holman has not seen it. Nor is it likely that the *Miller* court will reach a different result given that its ruling was harmonious (and the plaintiffs have apparently, confidently opted to skip discovery on that basis). (Doc. 38-1.)

Third, as in *Kent*, the interests in judicial economy do not merit a stay. (Doc. 66-1 at 7.) There are now only four, active cases—*Miller*, *Kent*, and *Rogers*, and this one—to challenge a national program with a flagrant racial preference. Plaintiffs' motion for summary judgment has been filed in *Kent*, with the government's response and cross-motion due March 1, 2022. (*Kent*, Docs. 43-1 at 2 & 47.) *Rogers* is largely dormant[7] and there was no discovery or depositions in *Miller*. So it is hard to see how Mr. Holman's case is much of a burden because the government doesn't have much work to do the other cases. Any inconvenience to the government is far outweighed by the significance of the constitutional right at issue, and the government is represented by the largest legal employer in the world.[8] *See United States v. Mendoza*, 464 U.S. 154, 160 (1984) (federal government "is more likely than any private party to be involved in lawsuits against different parties which nonetheless involve the same legal issues."); *Young v. WH Administrators, Inc.*, No. No. 1:17-cv-02829, 2018 U.S. Dist. LEXIS 87762, at *6 (W.D. Tenn. May 25, 2018) (Anderson, C.J.) ("The Court is not persuaded that either the fact that Defendant must participate in two lawsuits or that judicial efforts may be duplicated to some extent outweighs the potential prejudice to Plaintiff if this action is stayed."). In any event, the number of cases is far fewer now than when the Court last ruled, meaning that this interest tilts more heavily in Plaintiff's favor now. Furthermore, there are offsetting interests as recognized by the *Kent* court.

---

[7] In *Rogers*, the government's July 19, 2021 motion to stay is pending. (*Rogers*, Doc. 8.) The government has never filed a responsive pleading in *Rogers*. The last activity on the docket, aside from a motion and order to withdraw counsel, was over two months ago, when the government filed a notice of supplemental authority in support of its pending stay motion. (*Rogers*, Doc. 33.)

[8] *A Career Counselor's Guide to Lateral Hiring at DOJ*, United States Department of Justice, https://www.justice.gov/oarm/images/lateralhiringguideforweb.pdf (copy available at Doc. 48-1).

Funneling every case into *Miller* just "outsource[s] the litigation," preventing the issue from "percolating among the federal courts," and generally delaying things while everyone waits on a case which may wind up mooted.[9] (Doc. 66-1.)

The government's attempts to rely on the first-to-file rule are similarly unpersuasive. (Doc. 66-1 at 4-5.) Contrary to the government's position, "[t]he 'most basic aspect' of the first-to-file rule 'is that it is discretionary.'" *Emps. Ret. Sys. v. Jones*, No. 2:20-cv-04813, 2020 U.S. Dist. LEXIS 240008, at *6 (S.D. Ohio Dec. 21, 2020) (internal quotations omitted); *see also Baatz*, 814 F.3d at 793 ("It is within the discretion of the district court to decline to apply the first-to-file rule."). Moreover, when the first-filed suit seeks a declaratory judgment—like the *Miller* plaintiffs—the Sixth Circuit has held that "the first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (quoting *Amsouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004)). "District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does *not* have a right to bring a declaratory judgment action in the forum of his choosing." *Id.* at 551 (emphasis in original) (quoting *Zide Sport Shop of Ohio v. Ed. Tobergate Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)). Here, not only does the

---

[9] Legislative mootness is no idle concern. Proposals to moot these cases have been entertained. *See, e.g.*, Leah Douglas & Christopher Walljasper, *Biden farm debt relief plan to exclude thousands of minority farmers*, REUTERS, at https://www.reuters.com/markets/us/biden-farm-debt-relief-plan-exclude-thousands-minority-farmers-data-shows-2021-12-17. Of course, mooting the case would only affect prospective relief, not nominal damages.

dissimilarity of the parties and interests weigh against the application of the first-to-file rule,[10] but fact that the *Miller* complaint seeks declaratory and injunctive relief only further militates against application of the rule. *Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d 551-52; *Amsouth Bank*, 386 F.3d at 791 n.8; *Zide Sport Shop*, 16 F. App'x at 437.

### C. Mr. Holman's case remains fundamentally different from the *Miller* case.

The government ignores key differences in Mr. Holman's case and the *Miller* case.

As the court in *Kent* recognized, nominal damages mean that Mr. Holman remains differently postured from the *Miller* plaintiffs even after the grant of the government's partial motion to dismiss. Just like the plaintiff in *Kent* (Doc. 66-1 at 4-5), this Court must ultimately tackle the related but separate question of whether the government has *completed* a violation of a constitutional right, no matter the outcome in *Miller*. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) ("[N]ominal damages provide the necessary redress for a completed violation of a legal right.") On this basis alone, this case and *Miller* will never be completely aligned. *See IBEW, 2020*, 1989 U.S. App. LEXIS 10266, at *24 ("Relevant to this consideration is the question of whether a separate suit in another jurisdiction involves *the same issues and parties and is likely to consider adequately all interests* before the court considering a stay.") (emphasis added).

Based only on dicta in a footnote in a First Circuit case where nominal damages were not at issue, the government claims that sovereign immunity would preclude Mr. Holman from recovering $1 nominal damages. (Doc. 77 at 11.) The government, however, puts the cart before

---

[10] In fact, the government admitted to the dissimilarity of claims and parties in its opposition to class certification in *Miller*. (*Miller*, Doc. 28.). For instance, the government asserted that "commonality is lacking because resolving the claims Plaintiffs raise would not generate common answers to the putative class members' own claims." (Id. at 13.)

the horse by asking this Court to decide whether sovereign immunity precludes Mr. Holman's recovery of nominal damages in the context of a motion to stay. If the government intended to raise sovereign immunity as a defense to Mr. Holman's claims, it should have done so in a Rule 12 motion or, at a minimum, in its now-overdue answer. *Cf. Brent v. Wayne Cty. Dep't of Human Servs.,* 901 F.3d 656, 693 (6th Cir. 2018) ("[D]efendants may assert immunity defenses for the first time in post-answer dispositive motions, even if they previously failed to raise those same defenses in pre-answer dispositive motions[.]") Regardless, the government only succeeds in illustrating Plaintiff's point—this Court will be forced to rule on nominal damages no matter what happens in *Miller*.

Mr. Holman's case is also differently postured because the government has failed to timely file an answer to his Complaint, and has failed respond to his discovery requests, resulting in requests for admission being deemed admitted, and a waiver of objections to interrogatories and requests for production. Fed. R. Civ. P. 33(b)(2,4), 34(b)(2) & 36(a)(3). "The Sixth Circuit has held that a failure to timely respond to a request for admission, without moving the court to amend the response and providing proper justification for the untimeliness, is grounds for deeming the statements admitted and granting summary judgment on the basis of the admissions." *Goodson v. Donahoe*, No. 3:13-cv-0487, 2015 U.S. Dist. LEXIS 164333, at *12 (M.D. Tenn. Dec. 7, 2015) (citing *Coal Creek Mining & Mfg. Co. v. James River Coal Service Co.*, 11 F. App'x 548 (6th Cir. June 6, 2001); *Heller Fin., Inc. v. Pandhi*, 888 F.2d 1391, 1989 U.S. App. LEXIS 17026 (6th Cir. 1989)). Accordingly, Mr. Holman's requests for admission are deemed admitted by operation of law and he may use these admissions, such as the following dispositive admissions, to support his summary judgment motion:

>No. 2. Admit that the phrase "systemic discrimination with cumulative effects," used by Defendant Ducheneaux, includes practices or individuals not conducted or employed by the USDA.
>
>No. 9. Admit that the USDA and the FSA have not taken an adverse employment action against any loan service agent for discriminating against a socially disadvantaged farmer or rancher in a lending decision within the last ten years.
>
>No. 11. Admit that you do not have evidence from within the last ten years that past Congressional efforts to remedy discrimination were inadequate.

(Ex. 1.) The government has also waived any objections to Mr. Holman's interrogatories and requests for production by failing to timely respond. *See, e.g.*, *Greene v. Cracker Barrel Old Country Store, Inc.*, No. 09-2110-A/P, 2009 U.S. Dist. LEXIS 56410, at *4 (W.D. Tenn. July 1, 2009) (citing *Blackmond v. UT Medical Group, Inc.*, No. 02-2890 Ma/V, 2003 U.S. Dist. LEXIS 18572, 2003 WL 22385678, at *1 (W.D. Tenn. Sept. 17, 2003) ("As a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived.") Even if the Court ultimately deems only a fraction of these discovery responses admitted due to the government's wholesale failure to respond, Mr. Holman's discovery efforts alone distinguish his case from *Miller*, where the parties have completely foregone discovery.

### D. Neither the dismissal of Mr. Holman's debt relief claims, nor the stays in *Joyner, Wynn,* or *Faust* are dispositive considerations.

Ignoring the bulk of this Court's reasoning in its prior order, the government argues as if the misalignment in claims between *Miller* and Mr. Holman was the sole reason the Court previously denied a stay. (Doc. 77 at 1.) But misalignment was merely the Court's third reason for previously denying the government's motion to stay. (Doc. 49 at 3.) And the dismissal of claims holds less significance than the government believes because Mr. Holman has requested nominal

-17-

damages and named the administrator of the FSA as a defendant. (Doc. 1 at 17.) The *Kent* court found these factors distinguished the case from *Miller*. (Doc. 24 at 4-5).

The government relies heavily on this Court's grant of a stay in *Joyner v. Vilsack*, Doc. 21, 1:21-cv-1089 (W.D. Tenn. Aug. 19, 2021). But these arguments are unavailing, because *Joyner* has always been different from this matter in ways other than the debt relief claims this Court recently dismissed: (1) *Holman* was filed first; (2) *Holman* was further along with a scheduling conference having been set; (3) the plaintiff in *Joyner* owed "hundreds of thousands of interest in accumulating loans";[11] and (4) the *Holman* injunction applied to *Joyner*. (*See Joyner*, Doc. 21 at 4-5.) This Court otherwise "appreciate[d]" Joyner's interest in controlling his own case but found that interest mitigated precisely because of "the ongoing litigation in *Holman*." (Id. at 5.) For these reasons, the stay in *Joyner* strengthens the case for proceeding expeditiously in this matter.

The stay orders in *Wynn* and *Faust* are likewise not persuasive because they were entered in different circuits where, unlike in the Sixth Circuit, the "most important consideration" is whether the moving party can show an irreparable injury. *See IBEW, 2020*, 1989 U.S. App. LEXIS 10266, at *8. *Compare Wynn*, Doc. 84 at 4-5 (applying the 11th Circuit's standard where the party objecting to jurisdiction in the first-filed forum bears the burden of proving compelling circumstances to warrant an exception to the first-filed rule) and *Faust*, Doc. 66 at 1-2 (citing *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010), for the application of a multi-factor test).

---

[11] Mr. Holman owed under $40,000 on April 21, 2021 (Doc. 7-2 ¶¶ 8, 11.) Unlike Joyner, the smaller amount does not "undercut[] Plaintiff's argument that he is burdened by the time necessary to resolve this case because of financial uncertainty." (*Joyner*, Doc. 21 at 5.)

In the end, regardless of *Joyner*, *Wynn*, or *Faust*, the government fails to make a facially valid showing, never so much as addresses irreparable injury, and spends most of its argument discussing the need to conserve resources. But that is only a consideration if the moving party can first show irreparable injury if the case proceeds. "*The Defendants have the burden* of proving that they will suffer irreparable injury if this case moves forward *and the burden* of showing that the Plaintiff will not be injured by a stay[,]". *RL BB Fin., LLC v. Robinette*, No. 3:11-CV-049, 2011 U.S. Dist. LEXIS 159299, at *9 (E.D. Tenn., Dec. 12, 2011) (emphasis added).

## CONCLUSION

For these reasons, the Court should deny the government's Motion to Stay proceedings and allow this case to proceed as scheduled.

Respectfully submitted,

Dated: February 15, 2022.                         s/ B.H. Boucek
                                                 BRADEN H. BOUCEK
                                                 TN BPR No. 021399
                                                 GA Bar No. 396831
                                                 JEFFREY A. CLAYMAN*
                                                 LA Bar No. 30442
                                                 FL Bar No. 52017
                                                 Southeastern Legal Foundation
                                                 560 W. Crossville Road, Suite 104
                                                 Roswell, GA  30075
                                                 Telephone: (770) 977-2131
                                                 bboucek@southeasternlegal.org
                                                 jclayman@southeasternlegal.org

WILLIAM E. TRACHMAN*
CO. Bar No. 45684
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org
*Appearing Pro Hac Vice

Counsel for Plaintiff