IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOLMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Civil Action No. 1:21-cv-01085-STA-jay |
| ) | |
| THOMAS J. VILSACK, in his official ) | |
| capacity as Secretary of the United States ) | |
| Department of Agriculture, and ) | |
| ) | |
| ZACH DUCHENEAUX, in his official ) | |
| capacity as Administrator of the Farm Service ) | |
| Agency, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR COSTS, ATTORNEY FEES, AND EXPENSES**

## INTRODUCTION

On July 8, 2021, this Court found that Section 1005 of the American Rescue Plan Act of 2021, *see* Pub. L. No. 117-2, § 1005 (2021) (ARPA), was likely unconstitutional. After weighing all appropriate factors, the Court issued a preliminary injunction enjoining the disbursement of funds on a nationwide basis. (Doc. 41.) Courts in other cases also enjoined Section 1005's farm loan assistance provision (Id. at 9): *Faust v. Vilsack*, 519 F. Supp. 3d. 470 (E.D. Wis. 2021); *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex. July 1, 2021); and *Wynn v. Vilsack*, 545 F. Supp. 3d 1271 (M.D. Fla. 2021). Ultimately, all but two cases challenging Section 1005, including this one, were stayed pending the outcome of the *Miller* class action in Texas. On August 16, 2022, President Biden signed legislation repealing Section 1005. *See* Pub. L. No. 117-169, § 22008 (2022). The parties thereafter conferred and agreed to dismiss this matter. (Doc. 83.) With the repeal of the

government's race-based law, the change in relationship between the parties that this Court imposed cannot be undone. In other words, Congress and the President have permanently codified the change in relationships that Plaintiff achieved in July 2021.

Plaintiff Robert Holman now moves for costs, attorney fees, and expenses under the Equal Access to Justice Act (EAJA) as the prevailing party. *See* 28 U.S.C. § 2412. When this Court entered its injunction on the basis that Plaintiff was likely to prevail, it altered the legal relationship between that parties. No longer was the government able to violate Plaintiff's right to equal protection under the law, an injury so grave that the Sixth Circuit had called it "irreparable" barely one month prior to this case beginning. *See Vitolo v. Guzman*, 999 F.3d 353, 365 (6th Cir. 2021) (striking down similar race-preference in ARPA) (quoting *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001)). Plaintiff prevailed at that moment and his victory can no longer be undone.

An award under EAJA is appropriate. The government's position was not substantially justified. Indeed, the position of the government had been directly contradicted only weeks before when the Sixth Circuit ruled on May 27, 2021, that a challenge to another, substantively identical race preference also found in ARPA "will win on the merits." *Vitolo*, 999 F.3d at 365. And by the time of the preliminary injunction, the government had suffered a "string of losses" in other challenges to Section 1005, which is a major indicator that the government's position is unjustified. *See Pierce v. Underwood*, 487 U.S. 552, 569 (1988); *see Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014). While the government has a duty to defend its laws, that does not mean its litigating position had any "substantial" justification.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 11, 2021, President Biden signed ARPA into law. (Id. at 1.) Section 1005 of ARPA directed the Secretary of Agriculture to "pay off" the outstanding farm loans of each

"socially disadvantaged of each "socially disadvantaged farmer or rancher . . . in an amount up to 120 percent of the outstanding indebtedness . . . as of January 1, 2021." § 1005(a)(2). The United States Department of Agriculture (USDA) "interpreted the phrase 'socially disadvantaged' to mean the racial classifications of 'Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander.'" (Id. at 2 (quoting *American Rescue Plan Debt Payments FAQ*, Question 1, https://www.farmers.gov/americanrescueplan/arp-faq).) That excluded farmers who are white, such as Plaintiff. (Id.) Thus, based solely on his race, Plaintiff was ineligible for farm loan relief under Section 1005.

Plaintiff filed suit on June 2, 2021. (Doc. 1.) In addition to seeking a declaratory judgment and a permanent injunction, Plaintiff also sought nominal damages, costs, and attorney fees. (Id. at 17.) On June 6, 2021, Plaintiff moved for a preliminary injunction, alleging that Section 1005 violated his constitutional right to equal protection. (Doc. 7.) On July 8, 2021, this Court granted Plaintiff's motion, and enjoined disbursement of Section 1005 funds nationwide. (Doc. 41.)

Challenges to Section 1005 were pending in other jurisdictions. The district court in *Faust* issued a nationwide temporary restraining order on June 10, 2021. *Faust*, 519 F. Supp. 3d at 473. Courts in two other cases issued preliminary injunctions (Doc. 41 at 9): the Northern District of Texas in *Miller*—a challenge to Section 1005 brought as a class action— and the Middle District of Florida in *Wynn v. Vilsack*, 545 F. Supp. 3d 1271 (*Wynn*). The injunction issued in *Miller* did not seek nationwide application. (Doc. 41 at 24 n. 20.)

The TRO issued in Faust was ultimately dissolved on July 6, 2021, because of the injunction issued in *Wynn*. *See Faust v. Vilsack*, 2021 U.S. Dist. LEXIS 125062, at *12 (E.D. Wis. July 6, 2021).

3

Before that, on July 14, 2021, the government made a request to stay this case pending resolution of *Miller*. (Docs. 45 & 46.) After the Court denied the government's stay request (Doc. 49), the government moved to partially dismiss Plaintiff's complaint (Doc. 57), and for reconsideration of its motion to stay. (Doc. 58.) On January 26, 2022, the Court granted the government's partial motion to dismiss Plaintiff's loan forgiveness claims (claims two and three). (Doc. 72 at 21.) The government filed a renewed motion to stay (Doc. 77), which Plaintiff opposed (Doc. 78.) The Court granted the government's motion to stay on February 16, 2022, pending resolution of the class action in *Miller*. (Doc. 79.)

None of the challenges to Section 1005 reached a resolution because, as noted above, on August 16, 2022, President Biden signed the "Inflation Reduction Act" (IRA) into law. *See* Pub. L. No. 117-169. Section 22008 of the IRA is entitled "Repeal of Farm Loan Assistance" and states: "Section 1005 of the American Rescue Plan Act of 2021 (7 U.S.C. 1921 note; Public Law 117-2) is repealed." *Id*. Based on the repeal of Section 1005, the parties in *Miller* filed a joint stipulation of dismissal without prejudice, under Rule 41 of the Federal Rules of Civil Procedure. *See Miller v. Vilsack*, 4:21-cv-595, Doc. 236 (N.D. Tex. Aug. 29, 2022). The joint stipulation expressly provides that it is nonbinding on members of the class. (Id. at 1 (citing Fed. R. Civ. P. 23(e)).)

On September 14, 2022, the parties entered a joint stipulation of dismissal in this case, with Plaintiff reserving the right to seek costs and attorney fees. (Doc. 83.) This Court entered a judgment on September 15, 2022, dismissing the case without prejudice. (Doc. 84.)

## ARGUMENT

This Court should award costs, expenses, and attorney fees to Plaintiff under the Equal Access to Justice Act (EAJA). Congress enacted EAJA to "diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award

4

of attorney fees, expert witness fees, and other costs against the United States." *See* Equal Access to Justice Act, Pub. L. No. 96-481, 94 Stat. 2321, 2325 (1980), reprinted in 1980 U.S. Code Cong. & Admin. News 2325-33. Under EAJA:

> a court *shall* award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

EAJA also has a separate provision for costs. *See* 28 U.S.C. § 2412(a). A judgment for costs may be awarded to "the prevailing party." *Id*. Unlike the provision for attorney fees and expenses, it is immaterial if the government's position was substantially justified, or if a special circumstance makes an award unjust. *Id*.

**I.     Plaintiff is entitled to recover attorney fees and expenses.**

EAJA allows plaintiffs to recover attorney fees and expenses when: (1) the fee applicant is a prevailing party; (2) the government's position is not substantially justified; (3) no special circumstances make an award unjust; and (4) the fee applicant files the requisite application within thirty days of a final judgment.[1] *Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 129-30 (6th Cir. 2007) (citing *Comm'r, INS v. Jean*, 469 U.S. 154, 158 (1990)). "The burden of establishing 'that the position of the United States was substantially justified,' § 2412(d)(1)(A) indicates and courts uniformly have recognized, must be shouldered by the Government." *Scarborough v. Principi*, 541 U.S. 401, 414 (2004).

---

[1] A "'final judgment' means a judgment that is final and not appealable and includes an order of settlement." 28 U.S.C. § 2412(2)(G).

5

### A. Plaintiff is the prevailing party.

Plaintiff prevailed. The Court's preliminary injunction opinion (Doc. 41) caused a change in "the legal relationship between the parties," one now cemented into permanency by Section 1005's repeal. *Buckhannon Bd. and Care Home, Inc. v. W.Va. Dep't of Health and Human Resources*, 532 U.S. 598, 600 (2001). The "touchstone" for an attorney fee award is a material alteration of the legal relationship between the parties. *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 538 (6th Cir. 2019) (quoting *Sole v. Wyner*, 551 U.S. 74, 44 (2007)). "A party achieves a material alteration [in relationship] when it 'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Planned Parenthood Sw. Ohio Region*, 931 F.3d at 538 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A victory for a plaintiff is one in which he or she receives redress, "not [from] a judgment, but action (or cessation of action) by the defendant. … *which affects the behavior of the defendant towards the plaintiff*." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis preserved).

There is no doubt that this Court's preliminary injunction order materially changed the relationship between the parties. (*See* Doc. 41 at 22 ("Absent action by the Court, socially disadvantaged farmers will obtain debt relief, while Plaintiff will suffer the irreparable harm of being excluded from that program solely on the basis of race.").) Once the Court entered its order on July 8, 2021, no longer could the government deny Plaintiff equal treatment under its race-based loan forgiveness program. Indeed, before Section 1005 was halted by this Court and others, the government had *already* begun forgiving loans based on skin color. (Doc. 31-1 at ¶¶ 29-33.)

6

In short, Plaintiff obtained a "judicially sanctioned change in the legal relationship of the parties,"[2] and thus, prevailed. *Buckhannon*, 532 U.S. at 605.

It is correct that the Court's injunction was "preliminary," but the subsequent legislation that *kept* that relationship in place does not mean that legal relationship never changed or was changed back. In *McQueary v. Conway*, the Sixth Circuit ruled that "the *preliminary* nature of the relief does not by itself provide a ground for *never* granting fees." 614 F.3d 591, 599 (6th Cir. 2010) (emphasis preserved). When an "injunction represents an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff," a plaintiff may be declared the prevailing party. *Id.* at 598 (quotations omitted); *see Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) (Even though "an intervening event rendered the case moot on appeal, plaintiff[] [is] still the prevailing parties for the purposes of attorney's fees for the district court litigation."); *see Miller v. Caudill*, 936 F.3d 442, 448-49 (6th Cir. 2019) ("The relief plaintiffs obtained . . . therefore stemmed from the preliminary injunction, not from the legislature's . . . later voluntary actions.").

Likewise, the district courts in this circuit recognize that a preliminary injunction may warrant attorney fees "even if the plaintiff's claims are later mooted and even if the plaintiff initially sought (but did not receive) relief beyond just a preliminary injunction." *See, e.g.*, *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-cv-00374, 2022 U.S. Dist. LEXIS 33413, at *9 (M.D. Tenn., Feb. 25, 2022) (citing *Miller*, 936 F.3d at 449); *Occupy Nashville v. Haslam*, No. 3:11-cv-01037, 2015 U.S. Dist. LEXIS 104550, at *15 (M.D. Tenn., Aug. 10, 2015) (The

---

[2] This Court has previously rejected the argument that Plaintiff was protected by overlapping injunctions, including in *Miller*. (Doc. 41 at 21.)

Sixth Circuit has "rejected a bright-line rule that procuring injunctive relief alone *never* suffices [for an award of fees].")).

While no hard and fast rule governs circumstances where a plaintiff receives a preliminary injunction and the government then moots the case by giving up before a final ruling, the district courts employ a "contextual and case-specific inquiry" to determine if plaintiffs are prevailing parties. *Id*. at 604. Generally, a preliminary injunction will render a plaintiff a "prevailing party" when it is (1) court-ordered (2) material and (3) enduring. *Miller*, 936 F.3d at 448; *accord Hargett*, 2022 U.S. Dist. LEXIS 33413 at \*\*9-10 (citing *McQueary*, 614 F.3d at 597-99).

In *Ramsek v. Beshear*k No. 3:20-cv-00035, 2022 U.S. Dist. LEXIS 150020 (E.D. Ky., Aug. 22, 2022), the district court considered an attorney fee request made in a similar posture. In *Ramsek*, the plaintiffs secured a preliminary injunction against the Governor of Kentucky's Covid-19 executive order, because it likely violated his First Amendment rights to free speech and freedom of assembly. *Id* at \*8. But while review of the injunction was on appeal, the Governor rescinded the order, mooting the case. *Id*. at \*9. As in this case, the government challenged whether plaintiffs were truly prevailing parties, given the plaintiffs' "limited relief." *Id*. at \*14. The court found that the plaintiffs "achieved the relief [they] sought through this litigation." *Id*. at \*15. With the challenged restriction being taken "off the books," it meant only that "the claim for permanent injunction could not be decided on the merits . . . not because of a lack of entitlement on Plaintiffs' part." *Id*. at \*\*15-16.

As in *Ramsek*, Plaintiff is the prevailing party. He obtained a "lasting, court-ordered change in the legal relationship between the parties." *Tenn. State Conference of the NAACP v. Hargett*, No. 3:19-cv-00365, 2021 U.S. Dist. LEXIS 185449 at \*16 (M.D. Tenn., Sept. 28, 2021). First, the preliminary injunction (Doc. 41) was court-ordered. The government did not stop issuing loan

8

forgiveness voluntarily, but only "because the Court required them to." *Hargett*, 2022 U.S. Dist. LEXIS 33413 at \*\*9-10. Second, the injunction was "material" because it changed the legal relationship between the parties. Under the injunction, Plaintiff was no longer subject to the *ongoing* and *irreparable* injury of forgiving farm loans based on race. (Doc. 41 at 24.) *See, e.g.*, *McQueary*, 614 F.3d at 598 (describing a "material" change). Even before Section 1005 was repealed, he had already achieved the "unobstructed opportunity" to be treated equally. *Miller*, 936 F.3d at 449 ("The relief plaintiffs obtained . . . therefore stemmed from the preliminary injunction, not from the legislature's . . . later voluntary actions."). Third, the relief obtained by Plaintiff is "enduring" because it halted active and ongoing discrimination. Now that Section 1005 has been repealed, the change of relationships is secure.

The only reason why a permanent injunction was never reached was "not for lack of entitlement" on Plaintiff's part, *Ramsek*, 2022 U.S. Dist. LEXIS 150020 at \*16, but because Congress wisely decided to stop defending the indefensible. In any event, the repeal of Section 1005 "did not negate the court-ordered change." *Wilson v. Long*, No. 3:14-cv-01492, 2020 U.S. Dist. LEXIS 13904 at \*15 (M.D. Tenn., Jan. 28, 2020). It ensured it. The right to be treated equally was the relief requested by Holman, delivered by the injunction, and "is enduring in that [it] cannot be 'undone.'" *Id.* at \*16. He prevailed.

It would be different if the injunction had not been based on a likelihood of success on the merits, but it was. *See McQueary*, 614 F.3d at 600 (recognizing that some injunctions have nothing to do with the merits). Plaintiff cannot be faulted for failing to move the case along. The matter was stayed pending *Miller* over Plaintiff's objections.[3] *See, e.g., Occupy Nashville*, 2015 U.S. Dist.

---

[3] Nor is this a scenario where Plaintiff initially prevailed on a preliminary injunction only to later lose on the merits. *See Sole v. Wyner*, 551 U.S. 74 (2007). The *Sole* decision left open "whether,

9

LEXIS 104550, at *22 (Finding that the plaintiff "cannot be faulted for not seeking permanent or dispositive relief" earlier). Plaintiff opposed every request to stay, (*see*, *e.g.*, Docs. 48 & 78) and advocated for a scheduling order that would have completed summary judgment filings on January 28, 2022. (Doc. 51 at 2.)

In short, Plaintiff got what he wanted. Subsequent legislative mootness does not transform his victory into a loss. *Thomas v. Haslam*, No. 20-6188, 2021 U.S. App. LEXIS 25897 at *5-6 (6th Cir., Aug. 25, 2021) ("Even though our Court held that this case was moot because [the challenged statute] was amended, it does not change the fact that the Plaintiffs prevailed at the district court."); *Hargett*, 2022 U.S. Dist. LEXIS 33413, at *9 ("[A]n award of a preliminary injunction may render a plaintiff a 'prevailing party' for purposes of obtaining attorney's fees under § 1988, even if the plaintiff's claims are later mooted[.]"). This especially so when the new law permanently *removed* the unconstitutional program Plaintiff sought to enjoin.

Finally, Plaintiff is a "party" under the teams of EAJA. He is an "individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B); *see* Ex. 1, Declaration of Robert Holman.

**B. The government's position was not substantially justified.**

As noted above, the government must prove that its position was substantially justified. *See Scarborough*, 541 U.S. at 414. "The government's 'position' comprehends both the United States' underlying action and its litigation position. *Delta Eng'g v. United States*, 41 F.3d 259, 261 (6th Cir. 1994). "'[S]ubstantially justified' means 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Id*. (quoting *Pierce v. Underwood*,

---

in the absence of a final decision on the merits … success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* at 86.

10

487 U.S. 552, 565 (1988)). "When considering whether the government's position is substantially justified, [courts] focus on the merits of that position." *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021). Courts "distinguish between cases in which 'the government lost because it vainly pressed a position flatly at odds with the controlling case law' and cases in which 'the government lost because an unsettled question was resolved unfavorably.'" *Id.* at 564 (quoting *Taucher v. Brown-Hruska*, 396 F.3d 1168 (D.C. Cir. 2005)).

The *Vitolo* opinion, binding precedent (Doc. 41 at 9), makes it impossible for the government to show that its position was substantially justified. The Sixth Circuit had just struck down a separate, but indistinguishable, race-based provision of ARPA. The government cannot contend its position was substantially justified in light of *Vitolo*. *See Koss v. Sullivan*, 982 F.2d 1226 (8th Cir. 1993) (finding failure to follow clear circuit precedent constituted unjustified position). The government was aware of *Vitolo*, making only feint efforts to distinguish it. (Doc. 31 at 30.) The Court ultimately cited *Vitolo* 24 times in its opinion, with good reason. It is fundamentally indistinguishable. The government's defense of Section 1005 thus lacked a substantial justification, given this precedent that the Court rightly called "clear." (Doc. 41 at 21.); *see also Vitolo*, 999 F.3d at 365-66 ("As today's case shows once again, the 'way to stop discrimination on the *366 basis of race is to stop discriminating on the basis of race.'") (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007)).

Illustrating the lack of a substantial justification, *Vitolo* held that when the government attempts to remedy past discrimination by using preferential treatment based on race, there must be evidence of intentional discrimination in the past, and "[s]*tatistical disparities don't cut it*." (*See* Doc. 41 at 11 (emphasis added) (quoting *Vitolo*, 999 F.3d at 361).) Yet, at the preliminary injunction hearing in this case, the government "presented *no evidence* of current intentional

11

discrimination by Defendants, and they acknowledged this *lack of evidence* at the hearing." (Id. at 13 (emphasis added).) "Instead, Defendants attempted to rely on statistical and anecdotal evidence, even though this type of evidence to show intentional discrimination has been rejected by the Sixth Circuit." (Id. (citing *Vitolo*, 999 F.3d at 361).) Likewise, the government failed to introduce evidence "that the USDA or FSA played a role in creating the disparities in pandemic relief given to minority farmers versus non-minority farmers." (Id. at 14.) The government's position lacked a substantial justification. *See also Vitolo*, 999 F.3d at 371 (Donald, J., dissenting) (the majority in *Vitolo* rejected the dissent's reliance on testimony that "minority-owned businesses were more vulnerable to economic distress than businesses owned by white entrepreneurs… and were hardest hit by government shut-down orders and a decrease in foot traffic.").

Furthermore, these exact arguments had already failed in other courts. Importantly, "a string of losses can be indicative" of the government's lack of substantial justification. *Pierce*, 487 U.S. at 569. And courts may "place more weight on these objective indicia" when several courts have decided the issue. *Griffith*, 987 F.3d at 574 n.2. The government's defenses of Section 1005 suffered an unmitigated "string of losses." This Court referred to and cited those rulings precisely because they were on-point. (Doc. 41 at 9.) The government openly acknowledged that the evidence it had to support Section 1005 was, in this case, not different. (Doc. 41 at 9; *see also* id. at 13 ("Defendants have presented no additional evidence to this Court than that presented in *Wynn*, and as discussed above, Defendants stated at the hearing that the evidence before this Court is the same as the evidence presented in *Wynn*.").)

That the government's position lacked substantial justification was also apparent in its half-hearted attempt to argue that Section 1005 was narrowly tailored to serve a compelling state interest—a burden the government knew it must bear. (Id. at 10 ("The parties also agree that,

12

because Section 1005 on its face makes a distinction among applicants for relief on the basis of race, it must satisfy strict scrutiny[.]").) The government did not present "*any* race-neutral alternatives that Congress considered when discussing Section 1005." (Id. at 15 (emphasis added).) "Instead, they contend[ed] that the loan relief program [was] narrowly tailored to its constitutional aims because race-neutral alternatives [had] failed." (Id.)

### C. No special circumstances would make the award unjust.

Special circumstances "that would justify denying an award of attorney fees are 'equitable considerations [that] dictate an award should not be made,'" such as unclean hands. *Sakhawati v. Lynch*, 839 F.3d 476, 478 (6th Cir. 2016) (quoting H.R. Rep. No. 1418, at 11 (1980)) (alteration in original). The Sixth Circuit has "never (to our knowledge) found a 'special circumstance' justifying the denial of fees." *McQueary,* 614 F.3d at 604. Special circumstances "are only substantive issues, such as close or novel questions of law." *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 672 (6th Cir. 1992) (citing *Grason Electric Co. v. NLRB*, 951 F.2d 1100, 1103-05 (9th Cir. 1991)). This case was not close. The prime issue was settled under basic equal protection law. The government can cite to no special circumstances that would justify breaking new ground by finding special circumstances.

### 1. Plaintiff Seeks Reasonable Fees.

Having established his eligibility for an award of EAJA fees, Plaintiff seeks to recover all fees reasonably incurred in the litigation. 28 U.S.C. § 2412(d)(2)(A); *Comm'r v. Jean*, 496 U.S. 154, 161 (1990) ("[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in [*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)]." To calculate a reasonable fee award under the EAJA, courts use the lodestar amount as a starting point. "The lodestar—

used to calculate attorney fees under a variety of different statutes—'is the product of the number of hours billed and a reasonable hourly rate.'" *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 881 (6th Cir. 2016) (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007)). "EAJA does not limit the amount of attorney's hours and only requires the attorney to submit all hours in an itemized statement." *Brusch v. Colvin*, No. 15-13972, 2017 U.S. Dist. LEXIS 52658, at *4 (E.D. Mich., Apr. 6, 2017); *see also Miller*, 936 F.3d at 452 (citing *Hensley*, 461 U.S. at 433) ("This burden requires evidence specific to the number of hours each attorney worked and the appropriate hourly rate for that work.").

Here, counsel submit records documenting the number of hours each spent working on this case. *See* Ex. 1, Declarations of Braden H. Boucek, William E. Trachman. All time spent was "reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case[.]" *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988).

The following table shows the hours and rates for the lodestar amount of the reasonable fees incurred in this matter and the total fee amount.

| **Attorney** | **Hours** | **Rate** | **Value** |
|---|---|---|---|
| Braden H. Boucek | 140.2 | $125/hr. | $17,525 |
| William E. Trachman | 89.5 | $125/hr. | $11,187.50 |
| Kimberly S. Hermann | 12 | $125/hr. | $1,500 |
| Jeffrey A. Clayman | 107.1 | $125/hr. | $13,387.50 |
| **Total:** | 348.8 | | $43,600.00 |

## II. Plaintiff is also entitled to costs.

Plaintiff is entitled to costs if he prevails, irrespective of whether the position of the government was justified or special circumstances. *See* 28 U.S.C. § 2412(a).

| | |
|---|---|
| Filing Cost | $402 |
| Fees for Service of summons and subpoena | $115 |
| **Total:** | $517 |

## CONCLUSION

The motion for costs, attorney fees, and expenses should be granted, and Plaintiff Robert Holman awarded costs and fees in the amount of **$44,117.00**.

Dated: September 29, 2022.                     Respectfully submitted,

<div style="margin-left:auto">

s/ B.H. Boucek
BRADEN H. BOUCEK
TN BPR No. 021399
GA Bar No. 396831
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA 30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org

WILLIAM E. TRACHMAN*
CO Bar No. 45684
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org
*Appearing Pro Hac Vice

Counsel for Plaintiff

</div>