## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT HOLMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-01085-STA-jay |
| | ) | |
| **THOMAS J. VILSACK,** in his official | ) | |
| capacity as Secretary of Agriculture; | ) | |
| and **ZACH DUCHENEAUX,** in his official | ) | |
| capacity as Administrator of the Farm | ) | |
| Service Agency, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
## FOR ATTORNEY'S FEES AND COSTS

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    I.    Section 1005 of the American Rescue Plan Act ..................................................2

    II.   Plaintiff's Lawsuit and Related Section 1005 Challenges ..................................3

    III.  The repeal of § 1005 through the Inflation Reduction Act ..............................5

LEGAL STANDARD ..........................................................................................................6

ARGUMENT ........................................................................................................................6

    I.    Plaintiff is not eligible for or entitled to any attorney's fees ..........................6

        A.    Plaintiff is not a prevailing party ..................................................6

        B.    In any event, the position of the United States was substantially justified ..... 12

        C.    Special circumstances make an award of EAJA fees unjust. ........................... 18

    II.   Plaintiff's fee request is unreasonable regardless. ........................................19

    III.  Plaintiff is not eligible for costs. ...................................................................20

CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Agee v. Beryhill,*
    No. 3:12-cv-00958, 2017 WL 3888353 (M.D. Tenn. Sept. 5, 2017) ...................................18

*Aiken v. City of Memphis,*
    37 F.3d 1155 (6th Cir. 1994) ...........................................................................................15

*Biodiversity Conservation All. v. Stem,*
    519 F.3d 1226 (10th Cir. 2008)...........................................................................................7

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum.,*
    *Res.,* 532 U.S. 598 (2001) ...................................................................................... 1, 7, 11

*Caremore, Inc. v. NLRB,*
    150 F.3d 628 (6th Cir. 1998) .............................................................................................6

*DeLong v. Comm'r of Soc. Sec. Admin.,*
    748 F.3d 723 (6th Cir. 2014) .............................................................................. 6, 12, 14

*Dvorkin v. Gonzales,*
    173 F. App'x 420 (6th Cir. 2006) ................................................................................ 13, 14

*Fisher v. Univ. of Tex. at Austin,*
    579 U.S. 365 (2016) ..........................................................................................................15

*Grace v. Burger,*
    763 F.2d 457 (D.C. Cir. 1985) ...................................................................................... 1, 13

*Greater Detroit Res. Recovery Auth. v. EPA,*
    916 F.2d 317 (6th Cir. 1990) ............................................................................................20

*Griffith v. Comm'r of Soc. Sec.,*
    987 F.3d 556 (6th Cir. 2021) ................................................................................12, 17, 18

*Gunther v. Comm'r of Soc. Sec.,*
    943 F. Supp. 2d 797 (N.D. Ohio 2013)...............................................................................6

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ..........................................................................................................19

*Hewitt v. Helms,*
    482 U.S. 755 (1987) ............................................................................................................7

*Kiareldeen v. Ashcroft,*
    273 F.3d 542 (3d Cir. 2001) ...................................................................................... 13, 14

*League of Women Voters of Cal. v. FCC*,
  798 F.2d 1255 (9th Cir. 1986)..................................................................................13

*McQueary v. Conway*,
  508 F. App'x 522 (6th Cir. 2012) ......................................................................... 9, 11

*McQueary v. Conway*,
  614 F.3d 591 (6th Cir. 2010) .........................................................................1, 7, 8, 9

*McQueary v. Conway*,
  No. 06-cv-24-KKC, 2012 WL 3149344 (E.D. Ky. Aug. 1, 2012)......................9, 10, 11, 12

*Miller v. Caudill*,
  936 F.3d 442 (6th Cir. 2019).............................................................................*passim*

*Nat'l Fed'n of Republican Assemblies v. United States*,
  263 F. Supp. 2d 1372 (S.D. Ala. 2003) .................................................................13

*Pierce v. Underwood*,
  487 U.S. 552 (1988)........................................................................................ 12, 13

*Planned Parenthood Sw. Ohio Region v. Dewine*,
  931 F.3d 530 (6th Cir. 2019) .............................................................................. 7, 11

*Ramsek v. Beshear*,
  No. 3:20-CV-00036-GFVT, 2021 WL 5098687 (E.D. Ky. Nov. 2, 2021) .......................12

*Ramsek v. Beshear*,
  No. 3:20-CV-00036-GFVT, 2022 WL 3591827 (E.D. Ky. Aug. 22, 2022)................. 11, 12

*Rostker v. Goldberg*,
  453 U.S. 57 (1981) .......................................................................................... 13, 14

*Rothe Dev. Corp. v. U.S. Dep't of Def.*,
  No. CIV.A.SA-{ TA \l "98-CA-1011-,
  2004 WL 1941290 (W.D. Tex. Aug. 31, 2004)" \s
  "A;O;12;dabmci_649299f9c520459f899434f7db124dc9_2;Icb73a8ca542811d9a99c85a9e6023ffa;;
  0;F;98-CA-1011-, 2004 WL 1941290, at *3 (W.D. Tex. Aug. 31, 2004)" \c 3 }98-CA-1011, 2004
  WL 1941290 (W.D. Tex. Aug. 31, 2004) ........................................................... 13, 14

*Rutherford v. City of Cleveland*,
  179 F. App'x 366 (6th Cir. 2006) ............................................................................15

*Scarborough v. Principi*,
  541 U.S. 401 (2004).............................................................................................13

*Sole v. Wyner*,
  551 U.S. 74 (2007) ............................................................................................ 6, 7

*Stuart v. Roache,*
    951 F.2d 446 (1st Cir. 1991) ........................................................................................................15

*Taucher v. Brown-Hruska,*
    396 F.3d 1168 (D.C. Cir. 2005) ..................................................................................................17

*Texas State Teachers Ass'n v. Garland Independent School District,*
    489 U.S. 782 (1989) .....................................................................................................................7

*Thomas v. Nat'l Sci. Found.,*
    330 F.3d 486 (D.C. Cir. 2003) .....................................................................................................8

*United Black Firefighters Ass'n v. City of Akron,*
    976 F.2d 999 (6th Cir. 1992) ...............................................................................................14, 15

*United States v. Paradise,*
    480 U.S. 149 (1987) ..........................................................................................................1, 14, 16

*United States v. Tennessee,*
    780 F.3d 332 (6th Cir. 2015) .......................................................................................................6

*Vacchio v. Ashcroft,*
    404 F.3d 663 (2d Cir. 2005) ......................................................................................................14

*Vitolo v. Guzman,*
    999 F.3d 353 ........................................................................................................................16, 17

*Wayne v. Vill. Of Sebring,*
    36 F.3d 517 (6th Cir. 1994) .......................................................................................................19

*Wynn v. Vilsack,*
    545 F. Supp. 3d 1271 (M.D. Fla. 2021) ...............................................................................15, 18

*Young v. City of Chicago,*
    202 F.3d 1000 (7th Cir. 2000) .....................................................................................................8

## **Constitutional Provisions**

U.S. Const., art. II, § 3 ..................................................................................................................13

## **Statutes**

7 U.S.C. 1921 note ..........................................................................................................................5

7 U.S.C. § 2279 ...............................................................................................................................3

28 U.S.C. § 2412 ........................................................................................................6, 12, 18, 20

American Rescue Plan Act (ARPA), Pub. L. No. 117-2, 135 Stat. 4 (2021) ................................... 2, 3, 5

Inflation Reduction Act of 2022 (IRA), { TA \l "Pub. L. No. 117-169 § 22008" \s
"A;O;0;dabmci_f12fcd179152437a952a1baa62cbdf83_1;I850F15501AE311ED9EE7AFFF3565B
CDE;;0;F;Pub. L. No. 117-169 § 22008" \c 6 }Pub. L. No. 117-169, 136 Stat. 1818 ....................... 5

## **Regulations**

{ TA \l "86 Fed. Reg. " \s
"A;O;0;dabmci_026c70030b404f89a5283db8b09d12f6_2;I979CDD504E6711EBB3E5D4546BD
914D9;;0;F;86 Fed. Reg. 28" \c 12 }86 Fed. Reg. 28,329 (May 26, 2021) ......................................... 3

## **Other Authorities**

167 Cong. Rec. S1219 (daily ed. March 5, 2021),
https://perma.cc/7U6Z-6S7B ............................................................................................................ *passim*

H.R. Rep. No. 117-7 (2021),
https://perma.cc/CH87-MWNL ................................................................................................................. 2

## INTRODUCTION

After Plaintiff Robert Holman obtained a preliminary injunction that duplicated those already entered by other courts—including in a class action to which he belonged—the Court stayed this case and then dismissed it as moot when Congress repealed the law he challenged. He now seeks attorney's fees and costs under the Equal Access to Justice Act (EAJA) based on his temporary, duplicative preliminary injunction. For several reasons, the Court should deny his fee application.

To start, Plaintiff fails to make the threshold showing that he is a "prevailing party" eligible for attorney's fees. As the Sixth Circuit has reiterated, a plaintiff who "wins a preliminary injunction and nothing more" is almost never a prevailing party. *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010) ("*McQueary I*"). This case presents no exception to the general rule. The preliminary injunction Plaintiff obtained did not provide him any enduring relief on the merits of his claim. To the extent Plaintiff has benefited from any lasting legal change, that change came about by an act of Congress, not of the Court. But "'a voluntary change in the defendant's conduct,' such as a legislative repeal of a challenged statutory provision, . . . does not amount to a 'court-ordered change in the legal relationship' between the plaintiff and defendant, as required to establish prevailing-party status." *McQueary I*, 614 F.3d at 597 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603-04 (2001)).

Even assuming Plaintiff had made that threshold showing, his petition for attorney's fees would still fail because the government's defense of § 1005's constitutionality was substantially justified. As a general matter, the government's defense of the constitutionality of a federal statute is ordinarily considered substantially justified absent "exceptional" circumstances. *Grace v. Burger,* 763 F.2d 457, 458 n.5 (D.C. Cir. 1985). No exceptional circumstances are present here. Indeed, the Supreme Court has long recognized that the government's interest in remedying the lingering effects of past discrimination is compelling, *see, e.g., United States v. Paradise*, 480 U.S. 149, 167 (1987), and

extensive evidence documents the long history of discrimination in USDA farm loan programs and its lingering effects. The government's defense of Congress's law as a necessary and urgent remedial measure had more than a reasonable basis in law and fact. The Court should deny the fee petition.

But even if Plaintiff met these statutory requirements to warrant an award of attorney's fees, the amount of fees he seeks is nonetheless excessive in light of the limited and temporary relief he obtained in this suit. The vast majority of the work for which Plaintiff seeks compensation post-dates the entry of the preliminary injunction. But after the injunction was entered, Plaintiff achieved no success in the case—and in fact the Court's only subsequent merits-based ruling was to dismiss Plaintiff's additional claims for lack of subject-matter jurisdiction. Any fee award should be substantially reduced in proportion to Plaintiff's marginal success.

## BACKGROUND

### I.    Section 1005 of the American Rescue Plan Act

The American Rescue Plan Act (ARPA) provided widespread pandemic relief to the American people. *See* Pub. L. No. 117-2, 135 Stat. 4 (2021). Congress focused particularly on helping the "most vulnerable communities" who were "forced to bear the brunt of" the pandemic and resultant economic crisis. H.R. Rep. No. 117-7, at 2 (2021), https://perma.cc/CH87-MWNL. Among those whom Congress sought to aid were minority farmers, a group which had "received a disproportionately small share of the farm loans and payments administered by USDA as a result of . . . longstanding and widespread discrimination." *Id.* at 12.

During its deliberations, Congress considered evidence detailing how historic discrimination within USDA prevented minority farmers from participating in USDA loan programs, which contributed to a considerable loss of minority-owned farmland over a sustained period of time. *See, e.g.*, 167 Cong. Rec. S1219, S1262-67 (daily ed. March 5, 2021), https://perma.cc/7U6Z-6S7B. The evidence illustrated that the effects of USDA's past discrimination linger today, *id.*, and that at the

height of the pandemic a disproportionately high number of minority farmers were in default and on

the brink of losing their farms, *id.* at S1265-66. Congress concluded that minority farmers needed

urgent relief to prevent a "wave of foreclosures" and to escape the cycle of debt that precludes them

from fully participating in the farming economy and threatened to push many more minority farmers

out of farming altogether. 167 Cong. Rec. S1266.

Congress therefore included in ARPA a provision specifically addressed to the plight of

minority farmers: § 1005. That section appropriated funds to pay up to 120 percent of certain direct

or guaranteed USDA farm loans held by a "socially disadvantaged farmer or rancher" (SDFR) and

outstanding as of January 1, 2021. *See* ARPA § 1005. Congress defined SDFR by cross-referencing 7

U.S.C. § 2279(a), which provides that a SDFR is a "farmer or rancher who is a member of" a group

"whose members have been subjected to racial or ethnic prejudice because of their identity as

members of a group without regard to their individual qualities," *id.* § 2279(a)(5)-(6).

USDA began implementing § 1005 by issuing a Notice of Funds Availability (NOFA) in May

2021. *See* NOFA; ARPA 2021 § 1005 Loan Payment, 86 Fed. Reg. 28,329 (May 26, 2021). The NOFA

defined SDFR to include five minority groups: American Indians or Alaskan Natives; Asians; Blacks

or African Americans; Hispanics or Latinos; and Native Hawaiians or other Pacific Islanders. *See id.*

Moreover, the NOFA explained that eligible recipients would receive a payment offer that they were

required to accept by signing and returning the offer before funds would be disbursed to the recipient.

## II.    Plaintiff's Lawsuit and Related Section 1005 Challenges

Plaintiff holds USDA farm loans that he alleged would have been eligible for debt relief under

§ 1005 but for the fact that he does not fall within one of the racial or ethnic groups considered

"socially disadvantaged." *See* Compl. ¶ 14, ECF No. 1. On June 2, 2021, he filed suit, asserting that

§ 1005 violates the equal protection component of the Fifth Amendment's Due Process Clause. *Id.*

¶¶ 64-74. Plaintiff also alleged that USDA planned to "illegally allow[] future [USDA loan] eligibility"

for recipients of § 1005 debt relief. *Id.* ¶¶ 75-85 ("loan-forgiveness claims"). His Complaint sought

declaratory and injunctive relief, costs and fees, and nominal damages. *Id.*, Prayer for Relief. This case

was one of twelve similar equal protection challenges to § 1005 filed in different jurisdictions.[1]

Shortly after commencing this action, Plaintiff moved for a preliminary injunction. *See* Mot.

for Prelim. Inj., ECF No. 7. On July 8, 2021, the Court granted the motion and enjoined Defendants

from disbursing any § 1005 funds during the pendency of proceedings. PI Order, ECF No. 41.

This Court's injunction was preceded by similar preliminary injunctions entered in two other

courts—first in the Middle District of Florida, *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla. June 23, 2021),

and then in the Northern District of Texas, *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex. July 1, 2021), (*filed*

*at* ECF No. 45-1).[2] In the latter case, *Miller*, the court certified two classes at the same time it entered

class-wide preliminary relief. *Id.* Plaintiff was a member of those classes. *See* Order Granting Stay, ECF

No. 79. Thus, by the time this Court entered a preliminary injunction, Plaintiff's interests were already

protected by the nationwide injunction in *Wynn* and the class-wide injunction in *Miller*.

Because the *Miller* classes included Mr. Holman and advanced the same central claim, the

government moved to stay these proceedings until *Miller* was resolved. Mot. to Stay, ECF No. 45. The

Court initially denied the stay motion, reasoning that staying the case could leave Plaintiff's two loan-

forgiveness claims unadjudicated and that Plaintiff might choose to opt out of the *Miller* classes. *See*

---

[1] *See Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.) (filed Apr. 26, 2021); *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.) (filed Apr. 29, 2021); *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.) (filed May 18, 2021); *Carpenter v. Vilsack*, 1:21-cv-103 (D. Wyo.) (filed May 24, 2021); *Kent v. Vilsack*, 21-cv-540 (S.D. Ill.) (filed Jun 7, 2021); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.) (filed June 10, 2021); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.) (filed June 15, 2021); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.) (filed June 24, 2021); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.) (filed June 29, 2021); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.) (filed July 6, 2021); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.) (filed July 7, 2021).

[2] The Eastern District of Wisconsin had entered a temporary restraining order (TRO) that prohibited disbursement of § 1005 funds but dissolved that TRO after the *Wynn* Court issued a preliminary injunction. Order, *Faust*, ECF No. 49.

Order, ECF No. 49.[3] After that, however, the Court entered a stay of discovery, *see* Order Partially Granting Mot. for Stay, ECF No. 59, and declined to enter a scheduling order in the case pending resolution of the government's motion to dismiss the loan-forgiveness claims for lack of subject matter jurisdiction, *See* Mot. to Dismiss, ECF No. 57. On January 26, 2022, the Court granted the motion to dismiss. Order on Mot. to Dismiss, ECF No. 72. Just weeks later, the Court stayed the case in its entirety pending resolution of the *Miller* class action. Order Granting Stay, ECF No. 79.

## III.    The repeal of § 1005 through the Inflation Reduction Act

Before summary judgment briefing concluded in *Miller*, and while this case was still stayed, Congress passed, and the President signed, the Inflation Reduction Act of 2022 (IRA), Pub. L. No. 117-169 § 22008, 136 Stat. 1818, 2023. In Section 22008 of the IRA, Congress expressly repealed Section 1005 of ARPA. *See* IRA § 22008 ("Section 1005 of the American Rescue Plan Act of 2021 (7 U.S.C. 1921 note; Public Law 117-2) is repealed.").

After the repeal of § 1005, the *Miller* parties jointly stipulated to dismissal of the action, *see Miller* Joint Stipulation of Dismissal*, filed at* ECF No. 82-1, and the court then terminated the case, *see* August 30, 2022 docket entry. On September 15, 2022, the parties here also "agree[d] that," "[i]n light of the repeal of Section 1005, . . . Plaintiff's challenge to Section 1005 is moot and therefore" jointly stipulated to dismissal of this action. *See* Stipulation of Dismissal, ECF No. 83.[4] The next day, this Court entered judgment dismissing this case. Judgment, ECF No. 84.

---

[3] The *Miller* court subsequently denied a motion by plaintiffs in other jurisdictions to opt out of the Rule 23(b) classes. *See Miller* Order, *filed at* ECF No. 58-1. Mr. Holman did not join that motion.

[4] Of the twelve cases challenging § 1005 in various jurisdictions, eleven have been dismissed, either voluntarily or by stipulation. In the final case, *Rogers*, 1:21-cv-1779, the parties are briefing the government's motion to dismiss the case as moot. In four of the dismissed cases, including this one, the plaintiffs had obtained preliminary relief through a TRO or preliminary injunction. *Miller*, 4:21-cv-595; *Faust*, 1:21-cv-548; *Wynn*, 3:21-cv-514. Only plaintiffs in this case and in *Wynn* moved for attorney's fees before the expiration of the 30-day time period. Class representatives in *Miller* did not.

## LEGAL STANDARD

"[U]nder what is known as the 'American Rule,' each party pays his, her, or its own fees unless a statute explicitly provides otherwise." *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019). Through EAJA, Congress allowed for the recovery of attorney's fees from the government when specific conditions are met. Relevant here, EAJA permits recovery of attorney's fees only if: (1) the plaintiff is a prevailing party; (2) the government's position lacked substantial justification; and (3) no special circumstances warrant a denial of fees. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 725 (6th Cir. 2014); 28 U.S.C. § 2412(d)(1)(A). "The party seeking fees bears the burden of proving that it was a prevailing party with respect to the work done to generate them." *United States v. Tennessee*, 780 F.3d 332, 336 (6th Cir. 2015); *Gunther v. Comm'r of Soc. Sec.*, 943 F. Supp. 2d 797, 800 (N.D. Ohio 2013). The government bears the burden of proving that its position was substantially justified or that special circumstances make an award unjust. *DeLong*, 748 F.3d at 726; *Caremore, Inc. v. NLRB*, 150 F.3d 628, 629 (6th Cir. 1998). Any award of attorney's fees must be "reasonable." 28 U.S.C. § 2412(d)(2)(A).

## ARGUMENT

**I.    Plaintiff is not eligible for or entitled to any attorney's fees.**

Plaintiff cannot meet either of the first two prerequisites to an award of attorney's fees under EAJA. As a threshold matter, Plaintiff is ineligible for EAJA fees because he cannot show that he is a prevailing party when the only relief he obtained in this case was duplicative, temporary relief. But even if Plaintiff could show that he is a prevailing party, he would nonetheless lack any entitlement to attorney's fees because the government's defense of ARPA § 1005 was substantially justified.

**A.  Plaintiff is not a prevailing party.**

"A plaintiff who achieves a transient victory" through a preliminary injunction is not a prevailing party entitled to fees if "her initial success is undone" through a final unfavorable ruling on the merits. *Sole v. Wyner*, 551 U.S. 74, 78 (2007). Likewise, a plaintiff who "wins a preliminary injunction

6

and nothing more" because the case ends without any final ruling on the merits is usually not a prevailing party. *McQueary I*, 614 F.3d at 604. The Supreme Court has identified "the material alteration of the legal relationship of the parties" as the "touchstone of the prevailing party inquiry," *Texas State Teachers Ass'n v. Garland Indep. School District*, 489 U.S. 782, 792-93 (1989)—and "for an alteration of legal relationships to be considered material, . . . a plaintiff must 'receive at least some relief *on the merits of his claim*.'" *Biodiversity Conservation All. v. Stem*, 519 F.3d 1226, 1231 (10th Cir. 2008) (O'Connor, J.) (emphasis in original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)). That means that while "preliminary-injunction winners" "may *sometimes*" be prevailing parties, the very "nature of" preliminary relief—which typically does not create "lasting change in the legal relationship between the parties"—"will generally counsel against fees," *McQueary I*, 614 F.3d 597, 600-01 (emphasis added) (quoting *Sole*, 551 U.S. at 86).

To determine if an "exception" to this usual rule applies to a party who obtained only preliminary relief, the Sixth Circuit applies a "contextual and case-specific inquiry," *McQueary I*, 614 F.3d 601, and proceeds "with both hesitancy and skepticism" before awarding attorney's fees, *Miller*, 936 F.3d at 448. When conducting this inquiry, courts should be particularly mindful of the Supreme Court's rejection of the "catalyst theory," "under which a plaintiff 'prevailed' if he 'achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct,' such as a legislative repeal of a challenged statutory provision." *McQueary I*, 614 F.3d at 597 (quoting *Buckhannon*, 532 U.S. at 601-02). "A defendant's voluntary change, even one precipitated by litigation, does not amount to a 'court-ordered change in the legal relationship' between the plaintiff and defendant, as required to establish prevailing-party status." *Id.* (quoting *Buckhannon*, 532 U.S. at 604). As the Sixth Circuit has emphasized, only change "bearing the necessary judicial *imprimatur*," through a "decision on the merits" may qualify a plaintiff for prevailing-party status. *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 538-39 (6th Cir. 2019).

7

Ultimately, the Sixth Circuit's "contextual and case-specific inquiry" asks whether the plaintiff obtained a change to "the legal relationship between the parties" that was "court-ordered, material," and "*enduring.*" *Miller*, 936 F.3d at 448. In *Miller*, the Sixth Circuit elaborated on each of these elements. A change is court-ordered, *Miller* explained, if it is "caused" by the "preliminary injunction," and not the defendant's voluntary change in conduct. *Id.* A change is material if it "directly benefit[s]" the plaintiff by altering the defendant's conduct toward him. *Id.* And it is "enduring" only if it is "irrevocable, meaning it . . . provided [the] plaintiff[] with everything [he] asked for." *Id.*

These conditions may be met if the preliminary injunction provides the plaintiff with "everything [he] asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time." *McQueary I*, 614 F.3d at 599. As a reference point, the Sixth Circuit frequently cites the Seventh Circuit's decision in *Young v. Chicago*, where protestors obtained a preliminary "injunction to exercise their First Amendment rights at a specific time and place" (the 1996 Democratic National Convention); that injunction gave the protestors everything "they need[ed] and the end of the [Convention] . . . moot[ed] the case." *McQueary*, 614 F.3d at 599 (citing *Young v. City of Chicago*, 202 F.3d 1000, 1000 (7th Cir. 2000) (per curiam)). The court has also considered the example of a plaintiff who seeks "to delay enforcement of a statute until a certain event occurs—say a scheduled public referendum—and" obtains a "preliminary injunction [that] brings about that result." *Id.* (citing *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003)). There, too, the plaintiff would be considered a prevailing party because he would have obtained "all of the relief [he] requested" through an "immediately enforceable preliminary injunction" rather than a "voluntary change" in the defendants' conduct. *Id.* More recently, the Sixth Circuit concluded that several plaintiffs who obtained a preliminary injunction that gave them the immediate opportunity to obtain marriage licenses—and indeed did obtain marriage licenses—were prevailing parties because that opportunity was precisely the relief sought in the case and could not be taken away by any future action of the defendants. *Miller*,

8

936 F.3d at 449 ("[T]he injunction gave plaintiffs all the court-ordered relief they needed, [such that] the issuance of the marriage licenses mooted [the] request for them," and the Clerk could not "retroactively . . . nullify the marriage licenses plaintiff[s] had already obtained.").

By contrast, a plaintiff who obtains a "an injunction effective only while [a] case is pending" before the case is mooted by a legislative change obtains only "fleeting" relief and is not a prevailing party. *McQueary v. Conway*, No. 06-cv-24-KKC, 2012 WL 3149344, at *3 (E.D. Ky. Aug. 1, 2012) ("*McQueary II*"), *aff'd*, 508 F. App'x 522 (6th Cir. 2012). That is precisely what occurred in *McQueary II*. There, the plaintiff had challenged certain provisions of Kentucky law limiting protests at funerals as facially unconstitutional under the First Amendment. *Id.* at *1. The district court granted the plaintiff's motion for a preliminary injunction, concluding that he had shown a likelihood of success on the merits. *Id.* The Kentucky General Assembly then repealed the challenged provisions, which mooted the plaintiff's case before he obtained any permanent relief. *Id.* The Sixth Circuit reversed the district court's initial ruling denying attorney's fees while clarifying the appropriate prevailing-party analysis. *See McQueary I*, 614 F.3d 591. On remand, the district court applied that context-specific analysis and again concluded that the plaintiff was not a prevailing party. *McQueary II*, 2012 WL 3149344. The Sixth Circuit then affirmed. *McQueary v. Conway*, 508 F. App'x 522, 524 (6th Cir. 2012) ("*McQueary III*").

Specifically, the district court found that the plaintiff was not a prevailing party because his "claim for permanent relief did not become moot when a particular event occurred" but instead because Kentucky "voluntarily repealed the challenged provisions" before the court ordered permanent injunctive relief. *McQueary II*, 2012 WL 3149344, at *2. Unlike the protestors in *Young*, the court explained, the *McQueary* plaintiff did not seek relief allowing him to protest "at a specific time and place." *Id.* Rather, "[h]e sought a permanent injunction that would enjoin the Defendant from enforcing the challenged provisions at all funerals." *Id.* As the court explained, when injunctive relief is linked to a particular event—like the time-and-place injunction granted in *Young*—"preliminary relief

9

becomes, in effect, permanent relief after the event occurs. After the passage of the event, the preliminary injunction can no longer be meaningfully revoked," and the court cannot order any further relief. *Id.* at *3. By contrast, preliminary relief like that awarded in *McQueary*—which enjoined Kentucky "from enforcing . . . challenged provisions only while [the plaintiff's] claim for permanent relief was pending"—was "truly temporary and revocable." *Id.* at *2-3. It could be either undone or made permanent by a court order on the merits. *See id.* Thus, as long as the court had not "permanently enjoin[ed] the state from enforcing the challenged provisions," there was "more [it] could do for" plaintiff, and the plaintiff thus had not obtained "all the relief he sought" through an irrevocable court order. *Id.* at *2. And the plaintiff never received all the relief sought through a permanent injunction. Instead, any permanent relief came by way of *Kentucky's* "voluntar[y] repeal[]" of the challenged provision. *Id.* But that, the court held, did not make the plaintiff a prevailing party, because "the [d]efendant's voluntary conduct . . . cannot serve as the basis for an award of attorney's fees." *Id.*

The *McQueary II* decision provides a blueprint for the context-specific analysis in this case that illustrates why Mr. Holman is not a prevailing party. Just like the plaintiff in *McQueary II*, Plaintiff here received preliminary relief that was by nature "temporary and revocable," 2012 WL 3149344 at *3— that is, an injunction precluding the government from fully implementing a statute, § 1005, only during the pendency of the case on the merits. That relief was not tied to the occurrence of any particular event such that compliance with the preliminary injunction afforded Plaintiff all the relief he sought. Rather, the Court's preliminary injunction precluded full implementation of the statute only while the case was pending. And any enduring, irrevocable relief Plaintiff ultimately has now because of § 1005's repeal is the result of a voluntary act of *Congress*, not a *court order*. Like Kentucky's repeal of the provisions in *McQueary II*, Congress's repeal of § 1005 cannot serve as a basis for a fee award. As Plaintiff failed to obtain any "court-ordered, material, *enduring* change in the legal relationship between the parties," *Miller*, 936 F.3d at 448 (emphasis added), he is ineligible for attorney's fees.

Plaintiff's contentions to the contrary lack merit. He first insists that he is a prevailing party because *Congress*, not the Court, "secure[d]" enduring relief for Plaintiff by repealing § 1005. Pl.'s Mem. in Supp. of Mot. for Costs, Attorneys Fees, & Expenses, ("Pl.'s Br.") at 9. But as explained, that assertion contradicts consistent Supreme Court and Sixth Circuit precedent that rejects the "catalyst theory" as a basis for prevailing-party status. *Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." (emphasis in original)); *McQueary III*, 508 F. App'x at 524 (affirming the district court's conclusion that "the state legislature's 'voluntary conduct'—its repeal of the funeral-protest statute—does not by itself 'serve as the basis for an award of attorney's fees' because "there is no 'catalyst' theory for granting fees") (quoting *McQueary II*, 2012 WL 3149344 at *2); *see also Miller*, 936 F.3d at 448 ("[F]or the change to have been *court ordered*, the preliminary injunction must have caused it; it can't stem from [the government's] voluntary modification of . . . conduct." (emphasis in original)).

Nor does the mere determination by this Court that Plaintiff was likely to succeed on the merits support an award of attorney's fees, despite Plaintiff's contention to the contrary. *See* Pl.'s Br. 9. Such a finding may be a necessary condition for entitlement to attorney's fees when there is no decision on the merits, *see Planned Parenthood*, 931 F.3d at 539, but it is not sufficient on its own. What matters in the end is whether Plaintiff received *enduring* relief on the merits of his claim. *Miller*, 936 F.3d at 448. He did not. In fact, the *McQueary* litigation itself undermines Plaintiff's assertion. The preliminary injunction there turned in large part on the district court's conclusion that the plaintiff was likely to succeed on the merits. *See McQueary II*, 2012 WL 3149344 at *1. Nonetheless, the court found—and the Sixth Circuit affirmed—that the plaintiff was not a prevailing party, because the preliminary order did not award him material, enduring relief. *See id.*

Finally, the district court decision on which Plaintiff primarily relies does not justify his claim

11

to prevailing-party status. *See* Pl.'s Br. at 8-9 (citing *Ramsek v. Beshear*, No. 3:20-CV-00036-GFVT, 2022

WL 3591827, at *4 (E.D. Ky. Aug. 22, 2022), *appeal docketed*, No. 22-5856 (6th Cir. Sept. 26, 2022)). In

*Ramsek*, the court had entered a preliminary injunction preventing the state of Kentucky from

enforcing restrictions on protests as likely violative of the First Amendment. *See* 2022 WL 3591827,

at *1-2. While the preliminary injunction was on appeal, the state rescinded its Order, and the Sixth

Circuit dismissed the appeal as moot. *Id.* at *2. On remand, the district court found that the plaintiffs

were prevailing parties. *Id.* But in its decision—which is now pending on appeal—the district court

embraced the catalyst theory that, as explained above, has been consistently rejected. *See Ramsek v.

Beshear*, No. 3:20-CV-00036-GFVT, 2021 WL 5098687, at *7 (E.D. Ky. Nov. 2, 2021) (earlier

proceeding) ("And then, because of that injunction, the Governor rescinded the Order.").[5]

In sum, Plaintiff fails to carry his burden to show that he is a prevailing party eligible for

attorney's fees. His petition should be rejected for that threshold reason alone.

### B.  In any event, the position of the United States was substantially justified.

Even if Plaintiff had established prevailing party status, he would still not be entitled to

attorney's fees because the United States' position in the litigation was substantially justified. *See* 28

U.S.C. § 2412(d)(1)(A). The government's burden to show substantial justification is not onerous. It

need only show that its position was "'justified in substance or in the main'—that is, justified to a

degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation

omitted). Put differently, the government's position must have "had a 'reasonable basis both in law

and fact.'" *DeLong*, 748 F.3d at 725-26. It matters not whether the court ultimately deems the

government's position incorrect—"if a reasonable person could think it correct," the government's

position was substantially justified and no award of fees is proper. *Pierce*, 487 U.S. at 566 n.2. Thus,

---

[5] In the 2022 decision that Plaintiff cites, the district court applied a reconsideration standard and held
that it would "only reverse its prevailing party determination [from 2021] if the 'decision was clearly
erroneous, and would work a substantial injustice.'" 2022 WL 3591827, at *4 (citation omitted).

the government can lose on the merits and nevertheless be found to have taken a substantially justified position. *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563-64 (6th Cir. 2021); *Scarborough v. Principi*, 541 U.S. 401, 415 (2004) ("Congress did not . . . want the substantially justified standard to be read to raise a presumption that the Government position was not substantially justified simply because it lost the case[.]").

Moreover, when the government is called on to defend the constitutionality of a federal statute, its position will be substantially justified absent "exceptional" circumstances. *Grace,* 763 F.2d at 458 n.5; *see also Dvorkin v. Gonzales*, 173 F. App'x 420, 424 (6th Cir. 2006) (finding the government's defense of a statute against constitutional attack to be substantially justified); *Kiareldeen v. Ashcroft*, 273 F.3d 542, 549 (3d Cir. 2001) ("We conclude that [the Executive Branch] is duty-bound to defend what Congress has enacted, and was therefore substantially justified in defending the constitutionality of this statute."); *League of Women Voters of Cal. v. FCC*, 798 F.2d 1255, 1259 (9th Cir. 1986) ("[T]he defense of a congressional statute from constitutional challenge will usually be substantially justified[.]"); *Rothe Dev. Corp. v. U.S. Dep't of Def.*, No. CIV.A.SA-98-CA-1011, 2004 WL 1941290, at *3 (W.D. Tex. Aug. 31, 2004) ("When the government is defending the constitutionality of a statute enacted by Congress, the position of the United States should almost invariably be deemed justified.").

This "general rule" has two constitutional underpinnings: "(1) the Executive Branch has an obligation to 'take Care that the Laws be faithfully executed,' U.S. Const., art. II, § 3, and (2) those laws enjoy a presumption of constitutionality in court." *Kiareldeen*, 273 F.3d at 550 (citing *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981)); *see also Nat'l Fed'n of Republican Assemblies v. United States*, 263 F. Supp. 2d 1372, 1377 (S.D. Ala. 2003) (applying the general rule and emphasizing that "congressional enactments enjoy a presumption of constitutionality"). Indeed, the Sixth Circuit has declared that "there is no doubt that the Government is entitled—if not obligated—to put forth a good faith effort to defend the constitutionality of federal laws, especially those that have never been found

13

unconstitutional." *Dvorkin*, 173 F. App'x at 424 (quoting *Vacchio v. Ashcroft*, 404 F.3d 663, 675 (2d Cir.

2005)). For these reasons, the Third Circuit has found it "implausible that Congress intended to

penalize the government for defending the constitutionality of its own enactments through the

imposition of attorney fee liability." *Kiareldeen*, 273 F.3d at 550.

That general rule compels the conclusion that the government's defense of the constitutional

validity of § 1005 was substantially justified. The government had a duty to defend the congressional

enactment, which enjoyed a presumption of constitutionality, *Rostker*, 453 U.S. at 64, and which no

court had previously found to be unconstitutional, *see Dvorkin*, 173 F. App'x at 424.

No exceptional circumstances warrant departure from that general rule. The government's

constitutional defense of § 1005 had more than a "reasonable basis both in law and fact." *DeLong*, 748

F.3d at 725-26; *see Rothe*, 2004 WL 1941290, at *3 ("A law which can get itself enacted is almost surely

to have behind it a support which is not wholly unreasonable."). The government's arguments that

§ 1005 was narrowly tailored to serve a compelling government interest were based on governing

caselaw and extensive record evidence. Specifically, as the government argued during preliminary

injunction proceedings, the record shows that Congress adopted ARPA § 1005 to further a

government interest in remedying the lingering effects of past discrimination in USDA farm loan

programs. *See, e.g.*, 167 Cong. Rec. S1264-65 (Sen. Booker) ("Congress includes the[] measures [in §

1005] to address the longstanding and widespread systemic discrimination within the USDA, [and]

particularly within the loan programs, against [SDFRs].""). The Supreme Court has repeatedly

recognized that interest as compelling. *See, e.g.*, *Paradise*, 480 U.S. at 167 ("The Government

unquestionably has a compelling interest in remedying past and present discrimination[.]"); *see also*

*United Black Firefighters Ass'n v. City of Akron*, 976 F.2d 999, 1009 (6th Cir. 1992).

Moreover, the government discussed the voluminous record evidence—including reports,

statistics, and anecdotes collected by government and non-governmental entities over the course of

decades—that document past discrimination and current disparities between minority and non-minority farmers. *See* Defs.' PI Opp'n 13-25, ECF No. 28-1. That evidence was extensive.[6] After reviewing it, the *Wynn* court declared that USDA's "dark history of past discrimination against minority farmers" was *"[u]ndeniable*[.]" *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1279 (M.D. Fla. 2021) (emphasis added). And that evidence gave Congress a "strong basis" for finding that the effects of historic discrimination persist and warrant a remedial measure. *Aiken v. City of Memphis*, 37 F.3d 1155, 1162-63 (6th Cir. 1994) (en banc). Indeed, several courts, including the Sixth Circuit, have recognized that the effects of "discrimination may linger for many years," *Stuart v. Roache*, 951 F.2d 446, 452 (1st Cir. 1991), and that remedial action to root out the "vestiges of racial discrimination" may be warranted well beyond the point when "the *practice* of discrimination has halted," *Rutherford v. City of Cleveland*, 179 F. App'x 366, 377 (6th Cir. 2006) (concluding that statistical disparities showed that the effects of discrimination occurring in the 1970s and 1980s "had not been sufficiently relieved by 1992"). All of this supports Congress's conclusion that current statistical disparities, showing that minority farmers are "in a far more precarious financial situation" than non-minority farmers today, are attributable at least in part to the undeniably dark history of discrimination at USDA. *See* 167 Cong. Rec. S1265-66.

Based on that evidence, and because numerous earlier efforts had failed to redress the lingering effects of USDA's history of discrimination, Congress concluded that § 1005 was necessary and narrowly tailored relief: its aim was to prevent a predicted "wave of foreclosures" on minority farms and to allow minority farmers to escape the cycle of debt that precludes them from fully participating

---

[6] Contrary to Plaintiff's contentions, the Supreme Court has upheld the use of statistical and anecdotal evidence to support the use of a race-conscious program. *See Fisher v. Univ. of Tex. at Austin*, 136 S. Ct. 2198, 2212 (2016). And the Sixth Circuit has found that statistical evidence may sometimes be enough on its own "to show a strong basis in evidence for concluding that remedial action is constitutionally justified." *United Black Firefighters*, 976 F.2d at 1010.

in the farming economy and threatens to push many more minority farmers out of the business of farming altogether. 167 Cong. Rec. S1264, 1266 (stressing that relief was needed urgently and that other efforts had "not done enough" to prevent further loss of farms). Using the case-specific, multi-factored analysis elaborated by the Supreme Court and the Sixth Circuit, *see, e.g.*, *Paradise*, 480 U.S. at 171; *Vitolo v. Guzman*, 999 F.3d 353, 362-63, the government defended the debt relief offered by § 1005 as narrowly tailored to remedy these identified lingering effects of discrimination.

Although the government maintains that the record presented during preliminary injunction proceedings sufficed to satisfy strict scrutiny, the government would have submitted even more had the case proceeded on the merits. Indeed, in other litigation, the government's summary judgment briefing relied on the expert opinion of Dr. Alicia Robb, PhD, whose report detailed the links between past discrimination at USDA and present-day statistical disparities between minority and non-minority farmers. *See Miller*, 4:21-cv-595, Ex. B, Decl. of Alicia Robb, ECF No. 168-2 (attached hereto as Ex. A). The government also relied on an expert from USDA, who elaborated why § 1005 was necessary to remedy the effects of past discrimination, especially in light of past unsuccessful remedial efforts. *Id.*, Ex. A, Decl. of William Cobb, ECF No. 168-1 (attached hereto as Ex. B). These reports, which would have been produced here,[7] further substantiate the government's "strong basis in evidence" supporting both its compelling interest and the conclusion that § 1005 was narrowly tailored relief. But even if the Court were to disagree and rule against the government on the merits, this record shows that the government had a reasonable basis in fact and law for its position that § 1005 satisfies strict scrutiny.

Accordingly, Plaintiff's assertion that the government's defense of § 1005 was contrary to well-established precedent is unfounded. *See Pl.'s Br. 11-12; *Griffith*, 987 F.3d at 564 (when determining

---

[7] The Court had not entered a scheduling order before staying the case, but the parties' previous proposal included deadlines for expert discovery. Joint Proposed Scheduling Order, ECF No. 51.

whether the government's position was not substantially justified, courts "distinguish between cases in which 'the government lost because it vainly pressed a position flatly at odds with the controlling case law and cases in which the government lost because an unsettled question was resolved unfavorably.'" (quoting *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173-74 (D.C. Cir. 2005) (Roberts, J.)). When this case was filed, no court had (and to this day no court has) definitively ruled on whether § 1005 satisfies strict scrutiny. Plaintiff wrongly contends that the Sixth Circuit's decision in *Vitolo* dictates the outcome here. That case concerned a different legislative provision establishing a different program (priority grants from the Small Business Association (SBA) "to help restaurant owners meet payroll and other expenses") based on a different factual record. 999 F.3d at 357-58, 361-62. Thus, even if *Vitolo* clarified the legal standards applicable to equal protection claims in a way that was "helpful and apposite" to the Court's analysis here, its ultimate holding as to the SBA program "did not govern the disposition of the" constitutionality of § 1005. *Taucher*, 396 F.3d at 1176-77. Most relevant, § 1005 was specifically directed at remedying discrimination *by the government itself*—which the *Vitolo* majority emphasized was lacking in the SBA program. *See* 999 F.3d at 361; *id.* at 362 ("Third, the government has not shown that it participated in the discrimination it seeks to remedy."). And even if *Vitolo* were controlling as Plaintiff contends, it still would not show that the government's defense of § 1005 lacked a reasonable basis. Plaintiff himself acknowledges that *Vitolo* was accompanied by a dissent. *See* Pl.'s Br. 12 (quoting *Vitolo*, 999 F.3d at 371 (Donald, J., dissenting)); *see also Griffith*, 987 F.3d at 563 (noting that dissenting views relevant to reasonableness of government's position).

Nor do the two preliminary injunctions entered by other courts show that the government's defense was unreasonable, as Plaintiff contends. Those preliminary injunctions, all issued while Plaintiff's preliminary-injunction motion was pending, hardly constitute a prior "string of losses" on the merits of § 1005's constitutionality that could have informed the position the government was

17

taking in this case, in contemporaneous preliminary injunction proceedings. *Griffith*, at 571-72. Rather, the courts' preliminary injunctions were just that—preliminary. By their preliminary nature, they left open the possibility of a different outcome on a more complete record. *See, e.g.*, *Wynn*, 545 F. Supp. 3d at 1281 n.9 ("On a more fully developed record, the Government may be able to establish that despite past remedial efforts the harm caused by the disgraceful history of discrimination by the USDA in farm loans and programs is ongoing[.]"). Thus, at most, these preliminary rulings suggest that some courts were inclined based on an incomplete record to resolve the "unsettled question" of § 1005's constitutionality "unfavorably," but that inclination is not sufficient to show the government's defense of § 1005 was not substantially justified. *Griffith*, 987 F.3d at 564. Indeed, the very fact that additional evidence might lead a court to rule in the government's favor on one or more components of the strict scrutiny test is enough to show that the government's position was at least justified to a degree that would satisfy a reasonable person.

Accordingly, the government's defense of § 1005 against constitutional attack was not only consistent with its constitutional duties and with the presumption of constitutionality that attaches to congressional enactments, it also had more than a reasonable basis in fact in law. The government's position was substantially justified, and the Court should deny Plaintiff's fee petition.

## C.  Special circumstances make an award of EAJA fees unjust.

Finally, considering that Plaintiff's only preliminary success in the case gained him no greater benefit than the already-existing nationwide injunctions entered by other courts, special circumstances would make an award of attorney's fees unjust. 28 U.S.C. § 2412(d)(1)(A); *see Agee v. Beryhill*, No. 3:12-cv-00958, 2017 WL 3888353, at *3 (M.D. Tenn. Sept. 5, 2017) ("[T]he special circumstances exception . . . 'gives the court discretion to deny awards where equitable considerations dictate an award should not be made.'" (citation omitted)).  By the time Plaintiff filed his case on June 2, 2021, four other cases challenging § 1005 on the same grounds were pending in other courts, including the

putative class action in *Miller. Supra* p.4 n.1. By the time he obtained a preliminary injunction, two other courts had already issued substantively identical relief to what Plaintiff obtained here, including in the *Miller* class action. *Supra* p.4. Thus, the only relief Plaintiff obtained in this case was not only fleeting—it was wholly duplicative of relief entered elsewhere that already sufficiently protected his interests. The vast majority of time Plaintiff's counsel expended in this case went toward work that achieved no further benefits for Plaintiff: after the injunction was entered, the Court dismissed Plaintiff's two additional claims for lack of subject matter jurisdiction and then stayed the case pending resolution of the class action, before ultimately dismissing it as moot. Given these circumstances, awarding EAJA fees would be unjust.

## II.    Plaintiff's fee request is unreasonable regardless.

Even assuming Plaintiff is eligible for and entitled to attorney's fees, the fee amount Plaintiff requests is unreasonable and the Court should reduce it. To determine what constitutes a reasonable fee award, the Court first calculates the lodestar by multiplying the number of hours expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The court should then exclude excessive, redundant, or otherwise unnecessary hours." *Wayne v. Vill. Of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). Next, the lodestar should be adjusted downward if the plaintiff "achieved only limited success." *Hensley*, 461 U.S. at 431. "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees[.]" *Id.* at 440.

To the extent the Court considers Plaintiff a prevailing party at all, Plaintiff's success in the case was highly limited, and the Court should reduce the amount of requested fees accordingly. Indeed, the only success Plaintiff achieved in the case is the preliminary injunction. After the preliminary injunction was entered, the Court stayed discovery, dismissed Plaintiffs' additional loan-forgiveness claims, and then stayed the case entirely pending resolution of the *Miller* class action. None of that work can be "deemed to have been 'expended in pursuit of the ultimate result achieved,'" *Hensley*, 461

19

U.S. at 435 (citation omitted), that is, the preliminary injunction. Moreover, the only ruling in Plaintiff's favor after entry of the preliminary injunction was the Court's initial denial of the government's motion to stay—but that procedural ruling, which the Court later reconsidered, resulted in no success on the merits of any of Plaintiff's claims. Indeed, in the only merits-based ruling the Court entered after the preliminary injunction, it dismissed Plaintiffs' loan-forgiveness claims for lack of subject-matter jurisdiction. EAJA allows a court to grant reasonable fees to a prevailing party only in a court "having jurisdiction" over the underlying action. *Greater Detroit Res. Recovery Auth. v. EPA*, 916 F.2d 317, 320 (6th Cir. 1990); *see* 28 U.S.C. § 2412(d)(1)(A).

Thus, awarding fees for work performed after entry of the preliminary injunction motion—which is the only success Plaintiff obtained and is the entire basis for his (incorrect) assertion that he is a prevailing party—would be excessive. The majority of hours included in Plaintiff's fee calculation—a total of 220[8]—pertains to post-preliminary-injunction work. The Court should exclude those hours such that any fee awarded would compensate for, at the most, 128.8 hours of work. For the Court's convenience, Defendants have attached the charts from Plaintiff's counsel's declarations, which documenting counsel's hours billed, and highlighted in yellow the 220 hours that should be excluded. *See* Ex. C.

### III.    Plaintiff is not eligible for costs.

EAJA allows a "prevailing party" to recover from the government certain costs associated with the litigation. 28 U.S.C. § 2412(a)(1). For the reasons explained above, Plaintiff is not a prevailing party, and his request for costs should be denied.

### <u>CONCLUSION</u>

For the above reasons, the Court should deny Plaintiff's motion for attorney's fees and costs.

---

[8] This number does not include time counsel billed for preparing the motion for attorney's fees.

Dated: October 13, 2022

Respectfully submitted,

KEVIN R.RITZ
United States Attorney

*s/ Audrey M. Calkins*
Audrey M. Calkins (TN BPR # 030093)
Audrey.calkins@usdoj.gov
167 N. Main Street, Suite 800
Memphis, TN 38103
901-544-4231
Fax: 901-544-4230

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendant*

21