# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

_____

| | |
|---|---|
| **ROBERT HOLMAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-01085-STA-jay |
| | ) |
| **THOMAS J. VILSACK,** in his official | ) |
| capacity as Secretary of Agriculture; | ) |
| and **ZACH DUCHENEAUX,** in his official | ) |
| capacity as Administrator of the Farm | ) |
| Service Agency, | ) |
| | ) |
| Defendants. | ) |

_____

### DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS
_____

Pursuant to the Court's Order dated November 29, 2022, ECF 93, Defendants respectfully submit this supplemental brief addressing the effect of the Sixth Circuit's recent decision in *Tennessee State Conf. of NAACP v. Hargett*, 53 F.4th 406 (6th Cir. 2022) on the Plaintiff's requests for fees under the Equal Access to Justice Act (EAJA).

As explained below, *Hargett* does not alter the governing framework for assessing whether a preliminary injunction—like the one Plaintiff secured against the U.S. Department of Agriculture's (USDA's) implementation of § 1005 of the American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4 (2021)—grants sufficient relief to render Plaintiff a "prevailing party." Nor does *Hargett* speak to the other components of the fees inquiry that the Court must address here: namely, whether the position of the United States in defending the constitutionality of a Congressional statute was substantially justified, or whether some other factor would make award of fees in this case unjust. And, as Defendants detailed in their prior briefing, ECF 88, all these factors unequivocally weigh against the award of fees in this matter.

-1-

## ARGUMENT

I.  *Hargett* <u>Makes Clear that Plaintiff Is Not a Prevailing Party</u>

The Court in *Hargett*, 53 F.4th at 410, followed decades of caselaw from the Sixth Circuit and the Supreme Court which counsels "against fees in the context of preliminary injunctions," *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010) (discussing *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001) and *Sole v. Wyner*, 551 U.S. 74 (2007)). The admonition reflects the principle that, to be a "prevailing party" eligible for fees, plaintiff must obtain relief that is "court-ordered," "material," and "enduring." *McQueary*, 614 F.3d at 598–99. In this framework, it is not enough for plaintiff to achieve a temporary reprieve from the general enforcement of a statute that is subsequently repealed by the legislature. *McQueary v. Conway*, No. 06-CV-24-KKC, 2012 WL 3149344, at *3 (E.D. Ky. Aug. 1, 2012), *aff'd*, 508 F. App'x 522 (6th Cir. 2012) (*McQueary II*) (discussing why the relief in such circumstance is "fleeting"). Rather, plaintiff must achieve "a *lasting* change in the legal relationship between the parties and not merely 'catalyze' the defendant to voluntary action." *McQueary*, 614 F.3d at 601 (citing *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001) and *Sole v. Wyner*, 551 U.S. 74 (2007)) (emphasis added).

The plaintiffs in *Hargett* secured a preliminary injunction against enforcement of a Tennessee statute "imposing a raft of new requirements upon persons or organizations conducting voter-registration activities in the State." *Hargett*, 53 F.4th at 408. Seven months later, the Tennessee legislature repealed the challenged provisions, and the plaintiffs dismissed the case. *Id.* at 409. Evaluating plaintiffs request for fees in this context, the Sixth Circuit held that plaintiffs qualified as "prevailing parties" within the meaning of the fee-shifting provision of the federal civil rights statute, 42 U.S.C. § 1988, because—in addition to the district court never dissolving the injunction—the relief they obtained was more than "fleeting." *Id.* at 410-11. Rather, "to a significant extent, the court's relief was 'irrevocable' . . . [because] plaintiffs were able to conduct voter-registration drives for seven months during the runup to the 2020 election, unburdened by the requirements of the" enjoined law. *Id.* In this way, the Court explained, the relief plaintiffs obtained was analogous to the "enduring"

relief that entitled plaintiff to fees in *Miller v. Caudill*, 936 F.3d 442, 466, 449 (6th Cir. 2019), where a preliminary injunction required a county clerk to issue marriage licenses that could not be revoked after the injunction's vacatur. *Hargett*, 53 F.4th at 410. That is, the court's injunction gave plaintiffs something that could not later be taken away.

The injunction here did not grant Plaintiff anything comparable. Indeed, it is questionable whether the injunction gave Plaintiff anything at all. The Court issued its injunction against the enforcement of § 1005 on July 8, 2021—two weeks after a nationwide injunction entered in *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla. June 23, 2021) and one week after a *class-wide* injunction in *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex. July 1, 2021) (filed at ECF No. 45-1). The *Wynn* injunction paused the USDA's implementation of § 1005 before Plaintiff even had a chance to present oral argument in support of its motion. *See* ECF 45-1, at 23-24 (enjoining Defendants from "administering section 1005" in a manner that "use[s] any criterion that is intended to serve as a proxy for race or ethnicity"). So when Plaintiff secured the injunction here, USDA was already under a nationwide order to not implement the provision in the manner Congress directed. *Compare id.* (enjoining Defendants from "administering section 1005" in a manner that "use[s] any criterion that is intended to serve as a proxy for race or ethnicity") *with* 7 U.S.C. § 2279 (a)(5)-(6) (defining "socially disadvantaged farmer or rancher," whom Congress made eligible for § 1005 benefits, as people in "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities"). This Court's order against Defendants "implementing Section 1005" therefore added no new prohibition. ECF 41 at 24.

But even putting the other injunctions aside, the relief afforded by this Court's order was entirely "fleeting." *Sole*, 551 U.S. at 83. In his complaint, Plaintiff sought "an order permanently enjoining Defendants from applying racial classification when determining eligibility for" § 1005 benefits. Compl., ECF 1 at 17. Plaintiff did not claim that he needed this relief pending the occurrence of some specific event. *See id.* ¶¶ 58-63. He did not allege, for example, that his injury was tied to a seasonal project or a one-time activity. *Id.* So, unlike the injunction obtained by plaintiffs in *Hargett* or *Miller*, which enabled the parties to register voters or obtain marriage licenses, the

injunction here provided Plaintiff with nothing lasting—no permanent change of status, no irrevocable benefit, and no enduring opportunity to profit from the Court's order. *See, e.g., McQueary II*, 2012 WL 3149344, at *2 (contrasting instance where Plaintiff seeks an injunction for a "specific" act or occasion from an injunction that seeks to stop defendants "from enforcing the challenged" law universally). Plaintiff won "a preliminary injunction and nothing more." *McQueary*, 614 F.3d at 604.

Notably, in his reply to Defendants' fees opposition, Plaintiff does not contend otherwise. *See* ECF 91 at 1-3. That is, he does not allege that the injunction enabled him to achieve anything that could not be undone by a subsequent order. *Id.* Rather, Plaintiff only claims that he prevailed because the injunction (or another like it) prevented USDA from enforcing § 1005 until it was repealed. *Id.* But, as Defendants already explained in their prior briefing, that is insufficient. *See* ECF 88 at 8-12. Where, as here, the only *enduring* relief comes from Congressional repeal of the challenged statutory provision, not from a court order, the Plaintiff is not a prevailing party entitled to fees. *See, e.g., Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." (emphasis in original)); *McQueary*, 508 F. App'x at 524 (affirming the district court's conclusion that "the state legislature's 'voluntary conduct'—its repeal of the funeral-protest statute—does not by itself 'serve as the basis for an award of attorney's fees' because "there is no 'catalyst' theory for granting fees") (quoting *McQueary II*, 2012 WL 3149344 at *2); *see also Miller*, 936 F.3d at 448 ("[F]or the change to have been *court ordered*, the preliminary injunction must have caused it; it can't stem from [the government's] voluntary modification of . . . conduct." (emphasis in original)).

Accordingly, the "contextual and case-specific inquiry" mandated by the Sixth Circuit in *McQueary*, 614 F.3d at 601, dictates the opposite result here than in *Hargett*. The Court's preliminary injunction left the Plaintiff with nothing "enduring." *Hargett*, 53 F.4th at 410. Accordingly, Plaintiff is not a "prevailing party" entitled to fees.

-4-

## II. Even if Plaintiff Were a Prevailing Party, a Fee Award Would be Inappropriate

Given Plaintiff's failure to establish that he is a prevailing party under the Sixth Circuit's long-established standards, the Court need go no further. But even if Plaintiff had carried its burden on that factor, *Hargett* would not help it establish eligibility for fees under the remainder of EAJA's factors.

As noted above, in *Hargett* the Sixth Circuit analyzed plaintiff's entitlement to fees under the civil rights statute, 42 U.S.C. § 1988. By its terms, that statute provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." 42 U.S.C.A. § 1988. But Plaintiff is seeking fees under *EAJA*, not § 1988. And EAJA disallows fees when the government shows that its position was "substantially justified" or that special circumstances would make an award of attorney's fees unjust. 28 U.S.C. § 2412(d)(1)(A).

Defendants previously detailed how each of those factors weigh against the award of fees here, *see* ECF 88 at 12-20, and Plaintiff's reply offers no rejoinder to the extensive caselaw and voluminous record evidence Defendants cited showing that the government's constitutional defense of § 1005 had more than a "reasonable basis both in law and fact," *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 725-26 (6th Cir. 2014). *See* ECF 91 at 3-4. Accordingly, Defendants do not retread their arguments. The expert reports, statistics, and Congressional material which Defendants adduced in defending § 1005's constitutionality are more than sufficient to establish, that the statute "might reasonably be thought to be constitutional," *League of Women Voters v. FCC*, 798 F.2d 1255, 1259 (9th Cir. 1986), and render that government's defense substantially justified.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for attorney's fees and costs.

Dated: December 14, 2022

Respectfully submitted,

KEVIN R. RITZ
United States Attorney

*s/ Audrey M. Calkins*
Audrey M. Calkins (TN BPR # 030093)
Audrey.calkins@usdoj.gov
167 N. Main Street, Suite 800
Memphis, TN 38103
901-544-4231
Fax: 901-544-4230

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendant*