**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT HOLMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-01085-STA-jay |
| ) | |
| THOMAS J. VILSACK, in his official ) | |
| capacity as Secretary of the United States ) | |
| Department of Agriculture, and ) | |
| ) | |
| ZACH DUCHENEAUX, in his official ) | |
| capacity as Administrator of the Farm Service ) | |
| Agency, ) | |
| ) | |
| Defendants. ) | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY FEES**

---

On November 19, 2022, this Court entered an order for additional briefing on the issue of Plaintiff's pending attorney fees motion. (Doc. 93.) The Court instructed Defendants to file a supplemental brief addressing whether *Tennessee State Conf. of NAACP v. Hargett*, 53 F.4th 406 (6th Cir. 2022) is controlling on whether Plaintiff should be awarded attorney fees (Doc. 85) under the Equal Access to Justice Act (EAJA). Even though the government was tasked with explaining how *Hargett* could possibly not control the outcome of Plaintiff's motion, its response (Doc. 94) falls short. The government fails to distinguish *Hargett* or otherwise establish that *Hargett* does not control the outcome in the present matter.

1

I.    **The Government Fails to Show that Plaintiff is not a Prevailing Party in Light of *Hargett*.**

*Hargett* is controlling on whether Plaintiff's preliminary injunction makes him the prevailing party for attorney fee purposes.[1]

In *Hargett*, the Tennessee Conference of the NACCP, along with other groups, challenged Tennessee's newly enacted voter registration statute. They obtained a merits-based preliminary injunction. *Id*. at 408. Seven months later, Tennessee's legislature repealed the statute, and the District Court dismissed the case. *Id*. at 409. The state challenged the District Court's decision to award attorney fees after dismissal of the case. Yet the Sixth Circuit rejected the argument that Plaintiff had not received court-ordered relief that was enduring considering the change in law that mooted the case. *Id*. at 411. The Court determined that fees were appropriate because the preliminary injunction was both *material* and *enduring*. It was *material* because it altered the defendant's behavior towards plaintiffs. *Id*. at 410. It was *enduring* because it was not "reversed, dissolved, or otherwise undone by the final decision in the same case." *Id*. (quoting *Sole v. Wyner*, 551 U.S. 74, 83 (2007)).

*Hargett* demonstrates that Plaintiff is entitled to fees. Plaintiff obtained a preliminary injunction. (Doc. 41.) It was *material* because it altered the government's race-based behavior toward him. The government had already forgiven loans at the time of the injunction and was prepared to make a host of additional payments at any second. (Doc. 31-1 at ¶¶ 29-33.) As a result of the injunction, the government could no longer discriminate against Plaintiff because of the

---

[1] If this Court awards fees to Plaintiff, it may order payment directly to Southeastern Legal Foundation and Mountain States Legal Foundation because Plaintiff has assigned those fees to his attorneys, *see* Doc. 85-2, PageID # 1343 at ¶ 7, unless Plaintiff has unpaid debts to the government to offset. *See Diggs v. Comm'r of Soc. Sec.*, 2022 U.S.Dist. LEXIS 224357 at **2-3 (W.D. Tenn. Dec. 8, 2022).

2

color of his skin. It was *enduring* because the injunction was never reversed, dissolved, or otherwise undone by a final decision in the same case. "To the ordinary observer, then, it would seem like the plaintiff[] prevailed, and enduringly so." *Tennessee State Conf. of NAACP v. Hargett*, 2021 U.S. Dist. LEXIS 185449, at *12 (M.D. Tenn. Sept. 28, 2021).

The government contends that Plaintiff's only enduring relief stems from Congressional repeal, not the preliminary injunction. (Doc. 94 at 4.) In *Hargett*, the state made this precise argument, only to lose:

> What the parties do dispute is whether the court's relief was "enduring" enough to support prevailing-party status. *See Sole*, 551 U.S. at 74. The defendants say [the court's relief was not enduring]: in their view, the preliminary injunction provided relief to the plaintiffs for only seven months, until the Tennessee legislature itself repealed the challenged provisions.

*Id*. at 410. This argument fails here, as it did in *Hargett*. A preliminary injunction is enduring when it is "never reversed, dissolved, or even vacated after the plaintiffs' voluntary dismissal of the case." *Id*.; *accord Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 539-540 (6th Cir. 2019) ("But the court never issued a final order revoking or vacating the injunction."). Also, as in *Hargett*, the preliminary injunction was an "emphatic and an 'unambiguous indication of probable success on the merits of the plaintiffs' claims.'" *Id*. at 411 (quoting *McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010)). Nor was it appealed. *Id*. Plaintiff prevailed as in *Hargett*.

*Hargett* also cuts off the government's reliance on *McQueary* for its argument that prevailing plaintiffs may never obtain attorney fees unless a preliminary injunction allows them to do "some specific event," like a "seasonal project or a one-time activity." (Doc. 94 at 3.) Indeed, that was the losing argument from the <u>dissent</u> in *Hargett*: "It's not as if the relief sought here was for a *single event*, thus allowing plaintiffs to obtain their one-time prayer for relief via a preliminary injunction." *Hargett*, 53 F.4th at 413 (emphasis added) (Nalbandian, J., dissenting).

*Hargett* is just the latest opinion by the Sixth Circuit dismissing the government's argument that *McQueary* limits fees to when the preliminary injunction enables a person to do some "specific act" (Doc. 94 at 4). In fact, as Plaintiff pointed out, this was not the law even prior to *Hargett*. *See* Doc. 91 at 1 (citing *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019) ("Here, what happened doesn't fit neatly into those examples."); *Planned Parenthood*, 931 F.3d at 540 ("*McQueary* did not announce a strict rule. The language the state points to [in *McQueary*] was merely an example …."); *Id*. at 541 ("Had we intended to announce a *per se* rule, we certainly would have resolved the dispute on the basis of that articulation, but we did not.").

The government also argues that Plaintiff fell short of his goal because he never got a permanent injunction. (Doc. 94 at 4.) The government again channels the dissent in *Hargett*: "The Plaintiffs wanted a permanent injunction to enjoin Tennessee from enforcing its statute and a declaration, which they didn't get. So the permanent relief wasn't—well—enduring, at least not under § 1988(b)." *Hargett*, 53 F.4th at 414 (Nalbandian, J., dissenting). As this argument was rejected by the majority in *Hargett*, this District Court should reject it here.

As in *Hargett*, Plaintiff here sought to discontinue the enforcement of the law "for as long as those provisions remained duly enacted … whether that was a few months or a hundred years." *Hargett*, 2020 U.S. Dist. LEXIS 185449, at *13. That's what Plaintiff achieved. It doesn't matter that the preliminary injunction could "be undone by a subsequent order" (Doc. 94 at 4), when it wasn't.

The government tries to distinguish *Hargett* by contending that the plaintiffs in that case got something from the preliminary injunction that "could not later be taken away" (Doc. 94 at 3), specifically, the ability to conduct voter drives for the 2020 election. (Doc. 94 at 2.) This distinction doesn't hold up. The NAACP did not seek relief merely to register voters *one time*. They sought

4

relief to permanently be able to register them unburdened by law that only ceased to exist by dint of legislative repeal. That is why they sought a *permanent* injunction. *See Hargett*, 53 F.4th at 409. That was relief that they never obtained, but only because the government "simply *gave up* on trying to infringe on the plaintiff['s]—or anyone's—constitutional rights in the manner at issue, rendering those final steps unnecessary." *Hargett*, 2021 U.S. Dist. LEXIS 185449, at**16-17 (emphasis preserved). It is mystifying that the government would lose a preliminary injunction, then surrender, yet claim that Plaintiff did not prevail.

In any event, Plaintiff did get something that could never be taken away by a reversal, even if that were required. The Court halted what it said was "clear[ly]" an irreparable injury based on recent Sixth Circuit precedent. (Doc. 41 at 21) (quoting *Vitolo v. Guzman*, 999 F.3d 353, 365 (6th Cir. 2021)). The halting of that irreparable injury was similarly a day-by-day triumph that could not be undone even if, as in *Hargett*, the injunction did not cement that victory into permanency.

The government goes so far as to question if Plaintiff won "anything at all" (Doc. 94 at 3) considering the injunctions issued in other related cases. But this Court has already rejected the argument that Plaintiff was protected by competing injunctions (Doc. 41 at 21), making it the law of the case, and precluding the government from arguing otherwise. *See Keith v. Bobby*, 618 F.3d 594, 599 (6th Cir. 2010). Besides, a "string of losses" in similar cases only makes a fee more warranted under EAJA. *See* Doc. 85-1 at 12. And of course, Plaintiff had no assurance that the other preliminary injunctions would remain in place indefinitely, or that the government would not appeal them and have them overturned.

The government certainly never litigated this case like nothing was at stake, contending elsewhere that these other cases mattered little. *See* Doc. 88 at 17 ("When this case was filed, no court had (and to this day no court has) definitively ruled on whether § 1005 satisfies strict

5

scrutiny."); *Id.* at 18 ("By their preliminary nature, they left open the possibility of a different outcome on a more complete record.").

In sum, the government fails to establish that *Hargett* does not control. It does.

## II.     The Government Fails to Show that Its Position Was Substantially Justified.

The government attaches some importance to the fact that *Hargett* was brought under § 1988, not EAJA. It notes that, unlike § 1988, under EAJA, fees may be disallowed when the government's position is substantially justified. (Doc. 94 at 5.) But that argument, too, is unpersuasive. Section 1988 similarly disallows fees when "special circumstances" make an award unjust, *see McQueary*, 614 F.3d at 604, and the differences cut both ways. Under EAJA, fees "shall" be awarded, 28 U.S.C. § 2412(d)(1)(A). Under 42 U.S.C. § 1988, fees "may" be awarded.

The government contends that its position had a substantial justification based on expert reports, statistics, and Congressional material. (Doc. 94 at 5.) The statistics and Congressional materials were all rejected by this Court when issuing its emphatic ruling based on well-established Sixth Circuit law. (Doc. 41 at 11 (quoting *Vitolo*, 999 F.3d at 361).) The government tries to revisit this Court's conclusions, arguing "[c]ontrary to Plaintiff's contentions," statistical evidence is sufficient to justify a governmental race preference. (Doc. 88 at 15 n.6.) But it was this Court, not Plaintiff, who was quoting the Sixth Circuit when it ruled that "[s]tatistical disparities don't cut it" unless used in conjunction with evidence establishing intentional discrimination from a single decision maker. (Doc. 41 at 11 (quoting *Vitolo*, 999 F.3d at 361); *id.* at 14 n. 13.)

As for expert reports that supposedly would have changed the game, they were themselves based on crude statistical disparities. *See, e.g.,* Doc. 88-1 at 40-72, Ex. A ("Robb Decl.") (parsing statistics to show existing disparities between minorities and non-minority farmers); Doc. 88-2 at PageID # 1558, Ex. B ("Cobb Decl.") ¶ 52 ("minority communities continue to be

*underrepresented* in certain USDA programs.") (emphasis added). These are precisely the kinds of arguments that courts consistently reject. *Cf. Faust v. Vilsack*, 519 F.Supp.3d 470, 4775 (E.D. Wisc. 2021) (TRO subsequently dissolved) ("Defendants have not established that the loan-forgiveness program targets a specific episode of past or present discrimination.").

Furthermore, the government lacks a substantial justification when it argues that the experts could justify the program based on past unsuccessful remedial efforts. (Doc. 88 at 16.) The Sixth Circuit had just ruled, "An observation that prior, race-neutral efforts failed to reach minorities," was not a basis for a racial spoils system in another part of ARPA. *Vitolo*, 999 F.3d at 362. The reports are not evidence "at all that the government enacted or administered those policies in a discriminatory way." *Id*. The reports do nothing to address the tailoring portion of strict scrutiny, specifically whether "alternative policies could address the alleged harm." (Doc. 41 at 17 (quoting *Vitolo*, 999 F.3d at 362).) And even if they did, the government was still defending a measure that was hideously underinclusive and overinclusive. (*Id.* at 16.)

Also demonstrating that the law is not narrowly tailored, regardless of the experts, the government cannot deny that even farmers that received a full settlement under *Pigford* or similar consent decrees were nevertheless fully entitled to 120 percent in debt relief under the challenged program. *See Pigford v. Glickman*, 206 F.3d 1212, 1219 (D.C. Cir. 2000) (calling the settlement "an indisputably fair and reasonable resolution of the class complaint.").

This law was indefensible. It certainly never had a *substantially* justified defense.

### III.    This Court Should Amend the Fee Amount Upward.

Including hours spent on the response to the supplemental brief, *see Sakhawati v. Lynch*, 839 F.3d 476, 481 (6th Cir. 2016) the adjusted amounts are now denoted below. *See* Ex. 1, Third Declarations of Braden H. Boucek, William E. Trachman.

7

| Attorney | Hours | Rate | Value |
|----------|-------|------|-------|
| Braden H. Boucek | 168.4 | $125/hr. | $21,050 |
| William E. Trachman | 97.1 | $125/hr. | $12,137.50 |
| Kimberly S. Hermann | 12 | $125/hr. | $1,500 |
| Jeffrey Clayman | 107.1 | $125/hr | $13,387.50 |
| **Total:** | **348.60** | | **$48,075** |

Furthermore, Plaintiff resubmits his request for costs totaling **$517.** (Doc. 85-1 at PageID # 1304.)

The combined total is **$48,592**.

Dated:  December 29, 2022.                    Respectfully submitted,


s/ B.H. Boucek
BRADEN H. BOUCEK
TN BPR No. 021399
GA Bar No. 396831
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org

WILLIAM E. TRACHMAN*
CO Bar No. 45684
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org

*Appearing Pro Hac Vice
Counsel for Plaintiff

8

## CERTIFICATE OF CONSULTATION

Before filing this Response brief, and pursuant to this Court's order on November 29, 2022, Plaintiff conferred with Defendant to determine whether resolution of this motion was possible without court intervention.  On December 27, 2022, Defendants by and through counsel conveyed that such efforts at resolution were unavailing.

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below I filed the documents on the Court's electronic filing system which sent notification of such filing to all counsel of record in this matter

Dated:  <u>December 29, 2022</u>.              Respectfully submitted,


                                          <u> s/ B.H. Boucek                    </u>
                                          BRADEN H. BOUCEK