UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOLMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-01085-STA-jay |
| ) | |
| THOMAS J. VILSACK, in his official ) | |
| capacity as Secretary of Agriculture; ) | |
| and ZACH DUCHENEAUX, in his official ) | |
| capacity as Administrator of the Farm ) | |
| Service Agency, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS**

Plaintiff Robert Holman filed this action to challenge the United States Department of Agriculture's implementation of § 1005 of the American Rescue Plan Act of 2021 ("ARPA"). Section 1005 appropriated funds to pay certain USDA farm loans held by "socially disadvantaged" farmers and ranchers. "Socially disadvantaged" was defined as a "farmer or rancher who is a member of" a group "whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities" – specifically American Indians or Alaskan Natives; Asians; Blacks or African Americans; Hispanics or Latinos; and Native Hawaiians or other Pacific Islanders. Plaintiff asserted that he would have been eligible for debt relief for his farm loans under § 1005 but for the fact that he does not fall within one of the racial or ethnic groups considered "socially disadvantaged." He filed suit asserting that § 1005 violated the equal protection component of the Fifth Amendment's Due Process Clause, and he sought declaratory and injunctive relief, costs and fees, and nominal damages.

Plaintiff moved for a preliminary injunction. After a hearing and with opposition from the Government, the Court granted Plaintiff's request and enjoined disbursement of § 1005 funds on a nationwide basis pending resolution of the case on the merits on July 8, 2021. This Court's injunction was preceded by similar preliminary injunctions in the Middle District of Florida, *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla. June 23, 2021), and in the Northern District of Texas, *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex. July 1, 2021). *Miller* certified two classes at the same time that it entered class-wide preliminary relief. Plaintiff was a member of the classes in *Miller*. The Court initially denied the Government's motion to stay pending the outcome of the *Miller* class action but then reconsidered that decision and stayed the matter.

On September 6, 2022, the Government filed a notice that § 1005 had been repealed by the Inflation Reduction Act of 2022, thus mooting the actions challenging § 1005. *See* Pub. L. No. 117-169, § 22008 (2022). Consequently, the *Miller* class action was dismissed. Subsequently, the parties in this case submitted a joint stipulation of dismissal, and judgment was entered on September 15, 2022.

Plaintiff has now filed a motion for attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and Local Rule 54.1. (ECF No. 85.) Plaintiff seeks fees, costs, and expenses in the amount of $44,117.00. The Government has responded and opposes the motion. (ECF No. 88.) Plaintiff has filed a reply to the Government's response. (ECF No. 91.) Subsequently, the Court entered an order requiring additional briefing by the parties in light of *Tennessee State Conf. of NAACP v. Hargett*, 53 F.4th 406 (6th Cir. 2022). (ECF No. 93.) In that decision, a divided panel upheld the district court's award of attorney fee to the plaintiffs as prevailing parties even though the Tennessee legislature repealed the statutory provisions that the

2

district court had enjoined, thereby rendering the lawsuit moot.[1] The Government has filed its additional briefing (ECF No. 94), as has Plaintiff. (ECF No. 95.) For the reasons set forth below, Plaintiff's Motion is **DENIED**.

Under the EAJA, the Court shall "award to a prevailing party . . . fees and other expenses . . . incurred by the party in any civil action . . ., including proceedings for judicial review of agency action, brought by or against the United States . . ., unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The party seeking fees bears the burden of proving that it was a prevailing party with respect to the work done to generate them." *United States v. Tennessee*, 780 F.3d 332, 336 (6th Cir. 2015). The Government then bears the burden of proving that its position was substantially justified or that special circumstances make an award unjust. *Caremore, Inc. v. NLRB*, 150 F.3d 628, 629 (6th Cir. 1998).

Plaintiff contends that he is entitled to attorney fees because he is the prevailing party in this action since he obtained a preliminary injunction even though the injunction was later mooted by the repeal of § 1005. He also contends that the Government's defense of § 1005 was not substantially justified, and he argues that there are no special circumstances that would make an EAJA award unjust. The Government has responded, *inter alia*, that Plaintiff was a member of the *Miller* class, and, by the time this Court entered a preliminary injunction, Plaintiff's interests were already protected by the nationwide injunction in *Wynn* and the class-wide injunction in *Miller*.

---

[1] The motion for attorney fees in *Hargett* was brought under 42 U.S.C. § 1988, whereas the present motion is brought under the EAJA. However, the Supreme Court has stated that the standards applicable to § 1988 fee awards "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581-83 (2008) (applying § 1988 fee decisions to EAJA fee matter); *INS v. Jean*, 496 U.S. 154, 161 (1990) (applying *Hensley* to EAJA award).

3

The Government also asserts that it had a duty to defend § 1005 and, therefore, its position was substantially justified.[2]

It is undisputed that the only "success" that Plaintiff obtained in this Court was the issuance of the preliminary injunction. After the preliminary injunction was issued, the Court stayed discovery, dismissed Plaintiffs' additional loan-forgiveness claims, and then stayed the case pending resolution of the *Miller* class action. Ultimately, as mentioned above, the entire case was dismissed by a joint stipulation of the parties. Therefore, the issue for the Court is whether obtaining a preliminary injunction, without more, elevates a plaintiff to prevailing party status in light of the ruling in *Hargett*. The Court finds that it does not in that *Hargett* did not change the well-established law of this circuit.

To be considered a prevailing party, a litigant must have "receive[d] at least some relief on the merits of his claim" amounting to "a court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603-04 (2001) (internal quotation marks and alterations in original omitted). Prior to *Hargett*, it was well-settled that a plaintiff who "wins a preliminary injunction and nothing more" is almost never a prevailing party, *see McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010) ("*McQueary* I"), and *Hargett* did not change this general principle. *See Hargett*, 53 F.4th at 410 (relying on the guidance of *McQueary* I and *Buckhannon* in determining whether the plaintiff in that case was a "prevailing party").

---

[2] Because the Court has found that Plaintiff is not a prevailing party for the purpose of an award of EAJA attorney fees, the Court need not reach the issue of whether the Government's position was substantially justified or whether Plaintiff should receive an award of costs. *See* 28 U.S.C. § 2412(a)(1) (allowing a "prevailing party" to recover from the government certain costs associated with the litigation under the EAJA).

The Supreme Court has identified "the material alteration of the legal relationship of the parties" as the "touchstone of the prevailing party inquiry," *Texas State Teachers Ass'n v. Garland Indep. School District*, 489 U.S. 782, 792-93 (1989) - and "for an alteration of legal relationships to be considered material, . . . a plaintiff must 'receive at least some relief *on the merits of his claim*.'" *Biodiversity Conservation All. v. Stem*, 519 F.3d 1226, 1231 (10th Cir. 2008) (emphasis in original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)). Thus, while preliminary injunction recipients may sometimes be prevailing parties, the nature of preliminary relief, which usually does not create lasting change in the legal relationship between the parties, "will generally counsel against fees." *McQueary* I, 614 F.3d 597, 600-01 (quoting *Sole v. Wyner*, 551 U.S. 74, 86).

The Supreme Court has specifically rejected the catalyst theory "under which a plaintiff 'prevailed' if he 'achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct,' such as a legislative repeal of a challenged statutory provision." *McQueary I*, 614 F.3d at 597 (quoting *Buckhannon*, 532 U.S. at 601-02). That is, "'a voluntary change in the defendant's conduct,' such as a legislative repeal of a challenged statutory provision, . . . does not amount to a 'court-ordered change in the legal relationship' between the plaintiff and defendant, as required to establish prevailing-party status." *McQueary I*, 614 F.3d at 597 (quoting *Buckhannon*, 532 U.S. at 603-04).[3] Instead, the Sixth Circuit applies a "contextual and case-specific inquiry" to determine if a party who obtained only a preliminary injunction is entitled to attorney fees. *McQueary I*, 614 F.3d at 601. This approach asks whether the plaintiff obtained a change to "the legal relationship between the parties" that was "court-ordered, material," and

---

[3] Additionally, a plaintiff cannot claim to be a prevailing party if its success is ultimately "reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole*, 551 U.S. at 83. Those factors are not present in this case.

"enduring." *Miller v. Caudill,* 936 F.3d 442, 448 (6th Cir. 2019). A change is court-ordered if it is caused by the preliminary injunction and not the defendant's voluntary change in conduct. *Id.* It is material if it "directly benefit[s]" the plaintiff by altering the defendant's conduct toward him, and it is enduring if it is "irrevocable, meaning it . . . provided [the] plaintiff[] with everything [he] asked for." *Id.*

To illustrate this approach, the Government relies on the following cases. In *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000), protestors obtained a preliminary "injunction to exercise their First Amendment rights at a specific time and place," *i.e.*, the 1996 Democratic National Convention, and that injunction gave the protestors everything they needed. That is, the protestors wanted to protest at the Convention, and the preliminary injunction allowed them to do so. Thus, an award of attorney fees was appropriate in *Young*. *See McQueary* I, 614 F.3d at 599 (explaining the holding in *Young*).[4]

In *Miller v. Caudill,* the Court of Appeals found that same sex couples who obtained a preliminary injunction that gave them the immediate opportunity to obtain marriage licenses - and they did, in fact, obtain marriage licenses and wed - were prevailing parties because that opportunity was the relief they sought and could not be taken away by any future action of the defendants. 936 F.3d at 449 ("[T]he injunction gave plaintiffs all the court-ordered relief they needed, [such that] the issuance of the marriage licenses mooted [the] request for them," and the Clerk could not "retroactively . . . nullify the marriage licenses plaintiff[s] had already obtained."). Accordingly, "[t]he relief plaintiffs obtained – the unobstructed opportunity to secure pre-

---

[4] *McQueary* I also cited the case of *Watson v. County of Riverside*, 300 F.3d 1092, 1095–96 (9th Cir. 2002) (affirming an award of attorney fees when a government employee who sought to exclude an unconstitutionally obtained report from an administrative hearing obtained a preliminary injunction that "irrevocably excluded the report).

6

alteration marriage licenses – therefore stemmed from the preliminary injunction, not from the legislature's or [defendant's] later voluntary actions." *Id.*

As a counterpoint to *Young* and *Miller*, the Government cites *McQueary v. Conway*, 2012 WL 3149344, at *3 (E.D. Ky. Aug. 1, 2012) ("*McQueary* II"), *aff'd*, 508 F. App'x 522 (6th Cir. 2012). In that case, the plaintiff challenged provisions of Kentucky law limiting protests at funerals. The district court granted the plaintiff's motion for a preliminary injunction, concluding that he had shown a likelihood of success on the merits. The Kentucky General Assembly then repealed the challenged provisions, which mooted the plaintiff's case before he obtained any permanent relief.  The district court initially denied the plaintiffs' request for an award of attorney fees; however, the Sixth Circuit reversed that decision while clarifying the appropriate prevailing-party analysis. On remand in *McQueary* II, the district court applied a context-specific analysis and again concluded that the plaintiff was not a prevailing party.  The district court found that the plaintiff was not a prevailing party because his "claim for permanent relief did not become moot when a particular event occurred" but, instead, because Kentucky "voluntarily repealed the challenged provisions" before the court ordered permanent injunctive relief.  2012 WL 3149344, at *2.

Unlike the protestors in *Young*, the *McQueary* plaintiff did not seek relief allowing him to protest "at a specific time and place." *Id.* Instead, "[h]e sought a permanent injunction that would enjoin the Defendant from enforcing the challenged provisions at all funerals." *Id.* The court explained that, when injunctive relief is linked to a particular event, as in *Young*, "preliminary relief becomes, in effect, permanent relief after the event occurs. After the passage of the event, the preliminary injunction can no longer be meaningfully revoked," and the court cannot order any further relief. *Id.* at *3. Preliminary relief like that awarded in *McQueary*, which enjoined

Kentucky "from enforcing . . . challenged provisions only while [the plaintiff's] claim for permanent relief was pending," was "truly temporary and revocable." *Id.* at *2-3. It could be either undone or made permanent by a court order on the merits. Thus, as long as the court had not "permanently enjoin[ed] the state from enforcing the challenged provisions," there was "more [it] could do for" plaintiff. *Id.* at *2.  The plaintiff did not receive all the relief sought through a permanent injunction; instead, permanent relief came by way of Kentucky's voluntary repeal of the challenged provision.  Ultimately, "the defendant's voluntary conduct could not serve as the basis for an award of attorney fees. *Id.* The Sixth Circuit affirmed this decision in *McQueary v. Conway*, 508 F. App'x 522, 524 (6th Cir. 2012) ("*McQueary* III").

In *Hargett*, the plaintiffs obtained a preliminary injunction against enforcement of a Tennessee statute "imposing a raft of new requirements upon persons or organizations conducting voter registration activities in the State." 53 F.4th at 408. A few months later, the Tennessee legislature repealed the challenged provisions, and the plaintiffs dismissed the case. *Id.* at 409. However, prior to the legislative action, the "plaintiffs were able to conduct voter-registration drives for seven months during the runup to the 2020 election, unburdened by the requirements of the" enjoined law. *Id*. at 410-11. Thus, the injunction gave the plaintiffs something that could not later be taken away.

In the present case, the Court agrees with the Government that the decision in *Hargett* is consistent with the principles outlined in the *McQueary* cases and that *Hargett* did not alter the governing framework for assessing whether a preliminary injunction grants sufficient relief to render Plaintiff a "prevailing party."  Here, Plaintiff received preliminary relief that was by nature "temporary and revocable," *i.e.*, an injunction precluding the Government from implementing § 1005 until a decision on the merits of the case could be rendered. Unlike the injunction obtained

8

in *Hargett* or *Miller*, the injunction in this case provided Plaintiff with nothing lasting - no permanent change of status, no irrevocable benefit, and no enduring opportunity to profit from the Court's order. *See, e.g.*, *McQueary* II, 2012 WL 3149344, at *2 (contrasting an injunction for a "specific" act or occasion with an injunction that seeks to stop the defendants "from enforcing the challenged" law universally). Any relief that Plaintiff now has because of § 1005's repeal is the result of a voluntary act of Congress and not a court order. As Plaintiff failed to obtain any "court-ordered, material, enduring change in the legal relationship between the parties," *Miller*, 936 F.3d at 448, he is not eligible for attorney fees, and his motion is **DENIED**.

    **IT IS SO ORDERED.**

    s/ **S. Thomas Anderson**
    S. THOMAS ANDERSON
    UNITED STATES DISTRICT JUDGE

    Date: April 4, 2023.